## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,
P.O. Box 34553
Washington, D.C. 20043,

*Plaintiff*,

vs.

OFFICE OF PERSONNEL MANAGEMENT,
1900 E St NW, Washington, DC 20415

and

OFFICE OF MANAGEMENT AND BUDGET,
725 17th St NW, Washington, DC 20503

*Defendants*.

Case No. 25-cv-858

## <u>COMPLAINT FOR INJUNCTIVE RELIEF</u>

Plaintiff Democracy Forward Foundation brings this action against Defendants Office of Personnel Management ("OPM") and Office of Management and Budget ("OMB") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper under 28 U.S.C. § 1391(e), as Defendants' headquarters are located in Washington, D.C., within this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

**Parties**

3.      Plaintiff Democracy Forward Foundation ("Democracy Forward") is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to promote transparency and accountability in government, in part, by educating the public on government actions and policies. Democracy Forward is primarily engaged in disseminating information to the public, as public records it has obtained have been used in numerous media reports, and it disseminates information concerning government activities through blogs and investigations it makes publicly-available.[1] Democracy Forward intends to continue to post public records it receives and to disseminate information about those records through its own analysis and products, and through media outlets.

4.      Defendant OPM is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  OPM has possession, custody, and control of records to which Plaintiff seeks access.

5.      Defendant OMB is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  OMB has possession, custody, and control of records to which Plaintiff seeks access.

---

[1] *See* Democracy Forward, *Investigation*, https://democracyforward.org/work-category/investigation/; Democracy Forward, *Policy & Education*, https://democracyforward.org/work-category/research/.

**OMB and OPM Direct and Approve the Administration's "Large-Scale" RIF Firing Plans**

6.    On February 26, 2025, OMB and OPM jointly issued a memorandum to the heads of all executive branch departments and agencies directing each agency to submit plans for "large-scale reductions in force" to OMB and OPM for approval by March 13, 2025.

7.    The memorandum alleged, without citing evidence of any kind, that federal tax dollars were being "siphoned off to fund unproductive and unnecessary programs that benefit radial interest groups" and that the federal bureaucracy was "bloated" and "corrupt."

8.    The memorandum also directed agencies to create and submit "Agency RIF [reduction in force] and Reorganization Plans" or "ARRPs" to "OMB and OPM for approval no later than March 13, 2025."[2]

9.    These ARRPs were directed to focus on "agency cuts and reductions" including "the number of FTEs reduced" and a "list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs."

10.    The memorandum directed agencies to submit a second plan by April 14, 2025, to outline the plan for "more productive, effective" agency operations that would follow the mass reductions in force and being implemented by September 30, 2025.

11.    That the agencies' supposed plans for effective operations would *follow* their plans for "large-scale reductions" in staff, and that all such actions would be completed within six months, makes plain that the administration has decided to carry out massive RIFs that will laying off tens or hundreds of thousands of civil servants at agencies throughout the federal

---

[2] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

government with incredibly significant consequences not only for the newly unemployed, but for the federal agencies' continued ability to function.

12.     Both President Trump's orders and the actions of the Administration to date further demonstrate that, following the submission and approval of these RIF plans, the Trump Administration will quickly conduct firings on an unprecedented scale that harm innumerable government functions.

13.     The President's February 11, 2025, Executive Order, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* directed agencies to undertake "large-scale reductions in force (RIFs)," so expansive that they could reach any component or employee "not typically designated as essential" during a government shutdown.[3]

14.     And the Trump Administration's early actions to shutter or nearly-shutter entire government agencies—from the U.S. Agency for International Development to the Consumer Financial Protection Bureau—and mass firing of probationary employees demonstrate the speed with which the Administration make take actions of an extraordinary character to dramatically reduce the capacity of the federal government to function.[4]

---

[3] *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, The White House, Feb. 11, 2025, https://www.whitehouse.gov/presidential-actions/2025/02/implementing-the-presidents-department-of-government-efficiency-workforce-optimization-initiative/.

[4] *See, e.g.*, Dana Goldstein and Sarah Mervosh, *"Are Schools Succeeding? Trump Education Department Cuts Could Make It Hard to Know,"* N.Y. Times, Mar. 12, 2025, https://www.nytimes.com/2025/03/12/us/education-department-cuts.html.Karoun Demirjian and Aishvarya Kavi, *Trump Administration to Lay Off Nearly All of U.S. Aid Agency's Staff*, N.Y. Times, Feb. 6, 2025, https://www.nytimes.com/2025/02/06/us/politics/usaid-job-cuts.html; Laurel Wamsley, *Up to 100 more workers are fired at CFPB as staff fear mass layoffs are looming*, NPR, Feb. 13, 2025, https://www.npr.org/2025/02/13/nx-s1-5296929/cfpb-layoffs-staff-trump-dogehttps://www.nytimes.com/interactive/2025/02/11/us/politics/trump-musk-doge-federal-workers.html.

