## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD
FOUNDATION,

         *Plaintiff*,

v.

         Civil Action No. 25-cv-858

OFFICE OF MANAGEMENT AND
BUDGET et al.,

         *Defendants*.

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A LIMITED PRELIMINARY INJUNCTION
## AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTUAL DEVELOPMENTS ...................................................................................... 2

    A. HHS Conducts Opaque Mass RIF Firings, with Defendant OMB Director's  Public Approval. ................................................................................................ 2

    B. Numerous Agencies Renew Offers for Voluntary Deferred Resignation,  Indicating Broader Implementation of RIF Terminations is Imminent. ............... 6

ARGUMENT .................................................................................................................. 7

    A. Expedited processing of Plaintiff's requests, and rapid production of  approved RIF plans is warranted. .......................................................................... 8

        1. There is an urgent need to inform the public about the Administration's mass RIF decisions, and Defendants do not show  otherwise. ................................... 8

        2. Defendants cannot escape the FOIA statute's expedited processing  standard by firing their FOIA staff. .............................................................. 14

        3. Because expedited processing is warranted, this case is not premature and is subject to judicial review. ............................................................................ 16

    B. Democracy Forward's effort to tailor its requested relief to "approved" RIF plans to ensure practicability and reduce burdens is not a new request. ..................................... 17

CONCLUSION .............................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**

*Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*, No. CV 24-3505 (RDM), 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025)……………………………………………………………………..16

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)……………………………………………………………………13

*EPA v. Mink*, 410 U.S. 73 (1973)……………………………………………………...…13

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 19-800, 2020 WL 5798442, (D.D.C. Sept. 29, 2020)……………………………………………………………………..……13

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 17-0832, 2019 WL 4644029, (D.D.C. Sept. 24, 2019)……………………………………………………………………..13

*Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) .................................................................................................. 18

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)…………………………...........14

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ............................... 17

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132 (D.D.C. 2020).................................................................................................. 11

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293 (D.D.C. 2017)……………………………………………………………………11

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350 (D.C. Cir. 2021) .................................................................................................. 14

*Truitt v. U.S. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990) .............................. 18

**Statutes**

5 U.S.C. § 552 .................................................................................................. 13, 15, 16

**Other Authorities**

Anastasia Obis, *DoD reopens deferred resignation program, offers early retirements*, Fed. News Network (Mar. 31, 2025), https://federalnewsnetwork.com/defense-main/2025/03/dod-reopens-deferred-resignation-program-offers-early-retirements/ [https://perma.cc/4RPY-NYL2]........... 6

Ashleigh Fields, *Vought: 10K HHS layoffs 'fantastic'*, The Hill, (Mar. 28, 2025),
https://thehill.com/homenews/administration/5219328-russell-vought-hhs-
layoffs-fantastic/ [https://perma.cc/2UT8-8TPX] ................................................. 3, 8, 9

Brenda Goodman, *A city responding to a lead crisis in schools reached out to the
CDC for help. The agency's lead experts were just fired*, CNN (Apr. 3, 2025),
https://www.cnn.com/2025/04/02/health/milwaukee-lead-crisis-schools-cdc-
cuts/index.html [https://perma.cc/CC8T-6NXW] ......................................................... 5

Dep't of Hous. & Urb. Dev. (@HUDgov), X/Twitter (Mar. 31, 2025, 5:20 PM
ET), https://x.com/HUDgov/status/1906818891176645028
[https://perma.cc/GC77-5LEW] ...................................................................................... 6

Drew Friedman, *As RIFs get underway, several agencies renew deferred
resignation offers*, Fed. News Network (Apr. 1, 2025),
https://federalnewsnetwork.com/workforce/2025/04/as-rifs-get-underway-
several-agencies-renew-deferred-resignation-offers/ [https://perma.cc/RR9F-
UZTX] .................................................................................................................. 6, 9

J.J. McCorvey, *Entire staff responsible for utility assistance included in HHS
cuts, sources say*, NBC News (Apr. 1, 2025),
https://www.nbcnews.com/business/business-news/trump-admin-fires-staff-
liheap-agency-utilities-assistance-program-rcna199177
[https://perma.cc/8P8Z-ZKDA?type=image] .............................................................. 3

Jory Heckman, *'Humiliating and degrading': HHS employees learn of layoffs
when their ID badges stop working*, Fed. News Network (Apr. 1, 2025),
https://federalnewsnetwork.com/workforce/2025/04/humiliating-and-
degrading-hhs-employees-learn-of-layoffs-when-their-id-badges-stop-working/
[https://perma.cc/75V6-V5GQ] ...................................................................................... 4

Joseph Shapiro, *"HHS layoffs hit Meals on Wheels and other services for seniors
and disabled,"* NPR (Apr. 1, 2025), https://www.npr.org/sections/shots-health-
news/2025/04/01/g-s1-57716/hhs-layoffs-seniors-disabled-liheap-acl
[https://perma.cc/F4SN-ZZDX] ...................................................................................... 5

Katherine Eban, *"The Expert Who Kept Eye Drops from Blinding You was Fired
Yesterday,"* Vanity Fair (Apr. 2,
2025), https://www.vanityfair.com/news/story/the-expert-who-kept-eye-drops-
from-blinding-you-was-fired-yesterday? [https://perma.cc/55XT-2RF4] ..................... 5