15.    Most recently, on March 11, 2025, The Trump Administration conducted an extraordinarily broad RIF at the Department of Education, which reduced the Department's staff by approximately 50 percent, with certain statutorily-created component agencies seeing staff reductions of close to 90 percent.[5]

16.    In conducting these dramatic terminations with the potential to impact our nation's students, educators, researchers, parents, and our collective future, the Department released only a barebones statement that asserted that the Department would "continue to deliver on all statutory programs," but which failed to detail the extent of the cuts within the Department or to explain the reasoning behind such dramatic action to reduce the capacity of a Department relied on by millions.

17.    Public reports still are merely piecing together the distribution of the Department of Education's cuts and guessing at the Administration's potential rationale.[6] The Department has not provided the American public it serves with this basic information.

18.    There is every reason to believe that, following OMB and OPM's approval of the "large-scale" RIF plans they have demanded from agencies across the government that this scenario will repeat itself again and again. As a consequence, without the release of key information about the Administration's decisions, the public will be in the dark as the capacity of agencies on which the public relies is eviscerated in rapid fire fashion.

---

[5] Arthur Jones II and Rachel Scott, *Department of Education lays off nearly 50% of its workforce*, ABC News, Mar. 11, 2025, https://abcnews.go.com/US/department-education-faces-50-layoffs-after-closure-notice/story?id=119690524; Jill Barshay, *Chaos and confusion as the statistics arm of the Education Department is reduced to a skeletal staff of 3*, Hechinger Report, Mar. 14, 2025, https://hechingerreport.org/proof-points-chaos-confusion-statistics-education/.
[6] *Id.*

**Democracy Forward's FOIA Requests**

19.     To shed light on the Administration's actions Democracy Forward filed FOIA requests to Defendants OPM and OMB seeking the Administration's ARRP plans for dramatic reductions of the federal workforce and, from OPM, for communications related to these plans.[7]

20.     In filing these requests, Democracy Forward sought expedited processing on the basis that there was a compelling need for the requested information in order to inform the public about the actions the Administration has decided to take that will affect the functioning of hundreds of agencies across the federal government. Exhibits ("Exs.") 1-3.

21.     The requests for expedited processing further stated that there was not only an extraordinary need to the inform the public, but that there was a current exigency as these terminations could happen quickly, with workers laid off after as little as 30 days following the issuance of notice.

22.     Further, in requesting expedited processing Democracy Forward explained:

> By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy." There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence. And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon

---

[7] Democracy Forward submitted these requests close to the time at which agencies were required to submit their plans to ensure that Defendants' search cut-off dates for responsive records would include all plans submitted through March 13, 2025.

as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

Exs. 1-3.

23.     Democracy Forward further certified its primary engagement in disseminating information, citing to numerous news articles in which records obtained by Democracy Forward under public records laws have been used to inform the public.

24.     On March 21, 2025, in light of continuing developments indicating that large scale mass firings under the ARRP RIF plans were already occurring and more were imminent, Democracy Forward supplemented its request for expedited processing of its requests for the RIF plans citing substantial additional news coverage of dramatic personnel actions the Administration had taken in the interim and explaining:

The need for our requested information concerning the Administration's RIF plans has only become more urgent since submitting our request. The Administration has continued to engage in mass layoff actions, indicating that these RIF plans have already begun to be put into effect and "will result in the firing of thousands of government workers in the *coming weeks*" while the public that Democracy Forward seeks to serve remains in the dark.

Exs. 4, 5.

*OMB Agency RIF and Reorganization Plans Request*

25.      On March 12, 2025, Democracy Forward sent a FOIA request to OMB, which sought expedited processing given the compelling need for the information, for the following:

All Agency RIF and Reorganization Plans ("ARRPs") submitted to OMB (at workforce@omb.eop.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's

'Department of Government Efficiency' Workforce Optimization Initiative".

26.    The request sought records from February 1, 2025, through the date of the search.

27.    Democracy Forward has received no communication from OMB regarding this request.

*OPM Agency RIF and Reorganization Plans Request*

28.    Also March 12, 2025, Democracy Forward sent a FOIA request to OPM, which sought expedited processing given the compelling need for the information, for the following:

All Agency RIF and Reorganization Plans ("ARRPs") submitted to OPM (at tracking@opm.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative".

29.    The request sought records from February 1, 2025, through the date of the search.

30.    Democracy Forward has received no communication from OPM regarding this request.

*OPM RIF Plan and Leadership Communications Request*

31.    Also on March 12, 2025, which sought expedited processing given the compelling need for the information, Democracy Forward sent a FOIA request to OPM seeking the following:

1)    All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) of Acting Director Ezzell, Chief of Staff Amanda Scales, Senior Advisor Brian Bjelde, Senior Advisor Roccardo Biasini, and/or Senior Advisor Noah Peters, regarding the development, approval, and implementation of

ARRPs, including directives and guidance sent to other agencies.

2) All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) between (1) any OPM officials listed below (or otherwise affiliated with) the Department of Government Efficiency ("DOGE") (also known as the U.S. "DOGE" (previously "Digital") Service), and (2) Elon Musk, or any representatives of Elon Musk or DOGE , or any representatives of the Executive Office of the President (including, but not limited to, emails ending in eop.gov).