Leah Feiger, Makena Kelly, and Kate Knibbs, *"The CDC Has Been Gutted,"*
WIRED (Apr. 1, 2025), https://www.wired.com/story/cdc-gutted-rif/
[https://perma.cc/3TD4-4QWM] ...................................................................................... 5

Megan Molteni, et al. *Five NIH institute directors and numerous lab heads ousted in unprecedented shake-up*, Stat News (Apr. 1, 2025), https://www.statnews.com/2025/04/01/nih-rif-1200-layoffs-raise-concerns-health-medicine-biomedical-research/ [https://perma.cc/QJ2B-2CGA] ........................ 5

Press Release, HHS, *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/about/news/hhs-restructuring-doge.html [https://perma.cc/SB9K-6URJ] ............................................. 2, 3, 8

Rachel Roubein and Lena Sun, *"Veterinarians working on bird flu, pet food safety are fired in HHS purge,"* Wash. Post (Apr. 2, 2025), https://www.washingtonpost.com/health/2025/04/02/bird-flu-fda-veterinarians-laid-off/ [https://perma.cc/S6RY-WQ6X] ..................................................... 5

Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Off. of Mgmt. and Budget and Off. of Pers. Mgmt. (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf [https://perma.cc/HDG5-43LW] ..................................................... 1, 9, 10,

Sara Moniuszko, *NIH is the largest funder of cancer research. Here's how Trump administration cuts could impact patients,* CBS News (Apr. 3, 2025), https://www.cbsnews.com/news/nih-cancer-research-trump-cuts-hhs-layoffs/ [https://perma.cc/V256-T4BQ] ..................................................... 5

Sheryl Gay Stolberg, et al., *Mass Layoffs Hit Health Agencies That Track Disease and Regulate Food*, N.Y. Times (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/politics/trump-federal-layoffs-health-food.html [https://perma.cc/2EV8-MEP4] ..................................................... 8

Sophia Cai and Jake Traylor, *Federal agencies launch second — and likely final — offer to leave*, POLITICO (Apr. 2, 2025), https://www.politico.com/news/2025/04/02/federal-agencies-launch-second-offer-to-leave-00264397 [https://perma.cc/2P63-3ME9] ......................................... 6, 9

Sydney Lupkin, *After promising transparency, RFK guts public records teams at HHS*, NPR (Apr. 3, 2025), https://www.npr.org/sections/shots-health-news/2025/04/03/g-s1-57888/hhs-fda-rfk-foia-public-records [https://perma.cc/RL8A-4Y8B] ..................................................... 13

The Bulwark (@bulwarkonline), Instagram (Mar. 29, 2025), https://www.instagram.com/bulwarkonline/reel/DHvwwjQR_zC/ [https://perma.cc/8FZA-2CHM] ..................................................... 3, 9

iv

# INTRODUCTION

Democracy Forward has requested the expedited production of a subset of plans reflecting the Administration's decisions to engage in mass terminations of federal workers who provide critical services to Americans. This limited relief pales in comparison to the national importance of the requested records. The Court should order Defendants to produce these records rapidly.

By Defendants' own description, the mass reduction in force ("RIF") termination decisions the Administration is making are intended to affect a "critical transformation" of our government through "large-scale" firings.[1] But Defendants argue that there is no urgency to inform the public about these mass RIFs. Defendants assert that the RIF plans are merely "under very early review" so their production is not urgent and expedited processing not warranted. Reality begs to differ.

Mass RIFs are underway now, with more likely to come. Just a day before Defendants filed their opposition, the Department of Health and Human Services ("HHS") carried out a sweeping RIF that appears to have eviscerated vital public health agency capacities. It did so without any meaningful explanation to employees or the public about its scope or impact. In the days just preceding these mass terminations, the Director of the Office of Management and Budget ("OMB") commented publicly on the coming RIF plan, noting he had personally discussed it with HHS's Secretary. Beyond HHS, agencies across the government renewed

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,*" Off. of Mgmt. and Budget and Off. of Pers. Mgmt. (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf [https://perma.cc/HDG5-43LW] ("*Guidance on Agency RIF and Reorganization Plans*").

deferred resignation "fork in the road" offers, providing them to employees with short timelines and explicit reference to forthcoming "involuntary" terminations.

Expedited processing and disclosure of the approved RIF plans is warranted and urgent. Democracy Forward's action is timely and seeks only a narrow subset of the documents it requested of Defendants which are likely to be subject to disclosure. Democracy Forward respectfully requests that the Court grant its motion.

## FACTUAL DEVELOPMENTS

Since Democracy Forward filed this suit and the instant motion, the Trump Administration's actions have only made it clearer that the RIF plans for mass terminations that Defendants OMB and the Office of Personnel Management ("OPM") have approved are documents of extraordinary national consequence. These actions show broad mass RIF terminations are imminent and will impact critical government functions. Although the Court's review of Defendants' April 1, 2025, denials of expedited processing is generally limited to the record before the agency at the time of its decision, public events in recent days also provide important context for the assertions Defendants have made in their filings before this Court.