Specified Officials:

i. Acting Director Charles Ezell
ii. Chief of Staff Amanda Scales
iii. Anyone serving in the role of Deputy Director or Acting Deputy Director
iv. Retirement Services Associate Director Margaret Pearson
v. Workforce Policy and Innovation Associate Director Veronica Hinton
vi. Human Resources Solutions Associate Director Dianna Saxman
vii. Merit System Accountability and Compliance Acting Director Ana Mazzi
viii. General Counsel Andrew Kloster
ix. Senior Advisor Anthony Armstrong
x. Senior Advisor Riccardo Biasini
xi. Senior Advisor Brian Bjelde
xii. Senior Advisor Noah Peters
xiii. Chief Information Officer Greg Hogan
xiv. Director of Communications McLaurine Pinover
xv. Human Resources Staffer Stephanie Holmes
xvi. Human Resource Staffer Chirstina Hanna
xvii. Human Resources Staffer Stephen Duarte
xviii. Human Resources Staffer Bryanne-Michelle Mlodzianowski
xix. Policy Analyst Joanna Wischer
xx. Expert Justin Monroe
xxi. Jacob Altik
xxii. Austin Raynor
xxiii. Edward Coristine
xxiv. Akash Bobba
xxv. Gavin Kliger

xxvi.Nikhil Rajpal

32.    Democracy Forward has received no communication from OPM regarding this request.

33.    In submitting all three of the above FOIA requests, Democracy Forward requested fee waivers in light of the public interest in disclosure of the requested information. Defendants have not provided Democracy Forward with a determination on its fee waiver requests.

*Exhaustion of Administrative Remedies*

34.    As of the date of the Complaint, Defendant has failed to notify Democracy Forward of determinations regarding Democracy Forward's requests for expedited processing of its FOIA requests and has failed to grant expedited processing. Through Defendant's failure to grant expedited processing, Democracy Forward has constructively exhausted administrative remedies and those failures are subject to judicial review.

## CLAIM FOR RELIEF

### Count 1 (Violation of FOIA, 5 U.S.C. § 552, Failure to Grant Expedited Processing)

35.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

36.    By failing to grant Plaintiff's requests for expedited processing on Plaintiff's FOIA requests concerning matters of urgent national concern, Defendants have violated FOIA. 5 U.S.C. § 552(a)(6)(E)(iii).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.    Order Defendants to grant Plaintiff's requests for expedited processing and to process Plaintiff's requests on an expedited basis by providing Plaintiff, as soon as

practicable, with a determination and non-exempt portions of the requested records

by producing those records within the time period required by the statute—by April

9, 2025—or else within seven days of the Court's order.

2.    Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

3.    Grant any other relief this Court deems appropriate.

Dated: March 23, 2025                Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath (D.C. Bar No. 1531723)
Robin F. Thurston (Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
rthurston@democracyforward.org

Exhibit 1



March 12, 2025

**VIA Electronic Delivery**

Office of Management and Budget
725 17th Street NW, Suite 9272
Washington, DC 20503
OMBFOIA@omb.eop.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward
Foundation submits this request for records.

***Records Requested***

Democracy Forward Foundation ("DFF") requests that the Office of Management and Budget
("OMB") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OMB (at
> workforce@omb.eop.gov or otherwise) by heads and acting heads of departments and
> agencies as required by OMB Director Vought and OPM Acting Director Ezell's
> February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization
> Plans *Requested by Implementing The President's 'Department of Government
> Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records
regarding a high-profile matter will be assigned to the Simple processing track and processed
expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by
Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Office
of Management and Budget and Office of Personnel Management (Feb. 26, 2025),
https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requeste
d-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

### Request for Expedited Processing

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4] Further there is a clear "urgency to inform the public" of the actions the Administration has

---

[2] 5 U.S.C. § 552 (6)(E).

[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[4] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),
https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019),
https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy;
Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019),
https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation;
Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018),
https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;
Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018),
https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman,
*'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018),
https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),
https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),
https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018),
https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018),
https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017),
https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018),
https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018),
https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at*
https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017),
https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a  structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5]Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025),
https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025),
https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025),
https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025),
https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025),
https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

### Scope of Search

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

### Request for Fee Waiver

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates

records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### Conclusion

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,
*/s/ Skye Perryman*

DF-OMB-25-0435

President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

Exhibit 2

# DEMOCRACY
# FORWARD ▶

March 12, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

### *Records Requested*

Democracy Forward Foundation ("DFF") requests that the Office of Personnel Management ("OPM") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OPM (at tracking@opm.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans *Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records regarding a high-profile matter will be assigned to the Simple processing track and processed expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

### *Request for Expedited Processing*

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4]

---

[2] 5 U.S.C. § 552 (6)(E).