### A.    HHS Conducts Opaque Mass RIF Firings, with Defendant OMB Director's Public Approval.

On March 27, 2025, HHS issued a brief press release indicating—in broad terms—that it would reduce its workforce by 25 percent.[2] But the release and its accompanying fact sheet did not explain with adequate detail how HHS expected the change would impact its functioning and ability to continue its critical and often statutorily required functions. It simply announced, with

---

[2] Press Release, HHS, *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/about/news/hhs-restructuring-doge.html [https://perma.cc/SB9K-6URJ].

little specificity, that more than a dozen of its divisions would cease to exist in the near future. So it was shocking when, for example, the Department apparently terminated *all* staff within the Division of Energy Assistance, which administers a home heating assistance program relied on by 6 million American households, without any explanation of how that vital program would continue to function.[3] In announcing that it would implement mass terminations, HHS explicitly stated that it was doing so "in accordance with" the executive order that Defendants OMB and OPM stated they were implementing in requiring that RIF plans be submitted for approval.[4] The same day HHS announced its mass termination plan, Defendant OMB's Director, Russell Vought, stated that HHS RIF plan was "fantastic" and that he had "talked with [HHS] Secretary Kennedy about an hour ago," before discussing HHS's RIF as part of the context of Administration-wide efforts.[5]

Although the decisions had already been made, the public was left to wait for more information until the morning of April 1, 2025, when the RIF terminations were apparently put in place—reportedly through 5 a.m. email notices to some employees and merely deactivating

---

[3] A prominent report noted that "[a] representative for HHS didn't respond to a request for comment." J.J. McCorvey, *Entire staff responsible for utility assistance included in HHS cuts, sources say*, NBC News (Apr. 1, 2025), https://www.nbcnews.com/business/business-news/trump-admin-fires-staff-liheap-agency-utilities-assistance-program-rcna199177 [https://perma.cc/8P8Z-ZKDA?type=image].

[4] Press Release, *HHS Announces Transformation to Make America Healthy Again,* https://perma.cc/SB9K-6URJ.

[5] Ashleigh Fields, *Vought: 10K HHS layoffs 'fantastic'*, The Hill, (Mar. 28, 2025), https://thehill.com/homenews/administration/5219328-russell-vought-hhs-layoffs-fantastic/ [https://perma.cc/2UT8-8TPX]; The Bulwark (@bulwarkonline), Instagram (Mar. 29, 2025), https://www.instagram.com/bulwarkonline/reel/DHvwwjQR_zC/ [https://perma.cc/8FZA-2CHM].

the security access badges of others to deny them entry to their offices.[6] As occurred first at the Department of Education, *see* Pl.'s Mem., ECF No. 3-1, HHS has not provided detailed information to the public about the scope and impact of its RIF, much less its rationale for the sweeping changes. The public's understanding of the terminations and their impact has been pieced together by reporters soliciting individual sources and through social media.[7] Members of Congress have called for more information and criticized the "stunning lack of transparency" surrounding HHS's actions.[8]

What information is available suggests that the RIF at HHS and RIFs elsewhere will have profound consequences for the government's ability to carry out critical functions and to serve the American people. Reports suggest that the sweeping RIFs wiped out entire HHS teams, labs, and divisions, abruptly ending work on worker safety, vaccine research, veterinary medicine (including experts working on the bird flu threat), food and medical device testing, and much more.[9]

---

[6] Jory Heckman, *'Humiliating and degrading': HHS employees learn of layoffs when their ID badges stop working*, Fed. News Network (Apr. 1, 2025), https://federalnewsnetwork.com/workforce/2025/04/humiliating-and-degrading-hhs-employees-learn-of-layoffs-when-their-id-badges-stop-working/ [https://perma.cc/75V6-V5GQ].

[7] Reader Form, *Are you affected by the HHS cuts and restructuring?*, Stat News (Mar. 27, 2025), https://www.statnews.com/2025/03/27/hhs-cuts-restructuring-reader-form/ [https://perma.cc/W24Q-3Y77]; Helen Branswell (@HelenBranswell), X/Twitter (Apr. 1, 2025, 10:08 AM ET), https://x.com/HelenBranswell/status/1907072478075109492 [https://perma.cc/DY6R-KLS5]; Ginny Bixby (@Ginny_Bixby), X/Twitter (Apr. 1, 2025, 5:42 PM ET), https://x.com/Ginny_Bixby/status/1907186933916467404 [https://perma.cc/KK8Z-X3FN].

[8] Joseph Choi and Nathaniel Weixel, *4 key takeaways as Trump's sweeping HHS layoffs begin*, The Hill (Apr. 2, 2025), https://thehill.com/policy/healthcare/5226962-hhs-mass-layoffs-cuts/ [https://perma.cc/FL33-8YRW].