[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[4] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),
https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019),
https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy;
 Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019),
https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation;
Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018),
https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;
Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018),
https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018),
https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),
https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),
https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018),
https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018),
https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017),
https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018),
https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018),
https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at*
https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017),
https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

Further there is a clear "urgency to inform the public" of the actions the Administration has decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a  structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5] Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025),
https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025),
https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025),
https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025),
https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025),
https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

*Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

*Request for Fee Waiver*

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*,

DF-OPM-25-0436

799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### *Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Exhibit 3



March 12, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Office of Personnel Management ("OPM") produce the following within twenty (20) business days and on an expedited basis:

1.  All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) of Acting Director Ezzell, Chief of Staff Amanda Scales, Senior Advisor Brian Bjelde, Senior Advisor Roccardo Biasini, and/or Senior Advisor Noah Peters, regarding the development, approval, and implementation of ARRPs, including directives and guidance sent to other agencies.

2.  All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) between (1) any OPM officials listed below (or otherwise affiliated with) the Department of Government Efficiency ("DOGE") (also known as the U.S. "DOGE" (previously "Digital") Service), and (2) Elon Musk, or any representatives of Elon Musk or DOGE , or any representatives of the Executive Office of the President (including, but not limited to, emails ending in eop.gov).

    Specified Officials:

DF-OPM-25-0437

i.    Acting Director Charles Ezell

ii.    Chief of Staff Amanda Scales

iii.    Anyone serving in the role of Deputy Director or Acting Deputy Director

iv.    Retirement Services Associate Director Margaret Pearson

v.    Workforce Policy and Innovation Associate Director Veronica Hinton

vi.    Human Resources Solutions Associate Director Dianna Saxman

vii.    Merit System Accountability and Compliance Acting Director Ana Mazzi

viii.    General Counsel Andrew Kloster

ix.    Senior Advisor Anthony Armstrong

x.    Senior Advisor Riccardo Biasini

xi.    Senior Advisor Brian Bjelde

xii.    Senior Advisor Noah Peters

xiii.    Chief Information Officer Greg Hogan

xiv.    Director of Communications McLaurine Pinover

xv.    Human Resources Staffer Stephanie Holmes

xvi.    Human Resource Staffer Chirstina Hanna

xvii.    Human Resources Staffer Stephen Duarte

xviii.    Human Resources Staffer Bryanne-Michelle Mlodzianowski

xix.    Policy Analyst Joanna Wischer

xx.    Expert Justin Monroe

xxi.    Jacob Altik

xxii.    Austin Raynor

xxiii.    Edward Coristine

xxiv.    Akash Bobba

xxv.    Gavin Kliger

xxvi.    Nikhil Rajpal

Please provide all records from January 20, 2025, through the date the search is conducted.

### *Request for Expedited Processing*

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[1] DFF is an organization primarily engaged in "disseminating information to the public,"[2] as

---

[1] 5 U.S.C. § 552 (6)(E).

[2] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

evidenced by the previous use of public records obtained by DFF in numerous news reports.[3] Further there is a clear "urgency to inform the public" of the actions the Administration has decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[4] As the OMB and OPM memorandum seeks

---

[3] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

[4] Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025). Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.

ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[5] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[6] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

### *Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld

---

Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[5] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[6] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

### *Request for Fee Waiver*

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the

public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

***Conclusion***

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at [foia@democracyforward.org](mailto:foia@democracyforward.org).

We appreciate your assistance and look forward to your prompt response.

Sincerely,
*/s/ Skye Perryman*
President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

Exhibit 4



March 21, 2025

**VIA Electronic Delivery**

Office of Management and budget
725 17th Street NW, Suite 9272
Washington, DC 20503
OMBFOIA@omb.eop.gov

**Re: Additional Information Supporting Expedited Processing Request for FOIA Request Sent on March 12, 2025**.

Dear FOIA Officer:

On March 12, Democracy Forward sent a FOIA request (which included a request for expedited processing) seeking all agency Reduction in Force ("RIF") and Re-organization Plans ("ARRPs") sent by heads and acting heads of departments to OMB and OPM as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1] We are writing with additional information that further supports that request for expedited processing given events that have transpired since its submission.

The need for our requested information concerning the Administration's RIF plans has only become more urgent since submitting our request. The Administration has continued to engage in mass layoff actions, indicating that these RIF plans have already begun to be put into effect and "will result in the firing of thousands of government workers in the *coming weeks*" while the public that Democracy Forward seeks to serve remains in the dark.[2]

Most prominently, the mass RIFs at the Department of Education apparently seek to dismantle the department.[3] These mass RIFs create grave concerns about the provision of services to millions of Americans, including how these cuts could impact low-income, rural

---

[1] See Appendix 1.
[2] Nandita Bose, *"White House begins review of federal agency plans for second round of mass layoffs, sources say,"* Reuters (Mar. 21, 2025), https://www.reuters.com/world/us/white-house-begins-review-federal-agency-plans-second-round-mass-layoffs-sources-2025-03-21/ (emphasis added).
[3] The White House, *"Improving Education outcomes by Empowering Parents, States, and Communities,"* (Mar. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/improving-education-outcomes-by-empowering-parents-states-and-communities/.