[9] Reports indicate that at the Centers for Disease Control and Prevention, those fired include specialists who track asthma, air pollution, smoking, gun violence, reproductive health, climate

The same day as the turmoil at HHS, Defendants OMB and OPM finally responded to Democracy Forward's request for expedited processing of the requests in this litigation. Defendants OMB and OPM wrote that the request was denied "because you failed to show an urgency to inform." Defs.' Opp'n and MTD, ECF No. 9, Exhibits ("Defs.' Exs.") A, B, C. Defendants then filed their opposition and motion to dismiss, supported by an OMB declaration

---

change and other health threats. The National Center for Environmental Health team–which includes medical toxicologists and lead experts–assisting with lead crises was also cut. At the Food and Drug Administration ("FDA"), staff who regulate drugs, food, medical devices, and tobacco products received termination notices, including those who have played a key role in the recent bird flu outbreak and as well as leading FDA experts. Cuts at the National Institutes of Health targeted scientists who focus on sickle cell disease, neurodevelopmental disorders, pandemic preparedness, and much more. At the Administration for Community Living, cuts threaten the agency's ability to operate programs that run senior centers and distribute 216 million meals a year to older and disabled people through the Meals on Wheels program. The future of the Division on Energy Assistance, which helps 5.9 million low-income households pay heat and cooling bills, is uncertain as all of its staff were apparently terminated. Further, cuts across HHS have targeted those focused on communicating key health updates to the public– regarding drug and food recalls, awareness and research regarding treatments for diseases, and outbreaks of infectious disease. Leah Feiger, Makena Kelly, and Kate Knibbs, *"The CDC Has Been Gutted,"* WIRED (Apr. 1, 2025), https://www.wired.com/story/cdc-gutted-rif/ [https://perma.cc/3TD4-4QWM]; Brenda Goodman, *A city responding to a lead crisis in schools reached out to the CDC for help. The agency's lead experts were just fired*, CNN (Apr. 3, 2025), https://www.cnn.com/2025/04/02/health/milwaukee-lead-crisis-schools-cdc-cuts/index.html [https://perma.cc/CC8T-6NXW]; Katherine Eban, *"The Expert Who Kept Eye Drops from Blinding You was Fired Yesterday,"* Vanity Fair (Apr. 2, 2025), https://www.vanityfair.com/news/story/the-expert-who-kept-eye-drops-from-blinding-you-was-fired-yesterday? [https://perma.cc/55XT-2RF4]; Rachel Roubein and Lena Sun, *"Veterinarians working on bird flu, pet food safety are fired in HHS purge,"* Wash. Post (Apr. 2, 2025), https://www.washingtonpost.com/health/2025/04/02/bird-flu-fda-veterinarians-laid-off/ [https://perma.cc/S6RY-WQ6X]; Megan Molteni, et al. *Five NIH institute directors and numerous lab heads ousted in unprecedented shake-up*, Stat News (Apr. 1, 2025), https://www.statnews.com/2025/04/01/nih-rif-1200-layoffs-raise-concerns-health-medicine-biomedical-research/ [https://perma.cc/QJ2B-2CGA]; Sara Moniuszko, *NIH is the largest funder of cancer research. Here's how Trump administration cuts could impact patients,* CBS News (Apr. 3, 2025), https://www.cbsnews.com/news/nih-cancer-research-trump-cuts-hhs-layoffs/ [https://perma.cc/V256-T4BQ]; Joseph Shapiro, *"HHS layoffs hit Meals on Wheels and other services for seniors and disabled,"* NPR (Apr. 1, 2025), https://www.npr.org/sections/shots-health-news/2025/04/01/g-s1-57716/hhs-layoffs-seniors-disabled-liheap-acl [https://perma.cc/F4SN-ZZDX].

that asserted no RIF plans "have been approved," Defs.' Ex. A, Walsh Decl. ¶ 23, ECF No. 9-1, and arguing that the RIF plans were under "very early review." Defs.' Opp'n and MTD at 10.

**B.    Numerous Agencies Renew Offers for Voluntary Deferred Resignation, Indicating Broader Implementation of RIF Terminations is Imminent.**

Between Friday March 28, 2025, and April 1, 2025, numerous federal agencies renewed so-called "fork in the road" solicitations for employees to voluntarily resign in exchange for supposedly guaranteed pay through September 30, 2025.[10] As with the initial "fork" offer, these solicitations have been made with reference to looming "involuntary" terminations of federal employees.[11] Agencies have offered short deadlines for acceptance of the offer—generally ranging from April 7 to 11—reinforcing the message in Defendants' memorandum that "large scale" terminations are likely to begin imminently, on or around April 12.[12] A White House official reportedly said that the Administration was "getting close" to finalizing its RIF plans and renewed the deferred resignation offer "to get that final number of RIF people."[13]

---

[10] *See* Drew Friedman, *As RIFs get underway, several agencies renew deferred resignation offers*, Fed. News Network (Apr. 1, 2025), https://federalnewsnetwork.com/workforce/2025/04/as-rifs-get-underway-several-agencies-renew-deferred-resignation-offers/ [https://perma.cc/RR9F-UZTX]*;* Dep't of Hous. & Urb. Dev. (@HUDgov), X/Twitter (Mar. 31, 2025, 5:20 PM ET), https://x.com/HUDgov/status/1906818891176645028 [https://perma.cc/GC77-5LEW]; Anastasia Obis, *DoD reopens deferred resignation program, offers early retirements*, Fed. News Network (Mar. 31, 2025), https://federalnewsnetwork.com/defense-main/2025/03/dod-reopens-deferred-resignation-program-offers-early-retirements/ [https://perma.cc/4RPY-NYL2].