DEMOCRACY
FORWARD▶

schools; create chaos for student loan borrowers; and hinder investigations into instances of discrimination. These cuts include a RIF that shrinks the Department's workforce by nearly half, with cuts to all divisions, which will go into effect today.[4] Although the administration has promised that programs that are protected by law will be preserved, those who are doing the work say those functions are certainly at risk.[5] Experts have raised concerns that "flagship programs, that are protected by law, like Title I for high-poverty schools, and the Rural Education Achievement Program (REAP), which sends money to rural and low-income schools," are at risk as almost all of the National Center for Education Statistics (NCES) statisticians and data experts who determine whether schools qualify for that money will be placed on administrative leave today.[6] With all but three staffers being placed on administrative leave–and likely subsequently laid off–it is uncertain how these grants can remain intact.[7] The loss of these statisticians and researchers means that our educators, researchers, and the public are losing a central and reliable source of information on the state of education since NCES was created in 1867.[8] Regarding concerns on student loans, the Administration had stated that the Department would continue to retain oversight of student loans and Pell grants, but announced today that oversight will move to the Small Business Administration.[9] Regarding the potential for such a move, "experts warn that the administrative challenges in transferring oversight of student loans from one part of government to another are significant." All of this exacerbates chaos and frustration for millions of borrowers, rather than serving as a "recipe for efficiency or innovation."[10] The third concern, noted by experts and by a recent lawsuit, Carter v. Department of Education, is that layoffs within the civil rights office undermine the office's ability to fulfil its legal duties to investigate complaints of discrimination.[11] The Administration has over the past two months cut the Department's staff in half and closed seven of the 12 regional branches of the civil rights office, while barring the office from advancing pending cases and instead opening investigations into universities' DEI programs.[12]

---

[4] US Department of Education, *"U.S. Department of Education Initiates Reduction in Force,"* (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force.
[5] Jonaki Mehta, *"How the Education Department cuts could hurt low-income and rural schools,"* NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5330917/trump-schools-education-department-cuts-low-income.
[6] Id.
[7] Id.
[8] Id.
[9] Cory Turner, *"Trump says Education Department will no longer oversee student loans, 'special needs',"* NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336330/trump-education-department-student-loans-special-education-fsa.
[10] Megan Cerullo, *"Dismantling Department of Education could cause chaos for Americans with student loans, experts warn,"* CBS News (Mar. 21, 2025), https://www.cbsnews.com/news/trump-education-department-executive-order-student-loan/.
[11] Michael Bender and Aishvarya Kavi, *"Education department Sued Over Cuts to Civil Rights Office,"* The New York Times (Mar. 14, 2025), https://www.nytimes.com/2025/03/14/us/politics/education-department-civil-rights-office.html.
[12] Id.

DEMOCRACY
FORWARD▶

Moreover, as we have seen at the US Institute of Peace ("USIP"), US African Development Fund ("USADF"), and the Inter-American Foundation ("IAF"), the quick infiltration and shuttering of agencies demonstrates the crucial need for the public to know what dramatic personnel actions the Administration has decided to undertake. USIP is a prime example as events unfolded quickly this past week, including the firing of most of the board and the subsequent entry into the headquarters.[13] At USADF, rapid-fire Administration actions to dismantle the agency led to an emergency court fight, and all full-time employees have been placed on immediate administrative leave barring them from doing any work to fulfil the mission of USADF.[14] These abrupt changes continued at IAF. According to IAF's lawsuit against the government's efforts to dismantle the organization, IAF's ousted head stated she was wrongfully removed as the president of the foundation and that a newly appointed board member [Peter Marocco] had proclaimed himself president and "terminated the IAF's staff, cut off its grants, and even ordered the return of already-disbursed and obligated funds from grantees."[15] These actions have shown that the Administration's large-scale RIFs are likely to come very quickly, with little transparency, and affect core functions of the hundreds of impacted agencies.

These RIF plans have also left not only the public, but even federal workers and the reporters covering the federal government in the dark about imminent and recent mass layoffs. For instance, at the Department of Health and Human Services there are indications that employees are completely in the dark about the Department's layoff plans even as a large-scale RIF is imminent–and may have already begun.[16] At the Department of Homeland Security it was reported earlier today that the "Office for Civil Rights and Civil Liberties is being eliminated entirely via Reduction in Force (RIF), … and that Staff have not been given reassignment options. Functions of the office will supposedly be assigned to other offices."[17] Further, one reporter covering the Administration's large-scale RIFs explicitly complained that "reporters are being forced to rely on (traumatized) laid-off workers . . . for basic information" about the recent layoffs at the Department of Education.[18]