[11] *See* Friedman, https://perma.cc/RR9F-UZTX; Obis, https://perma.cc/4RPY-NYL2.

[12] Eileen Sullivan, *With Painful Layoffs Ahead, Agencies Push Incentives to Quit*, N.Y. Times (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/politics/federal-layoff-buyout-offers.html [https://perma.cc/RX4G-29HR].

[13] Sophia Cai and Jake Traylor, *Federal agencies launch second — and likely final — offer to leave*, POLITICO (Apr. 2, 2025), https://www.politico.com/news/2025/04/02/federal-agencies-launch-second-offer-to-leave-00264397 [https://perma.cc/2P63-3ME9].

**ARGUMENT**

Defendants' primary argument is that there is no urgent need to inform the public—and thus expedited processing is not warranted—because Defendants are only in the early stages of reviewing RIF plans. The mass terminations *already* taking place, along with other clear indications that transformative actions are imminent, show this is simply wrong. Plaintiff's requests concern a matter of extraordinary national importance, and expedited processing and a preliminary injunction are warranted.

Defendants' handful of other arguments are easily dispensed with. *First*, there is no requirement to show that requested records are not exempt from disclosure in order to receive expedited processing and a preliminary injunction. Regardless, there *is* very likely significant non-exempt factual information and information reflecting final decisions within the requested plans, particularly in those approved by Defendants. *Second*, Defendants' argument—without apparent irony—that expedited processing of records of national importance is not warranted because Defendants have lost or fired staff in recent months has no basis in logic or law. *Third*, Democracy Forward's action is plainly not premature, as it is undisputed that Defendants failed to make expedited processing determinations within the 10 days required by statute and this matter is subject to judicial review. *Finally*, Plaintiff's narrow requested relief ("approved" plans) unambiguously seeks a subset of those plans that have been submitted to Defendants for their approval.

**A.    Expedited processing of Plaintiff's requests, and rapid production of approved RIF plans is warranted.**

**1.    There is an urgent need to inform the public about the Administration's mass RIF decisions, and Defendants do not show otherwise.**

Defendants offer just two sentences to justify their view that expedited processing is not warranted. Defs.' Opp'n and MTD at 11. Defendants claim RIF plans are "still under *very early* review" and none have been approved so there is no urgent need to inform the public. *Id*. at 10. (emphasis added). This indefinite and conclusory assertion does not accord with reality. Mass terminations have already begun, and there are clear indications in the Administration's actions and Defendants' directive to agencies that RIFs across the federal government are imminent.

*First*, HHS—one the government's largest agencies—carried out a mass RIF termination the day *before* Defendants filed this brief.[14] Lest there be any confusion that HHS's RIF was a part of the "large-scale" termination process that Defendants' are administering, HHS explicitly cited the executive order Defendants OMB and OPM have stated they are implementing with their RIF approval directive as the basis for the agency's mass terminations.[15] And, Defendant OMB's Director Russell Vought publicly stated he discussed the HHS RIF plan with HHS Secretary Kennedy the day it was announced and lauded it as a part of the administration-wide effort to cut the federal workforce.[16]

---

[14] Sheryl Gay Stolberg, et al., *Mass Layoffs Hit Health Agencies That Track Disease and Regulate Food*, N.Y. Times (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/politics/trump-federal-layoffs-health-food.html [https://perma.cc/2EV8-MEP4].

[15] Press Release, *HHS Announces Transformation to Make America Healthy Again,* https://perma.cc/SB9K-6URJ.

[16] Fields, https://perma.cc/2UT8-8TPX; The Bulwark (@bulwarkonline), https://perma.cc/8FZA-2CHM.

*Second*, numerous Departments—from Energy to Defense to Housing and Urban Development—just renewed their deferred resignation offers in the space of a few days before Defendants' brief was filed.[17] These agencies made clear to employees that the offer of several months of purportedly guaranteed pay was made in the context of looming "involuntary" terminations.[18] And all these agencies provided short deadlines of no more than a couple weeks to accept the offer, with most expiring by April 11.[19] This timeline is consistent with Defendants OMB and OPM's memorandum directing agencies to submit RIF plans by March 13, 2025, which included a sample timeline for RIF implementation that would result in initiating mass terminations 30 days later, on or around April 12, 2025.[20] Indeed, a White House official reportedly said that these renewed deferred resignation solicitations were "to get that final number of RIF people," as the Administration is "getting close" to finalizing its RIF plans.[21]

It is unclear how there could be no "approved" RIF plans, as Defendants' claim, Defs.' Ex. A, Walsh Decl. ¶ 23, given this ongoing RIF activity. OMB asserts that no plans "have been approved by OMB."  But this assertion is tied to a statement that the "review process consists of *two phases*, described in detail in the Memorandum issued by defendants":

> Specifically, the agency reduction in force (RIF) plans sought by plaintiff are currently under review by defendants, and none have been approved by OMB. This review process consists of *two phases*, described in detail in the Memorandum issued by defendants to the Heads of Executive Departments and Agencies on February 26,

---

[17] Sullivan, https://perma.cc/RX4G-29HR.