---

[13] Associated Press, *"Trump administration guts board of Institute of Peace,"* Politico (Mar. 17, 2025), https://www.politico.com/news/2025/03/17/us-institute-of-peace-says-doge-has-broken-into-its-building-00234639.
[14] Associated Press, 10, Elissa Miolene, *"Staff at the US African Development Foundation placed on leave,"* Devex (Mar. 20, 2025),
https://www.devex.com/news/staff-at-the-us-african-development-foundation-placed-on-leave-109681.
[15] Rebecca Beitsch, *Inter-American Foundation sues to block takeover as DOJ says Trump can appoint new leaders,"* The Hill (Mar. 18, 2025),
https://thehill.com/homenews/administration/5201948-justice-department-defends-trump/.
[16] r/feddiscussion, *What is the RIF plan at HHS, specifically CDC?"* Reddit (Mar. 19, 2025),
https://www.reddit.com/r/feddiscussion/comments/1jfelh2/what_is_the_rif_plan_at_hhs_specifically_cdc/?rdt=3844
2; https://www.huffpost.com/entry/trump-hhs-close-regional-legal-offices_n_67d0c2afe4b08ae973d9446e.
[17] Marisa Kabas (@marisakabas.bsky.social), Bluesky, (Mar. 21, 2025),
https://bsky.app/profile/marisakabas.bsky.social/post/3lkvq5ympuk2k.
[18] Zachary Schermele, LinkedIn, Mar. 19, 2025
(https://www.linkedin.com/in/zachary-schermele-674a091a5/recent-activity/all/) (Reporter for USA Today).

# DEMOCRACY FORWARD ▶

Finally, the President has now also ordered the shuttering of seven more agencies, suggesting further mass layoffs there. Those agencies address issues like labor mediation; homelessness prevention; and  museums, libraries, and archives funding. By moving to shutter the Federal Mediation and Conciliation Service, efforts to prevent and resolve work stoppages and labor disputes could be curtailed.[19] Efforts to expand economic opportunities for underserved people and communities are also in jeopardy as the U.S. Interagency Council on Homelessness (USICH) and the Community Development Financial Institutions (CDFI) Fund were also included in the order. By moving to eliminate USICH, the U.S. would lose the only agency at the federal level with the sole responsibility of ending homelessness.[20]An independent federal agency responsible for awarding grants to many museums and libraries around the country, the Institute of Museum and Library Services (IMLS), is at risk due to this order seeing that this federal funding supports workforce training, pilot programs, and bolsters basic library services in rural libraries.[21] By placing most employees on administrative leave "It remains unclear whether funding for existing grantees will continue, and whether new grants will be available in the future."[22]

Put simply, the Administration's RIF plans are of enormous consequence to the public and to federal workers, and they are imminent or already occurring. These RIF plans, in many cases, are not only personnel actions that impact millions of American workers, they are of a nature and scale that they go to the heart of whether entire agencies will even continue to function at all. Expedited processing of Democracy Forward's requests for these plans and related documents could not be more clearly warranted.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & Chief Executive Officer
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[19] Tyler Pager, *"Trump Orders Gutting of 7 Agencies, Including Voice of America's Parent,"* The New York Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/us/politics/trump-order-voice-of-america.html.
[20] Donna Kimura, *"Trump Targets CDFI Fund and USICH for Elimination,"* Affordable Housing Finance (Mar. 17, 2025), https://www.housingfinance.com/policy-legislation/trump-targets-cdfi-fund-and-usich-for-elimination_o.
[21] Andrew Limbong, *Federal agency responsible  for library and museum funding gets a visit from DOGE,"* NPR (Mar. 20, 2025), https://www.npr.org/2025/03/20/nx-s1-5335600/library-museum-funding-doge-sonderling.
[22] Id.



March 12, 2025

**VIA Electronic Delivery**

Office of Management and Budget
725 17th Street NW, Suite 9272
Washington, DC 20503
OMBFOIA@omb.eop.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

***Records Requested***

Democracy Forward Foundation ("DFF") requests that the Office of Management and Budget ("OMB") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OMB (at workforce@omb.eop.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans *Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records regarding a high-profile matter will be assigned to the Simple processing track and processed expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

DF-OMB-25-0435

### Request for Expedited Processing

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4] Further there is a clear "urgency to inform the public" of the actions the Administration has

---

[2] 5 U.S.C. § 552 (6)(E).

[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[4] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),
https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019),
https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy;
Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019),
https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation;
Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018),
https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;
Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018),
https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman,
*'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018),
https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),
https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),
https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018),
https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018),
https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017),
https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018),
https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018),
https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at*
https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017),
https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a  structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5] Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

**Scope of Search**

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

**Request for Fee Waiver**

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates

records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### Conclusion

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,
*/s/ Skye Perryman*

DF-OMB-25-0435

President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Exhibit 5



March 21, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Additional Information Supporting Expedited Processing Request for FOIA Request Sent on March 12, 2025**.

Dear FOIA Officer:

On March 12, Democracy Forward sent a FOIA request (which included a request for expedited processing) seeking all agency Reduction in Force ("RIF") and Re-organization Plans ("ARRPs") sent by heads and acting heads of departments to OMB and OPM as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1] We are writing with additional information that further supports that request for expedited processing given events that have transpired since its submission.