[18] *See* Friedman, https://perma.cc/RR9F-UZTX; Obis, https://perma.cc/4RPY-NYL2.

[19] Fields, https://perma.cc/2UT8-8TPX; The Bulwark (@bulwarkonline), https://perma.cc/8FZA-2CHM.

[20] *See Guidance on Agency RIF and Reorganization Plans* at Appendix A: Sample RIF Timeline, https://perma.cc/HDG5-43LW.

[21] Cai and Traylor, https://perma.cc/2P63-3ME9.

2025. This Memorandum stems from Executive Order 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, dated February 11, 2025, as well as the Presidential Memorandum on the Hiring Freeze, dated January 20, 2025.

Defs.' Ex. A, Walsh Decl. ¶ 23 (emphasis added).

But the two phases OMB refers two are distinct. "Phase 1" plans are focused on "cuts" and mass RIFs and were due for "review and approval" on March 13, 2025, while "Phase 2" plans focused on a "positive vision" for reorganization were due a month later for separate "review and approval."[22] Perhaps Defendant OMB is employing a formalistic interpretation of what constitutes an "approved" plan to encompass final and formal approval of plans from both phases.

If Defendants' position is that that the plans underlying the currently occurring RIFs are not "approved," then Democracy Forward respectfully requests that the Court treat its motion as seeking plans that have been effectively approved such that they are already being carried out (e.g. HHS) or will be imminently (for example, at agencies who have renewed their "fork" resignation offers like the Departments of Defense, Agriculture, Housing and Urban Development, Transportation, and the Small Business and General Services Administrations).[23] The fact that Defendants may develop future plans (such as for "a positive vision" of restructuring under Phase 2 *following* their mass workforce reductions) does not impact the conclusion that plans being carried out now (e.g. in "Phase 1") should be treated as approved.[24]

---

[22] *See Guidance on Agency RIF and Reorganization Plans*, https://perma.cc/HDG5-43LW.

[23] *See* Friedman, https://perma.cc/RR9F-UZTX.

[24] *Guidance on Agency RIF and Reorganization Plans,* https://perma.cc/HDG5-43LW.

That Defendants may only be the initial stages of reviewing later Phase 2 reorganization plans after already effectively approving Phase 1 mass terminations does nothing to diminish the urgent need to inform the public about the Administration's decisions to dramatically reduce the workforce—and thus the functional capacity—of agencies across the federal government.

For the avoidance of doubt, Democracy Forward has attached an amended proposed order that more specifically defines the subset of responsive records subject to rapid processing and production. This would make clear that the Court's order would apply to "Phase 1" RIF plans that Defendants have effectively approved, in whole or in part and either formally or informally, and which would thus logically include agencies that have submitted Phase 1 RIF plans and subsequently carried out mass RIFs (including, at a minimum, the Departments of Education and HHS).

> 2.    **Substantial information in the approved RIF plans is likely subject to disclosure.**

Defendants also argue that expedited processing is not warranted because the plans Democracy Forward seeks are facially exempt from production as they are deliberative. Defs.' Opp'n and MTD at 11; Defs.' Ex. A, Walsh Decl. ¶ 22. That's simply not true.

As an initial matter, whether the requested records may be exempt from disclosure does not alter the urgency to inform the public analysis under the FOIA's expedited processing criteria. Courts have consistently found expedited processing and preliminary injunctions warranted in FOIA cases where the requested records implicated deliberations, investigatory files, and national security concerns much more likely to be exempt from production than the documents at issue here. *See, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293 (D.D.C. 2017) (preliminary injunction issued for processing of records related to the President's legal authority and the conduct of a military strike); *Protect Democracy Project,*

*Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 136 (D.D.C. 2020) (preliminary injunction issued for production of records of communications between law enforcement agencies related to specific investigative effort).

But even if the question of whether records were likely to be exempt was relevant to the standard for granting expedited processing, expedition would still be warranted here. The RIF plans approved by OMB and OPM are very likely to have substantial information that is not subject to FOIA exemption, including the deliberative process privilege gestured at by Defendants. Defs.' Ex. A, Walsh Decl. ¶ 22. The plans contain segregable, non-exempt factual information solicited by Defendants, there is no foreseeable harm to agency deliberations in releasing aspects of the approved plans that reflect final decisions, and the approved plans may have been "adopted" by Defendants and the Administration thus losing their pre-decisional nature.

OMB and OPM directed agencies to include information in their plans that is factual, including information about agency structures and functions, typical practices, and broad agency judgments about their duties. Regardless of their approval status, this information is not plausibly deliberative and exempt from FOIA disclosure. For example, agencies were directed to include the following in their plan submissions:

- "[t]he competitive areas and organizational components that the agency *has targeted*," (emphasis added)
- "All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations"
- "Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities."
- "A list of agency subcomponents or offices that provide direct services to citizens."[25]

---

[25] *Id.*

The D.C. Circuit has long held that such factual information—even if contained within a deliberative document—is segregable and not exempt from disclosure under FOIA. *See EPA v. Mink*, 410 U.S. 73, 91 (1973) (refusing to extend deliberative process privilege protection to "factual material" within "a memorandum with matters of law, policy, or opinion").