The need for our requested information concerning the Administration's RIF plans has only become more urgent since submitting our request. The Administration has continued to engage in mass layoff actions, indicating that these RIF plans have already begun to be put into effect and "will result in the firing of thousands of government workers in the *coming weeks"* while the public that Democracy Forward seeks to serve remains in the dark.[2]

Most prominently, the mass RIFs at the Department of Education apparently seek to dismantle the department.[3] These mass RIFs create grave concerns about the provision of

---

[1] See Appendix 1.
[2] Nandita Bose, *"White House begins review of federal agency plans for second round of mass layoffs, sources say,"* Reuters (Mar. 21, 2025), https://www.reuters.com/world/us/white-house-begins-review-federal-agency-plans-second-round-mass-layoffs-sources-2025-03-21/ (emphasis added).
[3] The White House, "*Improving Education outcomes by Empowering Parents, States, and Communities,*" (Mar. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/improving-education-outcomes-by-empowering-parents-states-and-communities/.

DEMOCRACY
FORWARD ▶

services to millions of Americans, including how these cuts could impact low-income, rural schools; create chaos for student loan borrowers; and hinder investigations into instances of discrimination. These cuts include a RIF that shrinks the Department's workforce by nearly half, with cuts to all divisions, which will go into effect today.[4] Although the administration has promised that programs that are protected by law will be preserved, those who are doing the work say those functions are certainly at risk.[5] Experts have raised concerns that "flagship programs, that are protected by law, like Title I for high-poverty schools, and the Rural Education Achievement Program (REAP), which sends money to rural and low-income schools," are at risk as almost all of the National Center for Education Statistics (NCES) statisticians and data experts who determine whether schools qualify for that money will be placed on administrative leave today.[6] With all but three staffers being placed on administrative leave–and likely subsequently laid off–it is uncertain how these grants can remain intact.[7] The loss of these statisticians and researchers means that our educators, researchers, and the public are losing a central and reliable source of information on the state of education since NCES was created in 1867.[8] Regarding concerns on student loans, the Administration had stated that the Department would continue to retain oversight of student loans and Pell grants, but announced today that oversight will move to the Small Business Administration.[9] Regarding the potential for such a move, "experts warn that the administrative challenges in transferring oversight of student loans from one part of government to another are significant." All of this exacerbates chaos and frustration for millions of borrowers, rather than serving as a "recipe for efficiency or innovation."[10] The third concern, noted by experts and by a recent lawsuit, Carter v. Department of Education, is that layoffs within the civil rights office undermine the office's ability to fulfil its legal duties to investigate complaints of discrimination.[11] The Administration has over the past two months cut the Department's staff in half and closed seven of the 12 regional branches of the civil rights office, while barring the office from advancing pending cases and instead opening investigations into universities' DEI programs.[12]

---

[4] US Department of Education, *"U.S. Department of Education Initiates Reduction in Force,"* (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force.
[5] Jonaki Mehta, *"How the Education Department cuts could hurt low-income and rural schools,"* NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5330917/trump-schools-education-department-cuts-low-income.
[6] Id.
[7] Id.
[8] Id.
[9] Cory Turner, *"Trump says Education Department will no longer oversee student loans, 'special needs',"* NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336330/trump-education-department-student-loans-special-education-fsa.
[10] Megan Cerullo, *"Dismantling Department of Education could cause chaos for Americans with student loans, experts warn,"* CBS News (Mar. 21, 2025), https://www.cbsnews.com/news/trump-education-department-executive-order-student-loan/.
[11] Michael Bender and Aishvarya Kavi, *"Education department Sued Over Cuts to Civil Rights Office,"* The New York Times (Mar. 14, 2025), https://www.nytimes.com/2025/03/14/us/politics/education-department-civil-rights-office.html.
[12] Id.

**DEMOCRACY FORWARD▸**

Moreover, as we have seen at the US Institute of Peace ("USIP"), US African Development Fund ("USADF"), and the Inter-American Foundation ("IAF"), the quick infiltration and shuttering of agencies demonstrates the crucial need for the public to know what dramatic personnel actions the Administration has decided to undertake. USIP is a prime example as events unfolded quickly this past week, including the firing of most of the board and the subsequent entry into the headquarters.[13] At USADF, rapid-fire Administration actions to dismantle the agency led to an emergency court fight, and all full-time employees have been placed on immediate administrative leave barring them from doing any work to fulfil the mission of USADF.[14] These abrupt changes continued at IAF. According to IAF's lawsuit against the government's efforts to dismantle the organization, IAF's ousted head stated she was wrongfully removed as the president of the foundation and that a newly appointed board member [Peter Marocco] had proclaimed himself president and "terminated the IAF's staff, cut off its grants, and even ordered the return of already-disbursed and obligated funds from grantees."[15] These actions have shown that the Administration's large-scale RIFs are likely to come very quickly, with little transparency, and affect core functions of the hundreds of impacted agencies.