Second, there can be no foreseeable harm in disclosing plans to conduct mass RIF terminations after the Administration—through Defendants' approval—has made a decision to carry them out. 5 U.S.C. § 552(a)(8)(A)(i)(I) ("an agency shall withhold information … *only* if the agency reasonably foresees that disclosure would harm an interest protected by an exemption") (emphasis added). Courts have repeatedly held that to withhold deliberative information agencies must "connect[] the harms" in a "meaningful way to the information withheld, such as by providing context or insight into the specific decision-making process or deliberations at issue, and how they in particular would be harmed by disclosure." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 19-800, 2020 WL 5798442, at *4 (D.D.C. Sept. 29, 2020); *see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019); *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 17-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

Although there could plausibly be harm to an agency's deliberative process by disclosing a RIF plan's deliberative discussions about the costs and benefits assessed in taking a course of action or recommendations that were rejected, there is no plausible harm to an agency's ability to deliberate frankly in disclosing material that merely reflects decisions that have been made. Disclosing, for example, that OMB and OPM have finally approved HHS's decision to terminate

all FOIA staff in component HHS agencies (which public reporting suggests they did[26]) without disclosing any deliberative concerns raised about this course of action could not plausibly chill HHS deliberations. Withholding such information reflecting final decisions made would be the type of "abuse of Exemption 5 and the deliberative process privilege" that the D.C. Circuit has warned against. *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (finding agency had not justified withholding a draft Inspector General report and draft presentation slides as it had shown no concrete foreseeable harm would flow from disclosure).

Third, the structure of Defendants' process—requiring submission of plans for "approval"[27]—suggests Defendants may have converted approved plan documents into records that are no longer "predecisional" and covered by the deliberative process privilege, at least as to those portions that have been approved. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153, 161 (1975) (finding FOIA Exemption 5 can "never apply" to "final opinions' which not only invariably explain agency action already taken or an agency decision already made but also constitute 'final dispositions' of matters by an agency.")

### 3. Agencies cannot escape the FOIA statute's expedited processing standard by firing their FOIA staff.

Democracy Forward filed the FOIA requests at issue precisely because the Administration's mass RIF termination plans threaten "the functioning of hundreds of agencies

---

[26] Sydney Lupkin, *After promising transparency, RFK guts public records teams at HHS*, NPR (Apr. 3, 2025), https://www.npr.org/sections/shots-health-news/2025/04/03/g-s1-57888/hhs-fda-rfk-foia-public-records [https://perma.cc/RL8A-4Y8B].3, 2025), https://www.npr.org/sections/shots-health-news/2025/04/03/g-s1-57888/hhs-fda-rfk-foia-public-records [https://perma.cc/RL8A-4Y8B].

[27] This factor likely depends on how Defendants have approved these plans, and whether they have explicitly adopted the reasoning contained within the plans.

and components across the federal government." McGrath Decl. Ex. 1 at 9, ECF No. 3-2. Now

Defendants argue that their own "staffing constraints" are a further reason that expedited

processing is not warranted and "infeasible." Defs.' Opp'n and MTD at 10-11. Although

Defendants carefully avoid attributing a cause to their "recent" staff departures, public reporting

suggests Defendant OPM recently terminated its FOIA staff through a RIF.[28] Democracy

Forward noted this development twice in its opening brief, ECF No. 3-1 at 6, 20, and Defendants

have not disputed it. Defendant OMB also cites "recent staff departures" as a reason it cannot

rapidly produce records here. Defs.' Opp'n and MTD at 4.

Defendants, of course, do not invoke any statutory exception to the statute's expedited

processing requirement for agencies that fire or otherwise lose their FOIA staffers. And a court

in this district has recently expressed profound skepticism "that an agency can avoid its

obligations under FOIA—including the obligation to process a request in an efficient and prompt

manner—by simply implementing a reduction-in-force." *Ctr. to Advance Sec. in Am. v. U.S.

Agency for Int'l Dev.*, No. CV 24-3505 (RDM), 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025)

(granting a stay "only because it is unopposed."). As a practical matter, Defendants can use staff

that is not assigned to FOIA processing on a full-time basis to assist in processing the records of

national importance requested here.

---

[28] GovExec Staff, *RIF Watch: See Which Agencies Are Laying Off Federal Workers*, GovExec (Mar. 24, 2025), https://www.govexec.com/workforce/2025/02/rif-watch-see-which-agencies-are-laying-federal-workers/403342/ [https://perma.cc/WZX7-HV77] (In late February, OPM virtually eliminated its Human Capital Data Management and Modernization office. Several dozen employees received RIF notices and only 10 were spared. OPM has also laid off employees from its privacy and Freedom of Information Act office. OPM has also eliminated its Chief Technology Office).