These RIF plans have also left not only the public, but even federal workers and the reporters covering the federal government in the dark about imminent and recent mass layoffs. For instance, at the Department of Health and Human Services there are indications that employees are completely in the dark about the Department's layoff plans even as a large-scale RIF is imminent–and may have already begun.[16] At the Department of Homeland Security it was reported earlier today that the "Office for Civil Rights and Civil Liberties is being eliminated entirely via Reduction in Force (RIF), … and that Staff have not been given reassignment options. Functions of the office will supposedly be assigned to other offices."[17] Further, one reporter covering the Administration's large-scale RIFs explicitly complained that "reporters are being forced to rely on (traumatized) laid-off workers . . . for basic information" about the recent layoffs at the Department of Education.[18]

---

[13] Associated Press, *"Trump administration guts board of Institute of Peace,"* Politico (Mar. 17, 2025), https://www.politico.com/news/2025/03/17/us-institute-of-peace-says-doge-has-broken-into-its-building-00234639.

[14] Associated Press, 10, Elissa Miolene, *"Staff at the US African Development Foundation placed on leave,"* Devex (Mar. 20, 2025), https://www.devex.com/news/staff-at-the-us-african-development-foundation-placed-on-leave-109681.

[15] Rebecca Beitsch, *Inter-American Foundation sues to block takeover as DOJ says Trump can appoint new leaders,"* The Hill (Mar. 18, 2025), https://thehill.com/homenews/administration/5201948-justice-department-defends-trump/.

[16] r/feddiscussion, *What is the RIF plan at HHS, specifically CDC?"* Reddit (Mar. 19, 2025), https://www.reddit.com/r/feddiscussion/comments/1jfelh2/what_is_the_rif_plan_at_hhs_specifically_cdc/?rdt=38442; https://www.huffpost.com/entry/trump-hhs-close-regional-legal-offices_n_67d0c2afe4b08ae973d9446e.

[17] Marisa Kabas (@marisakabas.bsky.social), Bluesky (Mar. 21, 2025), https://bsky.app/profile/marisakabas.bsky.social/post/3lkvq5ympuk2k.

[18] Zachary Schermele, LinkedIn, Mar. 19, 2025 (https://www.linkedin.com/in/zachary-schermele-674a091a5/recent-activity/all/) (Reporter for USA Today).

# DEMOCRACY FORWARD ▶

Finally, the President has now also ordered the shuttering of seven more agencies, suggesting further mass layoffs there. Those agencies address issues like labor mediation; homelessness prevention; and museums, libraries, and archives funding. By moving to shutter the Federal Mediation and Conciliation Service, efforts to prevent and resolve work stoppages and labor disputes could be curtailed.[19] Efforts to expand economic opportunities for underserved people and communities are also in jeopardy as the U.S. Interagency Council on Homelessness (USICH) and the Community Development Financial Institutions (CDFI) Fund were also included in the order. By moving to eliminate USICH, the U.S. would lose the only agency at the federal level with the sole responsibility of ending homelessness.[20] An independent federal agency responsible for awarding grants to many museums and libraries around the country, the Institute of Museum and Library Services (IMLS), is at risk due to this order seeing that this federal funding supports workforce training, pilot programs, and bolsters basic library services in rural libraries.[21] By placing most employees on administrative leave "It remains unclear whether funding for existing grantees will continue, and whether new grants will be available in the future."[22]

Put simply, the Administration's RIF plans are of enormous consequence to the public and to federal workers, and they are imminent or already occurring. These RIF plans, in many cases, are not only personnel actions that impact millions of American workers, they are of a nature and scale that they go to the heart of whether entire agencies will even continue to function at all. Expedited processing of Democracy Forward's requests for these plans and related documents could not be more clearly warranted.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & Chief Executive Officer
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

[19] Tyler Pager, *"Trump Orders Gutting of 7 Agencies, Including Voice of America's Parent,"* The New York Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/us/politics/trump-order-voice-of-america.html.
[20] Donna Kimura, *"Trump Targets CDFI Fund and USICH for Elimination,"* Affordable Housing Finance (Mar. 17, 2025), https://www.housingfinance.com/policy-legislation/trump-targets-cdfi-fund-and-usich-for-elimination_o.
[21] Andrew Limbong, *Federal agency responsible for library and museum funding gets a visit from DOGE,"* NPR (Mar. 20, 2025), https://www.npr.org/2025/03/20/nx-s1-5335600/library-museum-funding-doge-sonderling.
[22] Id.



March 12, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Office of Personnel Management ("OPM") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OPM (at tracking@opm.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans *Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records regarding a high-profile matter will be assigned to the Simple processing track and processed expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

DF-OPM-25-0436

### Request for Expedited Processing

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4]

---

[2] 5 U.S.C. § 552 (6)(E).

[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[4] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),
https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019),
https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy;
Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019),
https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation;
Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018),
https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;
Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018),
https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman,
*'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018),
https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),
https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),
https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018),
https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018),
https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017),
https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018),
https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018),
https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at*
https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017),
https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

Further there is a clear "urgency to inform the public" of the actions the Administration has decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5] Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

***Request for Fee Waiver***

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*,

799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id*., or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### Conclusion

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043