**4.    Because expedited processing is warranted, this case is not premature and is subject to judicial review.**

An agency must respond to a request for expedited processing "within 10 days after the *date of the request*" and failure to do so is "subject to judicial review." 5 U.S.C. § 552(a)(6)(E)(ii, iv) (emphasis added); *see also* Guide to the Freedom of Information Act, U.S. Dep't of Just., www.justice.gov/oip/page/file/1199421/dl?inline [https://perma.cc/9CD2-VW3N] ("Agency denials of requests for expedited processing and the failure to respond timely to such a request are subject to judicial review."). It is not disputed that Democracy Forward submitted its requests on March 12, 2025,[29] and filed suit on March 23, 2025, 11 days later. McGrath Decl. Exs. 1-3; Defs.' Opp'n and MTD at 13. It is also not disputed that Democracy Forward followed-up with both Defendants regarding its expedited processing requests on March 21, 2025 and provided additional information to support its requests. McGrath Decl. Exs. 4, 5. Defendants did not respond to Democracy Forward's requests for expedited processing until April 1, 2025. Defs.' Exs. A, B, C.

Democracy Forward filed this suit based on Defendants' failure to respond to its requests for expedited processing within 10 days, not on the basis of having constructively exhausted administrative remedies through Defendants' failure to issue a full determination within 20

---

[29] Defendant OPM complains first that the request was received only on March 13, 2025, because it was emailed after the close of business. But it is the "date of the request" not the date the agency opens it that controls the time limits in the statute. 5 U.S.C. § 552(a)(6)(E)(ii, iv). The request was also sent to OMB in the evening, but Defendants have not raised the same objection there. OPM also complains that it has recently instructed requesters not to submit requests by email any longer. But, as noted in Plaintiff's opening brief and as remains true at the time of the writing, OPM's website continues to state that is an acceptable—even preferred—form of submission. OPM's website currently states "to the extent feasible, FOIA requests for agency records should be submitted by email to FOIA@opm.gov." *Freedom of Information Act, Contacts*, OPM, https://www.opm.gov/information-management/freedom-of-information-act/#url=Contacts [https://perma.cc/K8YW-54NQ] (last accessed Mar. 20, 2025). Democracy Forward consequently submitted the requests via email.

working days. *See* Compl., ECF No. 1. Democracy Forward's requests for expedited processing, which Defendants did not respond to within 10 days, are subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(ii, iv). Indeed, despite Defendants' protestations that this case should be dismissed for failure to exhaust administrative remedies, they elsewhere concede that the case should *not* be dismissed "if the Court finds that Plaintiff is entitled to expedited processing"—which it should. Defs.' Opp'n and MTD at 9. The urgent need for the information at issue here is clear, expedited processing is warranted, and the case should not be dismissed.

In drafting legislation that subjected agency failures to promptly respond to expedited processing requests to judicial review, Congress surely had in mind situations just like this one: where there is an urgent need to inform the public about a matter of national importance because "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

**B.    Democracy Forward's effort to tailor its requested relief to "approved" RIF plans to ensure practicability and reduce burdens is not a new request.**

Democracy Forward has moved for preliminary relief on a subset of records responsive to its original request. Specifically, it now seeks RIF plans that have been effectively approved by Defendants, which is necessarily a subset of all RIF plans submitted to Defendants. Defendants' arguments to the contrary are illogical. *See* Opp'n and MTD at 15-16.

Democracy Forward's narrow request for relief was an effort to reduce the processing burden that would fall on Defendants and to prioritize production of records likely not subject to significant exemptions or other limitations on disclosure. To state the obvious, if a plan was submitted to Defendants on March 13 but will not be approved until April 8, the document still exists and is responsive to Democracy Forward's requests before April 8. Democracy Forward

merely asks that Defendants rapidly process and produce plans *after* they receive Defendants'
approval.

As discussed above, OMB's statement that no plans have yet been "approved"— given
ongoing RIF activity—appears to reflect a cramped view of what "approved" means that may
involve eliding the distinction between "Phase 1" RIF plans and "Phase 2" reorganization plans
or otherwise failing to acknowledge effectively approved plans that are in fact being carried out.
Defs.' Ex. A, Walsh Decl. ¶ 23. Defendants' wordsmithing and OMB's assessment that there are
no responsive "approved" documents run afoul of this Circuit's repeated admonition that
agencies have "a duty to construe a FOIA request liberally." *Nation Mag., Washington Bureau v.
U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citing *Truitt v. U.S. Dep't of State*, 897
F.2d 540, 544–45 (D.C. Cir. 1990)).

## CONCLUSION

Democracy Forward respectfully asks that this Court order the limited relief it has sought
here to inform the public about the government's decision to undertake actions of tremendous
national consequence. Democracy Forward asks that Defendants be ordered to produce Phase 1
RIF plans submitted to Defendants by any agencies which Defendants have subsequently
effectively approved in whole or in part, formally or informally, as soon as practicable, with all
approved Phase 1 plans at the time of the Court's order to be produced by April 11, 2025, or
within seven days of the Court's order (whichever is later), and with expedited rolling
productions every seven days as additional RIF plans are approved.

Democracy Forward here attaches an amended proposed order that seeks to ensure the
limited relief it has requested is clearly understood.

Dated: April 4, 2025

Respectfully submitted,

*/s/ Daniel A. McGrath*
Daniel A. McGrath (D.C. Bar No. 1531723)
Robin Thurston (D.C. Bar No. 1531399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 701-1782
dmcgrath@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiff*