**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, <br><br> *Plaintiff*, <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, *et al.*, <br><br> *Defendants*. | Civil Action No. 25‑858 (SLS) <br><br> Judge Sparkle L. Sooknanan |

## <u>MEMORANDUM OPINION</u>

On February 11, 2025, the President issued an Executive Order directing federal agencies to "promptly undertake preparations to initiate large-scale reductions in force" across the federal government. Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). This prompted a joint memorandum from the Office of Management and Budget (OMB) and the Office of Personnel Management (OPM) ordering agencies to submit plans to implement the President's Executive Order. Democracy Forward Foundation (Democracy Forward) lodged three requests under the Freedom of Information Act (FOIA) to obtain these plans and other related information. And it requested expedited processing under the statute, citing a compelling need to inform the public about the Administration's plans to slash the federal workforce. When it received no response from OMB and OPM on its expedition request within the ten-day period prescribed in the statute, Democracy Forward sued the agencies for failure to grant expedited processing. It now seeks a preliminary injunction requiring the Defendants to expedite processing and to produce certain records by today, April 9, 2025. Meanwhile, the Defendants have moved to dismiss the Complaint for failure to exhaust administrative remedies.

The Court recognizes the tremendous public interest in anticipated mass firings across the federal workforce. The seemingly baseless claims of unproductive federal employees and tax dollars being siphoned off to fund useless government programs have led to widespread confusion and panic. This rhetoric is a slap in the face to hardworking federal employees across our country, many of whom have spent their entire careers serving the American people. And firings on this unprecedented scale have the potential to impact crucial government services in communities nationwide. But applying the governing standards, Democracy Forward is not entitled to a preliminary injunction requiring expedited processing of its FOIA requests.

Preliminary injunctions in the FOIA context are extraordinarily rare. And critically, Democracy Forward has not established either likelihood of success on the merits or irreparable harm. Congress amended FOIA to provide for expedited processing of requests for agency records only in narrow circumstances. *See Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001). "Congress' rationale for a narrow application is clear: Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." *Id.* (cleaned up). Although Democracy Forward seeks information of immense public importance, at least on this record, it has not identified a sufficiently imminent event that would justify expediting its broad FOIA requests.

The Court's decision says nothing about Democracy Forward's entitlement to the records it seeks. Congress enacted FOIA to promote broad disclosure of government records, and that tool is particularly important in this moment. OMB and OPM have a statutory obligation to respond to Democracy Forward's requests and make their records available. But Democracy Forward has not established that the Court should move its FOIA requests to the front of the line—ahead of requests

submitted by other concerned citizens also seeking transparency from the federal government. That would "disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *See id.*

 For these reasons and the reasons that follow, the Court denies both motions.

## BACKGROUND

### A.    Statutory Background

"In order to open agency action to the light of public scrutiny, . . . FOIA requires federal agencies, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *ACLU v. U.S. Dep't of Just.*, 750 F.3d 927, 929 (D.C. Cir. 2014) (citation omitted) (quoting 5 U.S.C. § 552(a)(3)). "As the Supreme Court has 'consistently recognized[,] . . . the basic objective of the Act is disclosure.'" *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 7 (D.D.C. 2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979)). "At the same time, however, the statute represents a 'balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information.'" *Id.* (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)).

FOIA generally gives agencies twenty business days after receiving a FOIA request to determine "whether to comply with such a request." 5 U.S.C. § 552(a)(6)(A)(i). After making this determination, the agency must "immediately notify the person making such request of . . . such determination and the reasons therefor" and of "the right of such person to appeal to the head of the agency any adverse determination." *Id.* "Thereafter, where the agency identifies responsive, non-exempt records, 'the records shall be made promptly available to such person making [the] request.'" *Daily Caller*, 152 F. Supp. 3d at 8 (citing 5 U.S.C. § 552(a)(6)(C)(i)).

Agencies generally process FOIA requests on a first-in, first-out basis. *Id.* But Congress amended FOIA in 1996 to require agencies to establish procedures for expediting the processing of certain requests. *Id.* (citing Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104231, § 8, 110 Stat. 3048). Agencies must make a "determination of whether to provide expedited processing," and provide notice of that determination "to the person making the request, within 10 days after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). "Requests granted expedited processing under this section must be processed 'as soon as practicable.'" *Daily Caller*, 152 F. Supp. 3d at 8 (quoting 5 U.S.C. § 552(a)(6)(E)(iii)).

### B.    Factual and Procedural Background

On February 11, 2025, President Donald J. Trump issued an Executive Order directing agency heads to "promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). And on February 26, 2025, OMB and OPM issued a joint memorandum to the heads of all executive agencies providing guidance on how to implement the President's Executive Order. Off. of Mgmt. & Budget, Exec. Off. of the President, *Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, at 1 (Feb. 26, 2025), https://perma.cc/9WVA-74JX (Joint Memorandum). According to the memorandum, federal tax dollars were being "siphoned off to fund unproductive and unnecessary programs" and the federal bureaucracy was "bloated" and "corrupt." *Id.* The memorandum directed agency heads to submit Agency RIF and Reorganization Plans (AARPs) to OMB and OPM in two phases. *Id.* at 1–4. "Phase 1 AARPs" had to "focus on initial agency cuts and reductions," and they were due to OMB and OPM by March 13, 2025. *Id.* at 3. "Phase 2 plans" were meant to "outline a positive vision for more

productive, efficient agency operations going forward," and they are due to OMB and OPM by April 14, 2025. *Id.* at 4.

This memorandum came around the same time as a series of actions by the Trump Administration signaling an intent to engage in mass firings of federal workers. For example, the Administration swiftly fired employees at the U.S. Agency for International Development and the Consumer Financial Protection Bureau, as well as countless probationary employees. Compl. ¶ 14, ECF No. 1. And more recently, the Administration reduced the Department of Education staff by about fifty percent. *Id.* ¶ 15.

Democracy Forward is a not-for-profit organization that "works to promote transparency and accountability in government, in part, by educating the public on government actions and policies." *Id.* ¶ 3. It is worried that mass firings "will repeat . . . again and again" following OMB and OPM's approval of the RIF plans submitted by agency heads. *Id.* ¶ 18. So on March 12, 2025, it sent one FOIA request to OMB and two to OPM. *See id.* ¶¶ 25–33.

The first FOIA request went to OMB. *Id.* ¶ 25. In it, Democracy Forward sought expedited processing for: "All Agency RIF and Reorganization Plans ("AARPs") submitted to OMB . . . by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum[.]" *Id.*

The second FOIA request went to OPM. *Id.* ¶ 28. And Democracy Forward sought expedited processing for: "All Agency RIF and Reorganization Plans ("AARPs") submitted to OPM . . . by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum[.]" *Id.*

The third FOIA request also went to OPM. *Id.* ¶ 31. This time, Democracy Forward sought "[a]ll electronic communications . . . of Acting Director [Ezell and others] regarding the

development, approval, and implementation of ARRPs, including directives and guidance sent to other agencies." *Id.* It also sought "[a]ll electronic communications . . . between (1) any OPM officials [on an included list] and (2) Elon Musk, or any representatives of Elon Musk or DOGE, or any representatives of the Executive Office of the President[.]" *Id.*

On March 23, 2025, eleven days after submitting these FOIA requests, Democracy Forward filed a Complaint in this Court alleging that OMB and OPM had "failed to notify Democracy Forward of determinations regarding Democracy Forward's requests for expedited processing of its FOIA requests and has failed to grant expedited processing." *Id.* ¶ 34. It brought a single claim for failure to grant expedited processing in violation of 5 U.S.C. § 552(a)(6)(E)(iii). *Id.* ¶¶ 35–36.

On March 24, 2025, Democracy Forward moved for a preliminary injunction as to its first two FOIA requests—the ones asking for plans submitted to OMB and OPM. *See* Mot. Prelim. Inj. at 1, ECF No. 3. It asked this Court to require the "Defendants to process these requests as soon as practicable, and to produce, no later than April 9, 2025, a limited subset of the requested records: those RIF plans that Defendants have approved with rolling productions thereafter." *Id.* at 1–2.

On March 25, 2025, OMB acknowledged receipt of the OMB request. Defs.' Opp'n at 3, ECF No. 10 (citing Walsh Decl. ¶ 5). And OPM followed suit on April 1, 2025, *id.* at 5 (citing Aponte-Rossini Decl. ¶¶ 5, 9), the same day that both agencies denied expediting processing, *see id.* at 4–5.

On April 2, 2025, the Defendants filed their Motion to Dismiss and Opposition to the Motion for Preliminary Injunction. Mot. Dismiss, ECF No. 9; Defs.' Opp'n. On April 4, 2025, Democracy Forward filed its Reply in support of its Motion for Preliminary Injunction and its Opposition to the Motion to Dismiss. Pl.'s Reply, ECF No. 16; Pl.'s Opp'n, ECF No. 17. And on

April 8, 2025, the Defendants filed their Reply in support of their Motion to Dismiss. Defs.' Reply, ECF No. 19. Both motions are now ripe for review.

## DISCUSSION

The Defendants move to dismiss the Complaint for failure to exhaust administrative remedies. The Court construes this as a motion under Federal Rule of Civil Procedure 12(b)(6). The Court denies the motion because Democracy Forward constructively exhausted its administrative remedies when the Defendants failed to notify Democracy Forward of their determination on expedited processing within the ten-day statutory deadline. The Court also denies Democracy Forward's Motion for Preliminary Injunction. While the mass firings across the federal workforce are indeed a matter of current exigency, Democracy Forward has not shown enough to justify entering this extraordinary remedy in the FOIA context, which courts rarely provide.

### A.    Motion to Dismiss

The Defendants move to dismiss the Complaint for failure to exhaust administrative remedies. *See* Mot. Dismiss at 11–13. While they do not clarify whether this motion should fall under Rule 12(b)(1) or 12(b)(6), the Court construes their motion as a Rule 12(b)(6) motion because they acknowledge that "FOIA's exhaustion requirements" are "not jurisdictional." *Id.* at 12 (quoting *Haleem v. Dep't of Def.*, No. 23-cv-1471, 2024 WL 230289, at *5 (D.D.C. Jan. 22, 2024)); *see, e.g.*, *Bestor v. CIA*, No. 04-cv-2049, 2005 WL 3273723, at *3 (D.D.C. Sept. 1, 2005) ("In any event, by failing to allege or demonstrate exhaustion of administrative remedies, plaintiff has failed under Federal Rule of Civil Procedure 12(b)(6) to state a claim upon which relief may be granted."). The Court denies this motion.[1]

---

[1] The Defendants agreed at oral argument that this motion should be construed as a Rule 12(b)(6) motion. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 22–23.

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted." *Kursar v. Transp. Sec. Admin.*, 751 F. Supp. 2d 154, 163 (D.D.C. 2010) (internal citations omitted). "In evaluating a motion under Rule 12(b)(6), the court must 'treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 370 (D.D.C. 2015) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up)). But the Court need not accept the plaintiff's "legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (cleaned up). "[T]he court 'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which . . . judicial notice' may be taken." *Donelson*, 82 F. Supp. 3d at 371 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

"As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020) (cleaned up). The exhaustion requirement provides the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citation omitted). It "also allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id.* (citation omitted). "Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts." *Id.* at 61–62 (collecting cases). And they have dismissed FOIA claims when the

plaintiff has failed to exhaust administrative remedies. *See, e.g.*, *Bestor*, 2005 WL 3273723, at *3–4.

But a FOIA requester is "'deemed to have exhausted his administrative remedies' if the agency fails to comply with applicable statutory time limits." *Machado*, 971 F.3d at 372 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). The Defendants make much of the fact that they have not missed their twenty-business-day deadline to determine whether to comply with Democracy Forward's FOIA requests. *See* Mot. Dismiss at 12 (citing 5 U.S.C. § 552(a)(6)(A)(i); *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013)). But that is not the applicable statutory time limit for Democracy Forward's claim. The Complaint alleges that the Defendants "failed to notify Democracy Forward of determinations regarding Democracy Forward's requests for expedited processing," Compl. ¶ 34, so the Court must look to the deadline for this notification. 5 U.S.C. § 552(a)(6)(E)(ii)(I) provides "that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." *Id.* Here, Democracy Forward filed their requests for expedited processing on March 12, 2025. *See* Compl. ¶¶ 25, 28, 31. And the Complaint was filed on March 23, 2025, alleging that the Defendant still had not responded. *See id.* ¶¶ 27, 30, 32. That means the Defendants did not notify Democracy Forward of their decision to decline expedited processing by the "applicable time limit provision[]," 5 U.S.C. § 552(a)(6)(C)(i), and Democracy Forward shall be "deemed to have exhausted its administrative remedies," *id.*, as to its only claim—that the Defendants failed to grant expedited processing in violation of 5 U.S.C. § 552(a)(6)(E)(iii), Compl. ¶ 36. Democracy Forward was therefore "entitled to file a lawsuit . . . for review of [the Defendants'] failure to respond to its request for expedited processing[.]" *Jud. Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111, 112 (D.D.C. 2001).

The Defendants quibble with this timeline as to OPM. They acknowledge that Democracy Forward submitted its requests for expedited processing to OPM on March 12, 2025. *See* Mot. Dismiss at 12 ("Plaintiff submitted their FOIA requests on March 12, 2025[.]"); *id.* at 4 ("In its first request to OPM, . . . Plaintiff sought expedited processing[.]"); *id.* at 5 ("In its second request to OPM, Plaintiff sought expedited processing[.]"). But they point out that the requests were submitted "after business hours," *id.*, and therefore were "not received until March 13, [2025]," *id.* at 13. According to the Defendants, this means that "the Complaint was filed even before the statutory ten-day period for issuing a determination on expedited processing had passed." *Id.* (citing 5 U.S.C. § 552(6)(E)(ii)(1)).

The Defendants' argument fails for two reasons. First, this has been construed as a Rule 12(b)(6) motion, so the Court may not look beyond the Complaint, *Donelson*, 82 F. Supp. 3d at 371, which says nothing about late-night submissions, *see generally* Compl. Second, the statutory deadline does not give agencies ten days from the date of receipt; it gives them ten days from "the date of the *request*." 5 U.S.C. § 552(a)(6)(E)(ii)(I) (emphasis added). And according to the Complaint, the FOIA requests for expedited processing were submitted on March 12, 2025. *See* Compl. ¶ 28. Democracy Forward has therefore constructively exhausted its administrative remedies, and the Court denies the Defendants' Motion to Dismiss under Rule 12(b)(6).[2]

---

[2] The Defendants clarified at oral argument that they read the Complaint as including an additional claim for failure to produce documents, which they say should be dismissed for failure to exhaust administrative remedies because that claim was brought before the applicable twenty-day deadline in FOIA. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 19–22. They cited the Complaint's request for an order requiring the Defendants to produce certain records by April 9, 2025, or within seven days of the Court's order. *See id.*; *see also* Compl., Request for Relief, ¶ 1. But the Court reads the Complaint as including only one claim for relief—the claim that the Defendants violated FOIA "[b]y failing to grant [the] Plaintiff's requests for expedited processing," Compl. ¶ 36. And as to that claim, the Defendants conceded both that the ten-day rule applies and that the Court may review it. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 19–22.

**B.      Motion for Preliminary Injunction**

Democracy Forward seeks "a limited preliminary injunction, requiring [the] Defendants to process [its] requests as soon as practicable, and to produce, no later than April 9, 2025, a limited subset of the requested records: those RIF plans that [the] Defendants have approved with rolling productions thereafter."[3] Mot. Prelim. Inj. 1–2. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) (citation omitted). It "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Court will address both (1) the request for expedited processing and (2) the request for production by a certain date.

"[I]n considering a plaintiff's request for a preliminary injunction a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." *Al-Fayed*, 254 F.3d at 303 (citation omitted). "Plaintiffs are not required to prevail on each of these factors." *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 42 (D.D.C. 2006). "Rather, these factors must be viewed as a continuum, with more of one factor compensating for less of another." *Id.* (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–45 (D.C. Cir. 1977)). "An injunction may be justified 'where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.'" *Id.* (quoting *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). "Conversely, when the other three factors

---

[3] Democracy Forward originally sought "RIF plans that [the] Defendants have approved." Mot. Prelim. Inj. at 1–2. But it changed course in its Reply, asking the Court to "treat its motion as seeking plans that have been effectively approved" following Phase 1. Pl.'s Reply at 10.

strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a 'substantial' case on the merits." *Id.* (quoting *Washington Metro. Area Transit Comm'n*, 559 F.2d at 843–45). An injunction may be issued "with either a high probability of success and some injury, or vice versa." *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

Preliminary injunctions requiring agencies to expedite FOIA processing and to produce responsive documents by a certain date are "mandatory" preliminary injunctions. *Daily Caller*, 152 F. Supp. 3d at 5–6. Mandatory preliminary injunctions are injunctions that "alter, rather than preserve, the *status quo* by commanding some positive act." *Id.* at 6. "[J]udges on this Court have required the moving party to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Id.* (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (collecting cases)). It therefore makes sense that "preliminary injunctions are ordinarily not awarded in FOIA cases." *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019).

### 1.    Expedited Processing

Democracy Forward first requests an order requiring the Defendants to expedite their processing of the FOIA requests. *See* Mot. Prelim. Inj. at 1. After considering all four preliminary injunction factors, the Court declines to provide this "extraordinary remedy." *Winter*, 555 U.S. at 24.

### a.  Likelihood of Success on the Merits

The first factor is whether Democracy Forward has a substantial likelihood of success on the merits. *Al-Fayed*, 254 F.3d at 303. FOIA provides that "[e]ach agency shall promulgate

regulations . . . providing for expedited processing of requests for records . . . (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). And the D.C. Circuit has made clear that an agency is not free "to offer its own definition of 'compelling need'" since "[t]hat term is defined by FOIA itself[.]" *Al-Fayed*, 254 F.3d at 307. Democracy Forward argues that it has a compelling need under FOIA. *See* Mem. Supp. Mot. Prelim. Inj. at 11–12; Motions H'rg (Apr. 8, 2025), Draft Tr. at 8 (conceding that it does not seek expedition under the other category). So the Court will look to the statute.[4]

"[A] number of elements go into an analysis of whether [a] 'compelling need' exists." *Al-Fayed*, 254 F.3d at 308. "FOIA's definition of 'compelling need' has two branches: '(I) that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.'" *Id.* (quoting 5 U.S.C. § 552(a)(6)(E)(v)). Democracy Forward stipulated at oral argument that it is only making an argument under the second branch. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 8–9. And both Parties agree that Democracy Forward is primarily engaged in disseminating information.

---

[4] 5 U.S.C. § 552(a)(6)(E)(iii) provides that "[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request[,] shall be subject to judicial review[.]" *Id.* Here, it is not clear whether the Court should review the Defendants' denials of expedition, which occurred after the Complaint and the Motion for Preliminary Injunction, *see* Defs.' Opp'n at 3, 5, or the Defendants' failure to respond to the requests for expedition within the statutorily required ten days, as alleged in the Complaint, *see* Compl. ¶ 34. But this distinction makes no difference here. A "district court must review de novo an agency's denial of a request for expedition under FOIA," *Al-Fayed*, 254 F.3d at 308, "rather than defer to agency determinations," *id.* at 301. The Defendants agreed on this point at oral argument. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 23–24 ("[A]t the end of the day, the law requires *de novo* review . . . . So it's the same basket.").

*See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 24; Compl. ¶ 3. So the only question is whether Democracy Forward has shown an urgency to inform the public concerning actual or alleged federal government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v).

The D.C. Circuit has held that courts must consider three factors when deciding whether FOIA requestors have demonstrated an "urgency to inform" and hence a "compelling need": "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. And it has explained that an "overarching principle" motivating Congress was a desire that "[t]he specified categories for compelling need are intended to be narrowly applied." *Id.* (quoting H.R. Rep. No. 104-795, at 26 (1996)). After all, "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id.* (cleaned up).

The third and first factors easily favor Democracy Forward. The Defendants agree that the FOIA requests concern federal government activity. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 24. And Democracy Forward has demonstrated that the current Administration's "large scale terminations of federal workers" is a matter of current exigency to the American people. Mem. Supp. Mot. Prelim. Inj. at 11. Courts often look to objective markers like the volume of news articles and media reports to discern whether there is a current exigency. *See CREW v. U.S. DOGE Serv.*, No. 25-cv-511, 2025 WL 752367, at *9 (D.D.C. Mar. 10, 2025) ("As just explained, USDS has been the subject of numerous news articles cited in this opinion and in the parties' briefing— at least fifty, by the Court's count. This 'widespread media attention' suggests a matter of urgency."); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) ("But as evidence that they were justified, one need look no further than the

widespread media attention—including by some of the nation's most prominent news outlets—paid both to the April 6 strike and its legality, as early as the date of Protect Democracy's requests."); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) (finding no exigency by distinguishing other cases that "cited numerous articles and reports, including many in mainstream news sources such as the New York Times, the Washington Post, the Los Angeles Times, and/or the San Francisco Chronicle" (collecting cases)). Here, Democracy Forward has provided no shortage of articles, including many from major publications.[5] The Defendants appeared to concede this factor at oral argument as well. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 26 (responding "[o]f course" when asked if he agreed that "mass lay[offs] or firings of federal employees is [a] fact of current exigency to the American people").

But Democracy Forward has failed to show that delay in receiving a response to its FOIA requests would compromise a significant recognized interest. Courts have recognized that this inquiry "tracks closely with [the] evaluation of irreparable harm." *CREW*, 2025 WL 752367, at *7; *see also Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 300 ("As may be apparent, in the course of evaluating whether 'delaying a response would compromise a significant recognized

---

[5] *See* Mot. Prelim. Inj., Exs. 1–2, ECF No. 3-2 (citing Chris Megerian, *The Trump Administration Sets the Stage for Large-Scale Federal Worker Layoffs in a New Memo*, Associated Press (Feb. 27, 2025), https://apnews.com/article/tump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b; Emily Peck, *White House Orders Agencies to Prepare for Large-Scale Firings*, Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs; Eileen Sullivan, *The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway*, N.Y. Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html); *id.*, Exs. 4–5, ECF No. 3-2 (citing, among other things, Cory Turner, *Trump Says Education Department Will No Longer Oversee Student Loans, "Special Needs*,*"* NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-sl-5336330/trump-education-department-student-loans-special-education-fsa; Associated Press, *Trump Administration Guts Board of Institute of Peace*, Politico (Mar. 17, 2025), https://www.politico.com/news/2025/03/17/us-institute-of-peace-says-doge-has-broken-into-its-building-00234639).

interest,' . . . the Court also found that harm would result from undue delay."). "[T]he question boils down to whether the records requested will become stale after the requested date and thus be of little value to inform the public of ongoing proceedings of national importance." *CREW*, 2025 WL 752367, at *7 (cleaned up).

Courts that have found that delay would compromise a significant recognized interest have tended to look for "an imminent event, after which . . . the utility of the records would be lessened or lost." *N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566, 2021 WL 1614817, *8 (D.D.C. Apr. 25, 2021) (cleaned up) (describing irreparable harm test); *see, e.g.*, *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98–99 (D.D.C. 2020) (concluding that "delay would compromise the Brennan Center's significant interest in informing the public concerning actual or alleged Federal Government activity related to the 2020 census and reapportionment" because "the 2020 census and reapportionment . . . will largely conclude early next year" (cleaned up)); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12  ("Given that the congressional hearings . . . are 'imminent,' the Court finds that Plaintiff adequately demonstrated that the value of the information would be lessened or lost absent expedited processing."); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("Furthermore, the urgency element is met because of the upcoming expiration at the special provisions of the Voting Rights Act in 2007."); *cf., e.g.*, *ACLU v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 30 (D.D.C. 2004) (finding compelling need where plaintiffs sought to provide information relating to "the ongoing national debate about whether Congress should renew Section 215 and other Patriot Act surveillance provisions before they expire in December 2025").

Courts have denied expedition by preliminary injunction when requestors have failed to allege a sufficiently imminent event. *See, e.g.*, *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d

38, 43 (D.D.C. 2006) (rejecting expedition argument "that the information is needed to inform the ongoing national debate about immigration policy" because the plaintiffs "failed to identify an imminent action indicating that the requested information will 'not retain its value if procured through the normal FOIA channels'" (quoting *Al-Fayed v. CIA*, No. 00-cv-2092, 2000 WL 34342564, at *5 (D.D.C. Sept. 20, 2000)); *Allied Progress v. CFPB*, 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (denying preliminary injunction for expedited processing of FOIA requests "predicated on *potential* Congressional action on regulations promulgated by CFPB," albeit on different grounds (emphasis added)). To be sure, requesters need not identify "a precise end-date" for the imminent event, *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13, or mark the exact moment when the information will become stale. But the outer bounds of the case law indicate that they still must provide concrete evidence that the event is imminent. *See id.* (granting a preliminary injunction for expedition where there was an "ongoing" impeachment inquiry that was "intended to conclude by the end of the year").

Democracy Forward argues that it must have access to the RIF plans "before they are put into effect and agencies take irreparable steps toward gutting their functional capacities, not months or years later." Mem. Supp. Mot. Prelim. Inj. at 15; *see also id.* at 16 (arguing that the firings will finalize a massive loss of resources essential to agency functioning that cannot be practically remedied after the fact). And it provides solid evidence that the Administration intends to effectuate the RIF plans that were submitted to OMB and OPM once approved. *See* Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025) (directing agencies to "promptly undertake preparations to initiate large-scale reductions in force"); Joint Memorandum at 2 ("[A]gencies should focus on the maximum elimination of functions that are not statutorily mandated[.]"). Indeed, many mass firings are already underway. *See* Mot. Prelim. Inj., Exs. 4–5.

But the Court is less convinced, on this record, that implementation of the RIF plans at issue is imminent. At oral argument, Democracy Forward advanced two arguments on this point. It first pointed to the two-phase nature of the Joint Memorandum at the heart of these FOIA requests, *see* Motions H'rg (Apr. 8, 2025), Draft Tr. at 13–14, where Phase 1 focuses on agency cuts and reductions and Phase 2 focuses on a vision for more efficient agency operations moving forward, *see* Joint Memorandum. Democracy Forward said that Phase 2 "has a firm date of being finally completed on September 30, 2025, per [the] [M]emorandum," and that Phase 1 must "necessarily occur before that time period." Motions H'rg (Apr. 8, 2025), Draft Tr. at 13–14. But a close reading of the document reveals that the firings may well occur after September 30, 2025. Nowhere does it say that Phase 1 RIFs must occur before Phase 2 is implemented. *See generally* Joint Memorandum. To the contrary, it contemplates RIFs being implemented in 2026 and 2027, *see* Joint Memorandum at 4 (discussing "[a]ttrition achieved by RIFs" for "Fiscal Years 2025, 2026[,] and 2027"), and cites to an Appendix "for specific steps and timing," *id.*, which expressly states that "RIF timing may vary based on agency-specific requirements," *id.* at 7.

Democracy Forward next argued that many employees at the Department of Education will be terminated by June 9, 2025, based on the Department's already-released RIF notices. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 38–39. But this Department-specific timeline does not justify expediting Democracy Forward's FOIA requests at issue here, which ask for *all* RIF plans submitted by agency heads across the federal government, *see* Compl. ¶¶ 25, 28. The Court reserves judgment as to whether expedition would be warranted for a more targeted FOIA request seeking RIF plans submitted by the Department of Education or RIF plans that have been implemented by way of notice.

The Court is also not convinced that information about the RIF plans will become stale after the anticipated future widespread firings. While Democracy Forward's "FOIA requests seek records that will be indisputably valuable in informing the public about how the federal government functioned" throughout this process, they are not "'time-sensitive' in the sense of losing value vis-à-vis any date certain." *N.Y. Times Co.*, 2021 WL 1614817, at *8. The public has demonstrated great interest in these issues even as some "RIF plans have already begun to be put into effect." Mot. Prelim. Inj. Exs. 4–5 at 1; *see also id.* at 1–4 (collecting articles). And on the current record, there is no reason to believe that this interest will evaporate.

Democracy Forward also argues that "the public . . . badly needs information about the extent of the RIFs, and the consequent future impacts on government services, to meaningfully engage elected representatives to seek remedies or a change in course." Mem. Supp. Prelim. Inj. at 15–16. But accepting this justification "would likely sweep almost any FOIA request into the ambit of 'urgency' since FOIA requests are regularly designed to elicit information about how the government is performing its work." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 277 (D.D.C. 2012) (addressing argument that delay in agency rulemaking should be considered before the next elections). And Democracy Forward's supplemental requests for expedition show that there has already been public reporting on the extent of the RIFs and their impacts on government

services,[6] allowing the public—and Democracy Forward—to engage elected officials on this issue.

*Cf. Landmark Legal Found.* 910 F. Supp. 2d at 277 ("Moreover, nothing prevents Landmark from filing comments (citing already-public information) expressing concern that the delay in issuance of the rule may have been politically motivated."). The Court concludes that Democracy Forward has not demonstrated a compelling need and has therefore failed to show a substantial likelihood of success on the merits.

### b. Irreparable Harm

The next factor is whether the plaintiff would suffer irreparable injury without the requested injunction. *See Al-Fayed*, 254 F.3d at 303. The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "First, the injury 'must be both certain and great; it must be actual and not theoretical.'" *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). "Second, the injury must be beyond remediation." *Id.* Given this high standard, "courts have concluded that delay in processing of a FOIA request would cause irreparable harm" in only "a few rare FOIA cases in this District." *Brennan Ctr. for Just. at NYU Sch. of L.*, 498 F. Supp. 3d at 101. This is not one of those rare cases.

---

[6] *See* Mot. Prelim. Inj., Exs. 4–5 at 1–4 (citing, among other things, Jonaki Mehta, *How the Education Department Cuts Could Hurt Low-Income and Rural Schools*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-sl-5330917/trump-schools-education-department-cuts-low-income; Megan Cerullo, *Dismantling Department of Education Could Cause Chaos for Americans with Student Loans, Experts Warn*, CBS News (Mar. 21, 2025), https://www.cbsnews.com/news/tump-education-department-executive-order-student-loan/; Michael Bender & Aishvarya Kavi, *Education Department Sued Over Cuts to Civil Rights Office*, N.Y. Times (Mar. 14, 2025), https://www.nytimes.com/2025/03/14/us/politics/education-department -civil-rights-office.html; Elissa Miolene, *Staff at the US African Development Foundation Placed on Leave*, Devex (Mar. 20, 2025), https://www.devex.com/news/staff-at-the-us-african-development-foundation-placed-on-leave-109681; Tyler Pager, *Trump Orders Gutting of 7 Agencies, Including Voice of America's Parent*, N.Y. Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/us/trump-order-voice-of-america.html).

The irreparable harm inquiry largely overlaps with the prior analysis answering whether delay would compromise a significant recognized interest. *See CREW*, 2025 WL 752367, at *7; *Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 300. Again, courts often look for an "imminent event, after which . . . the utility of the records would 'be lessened or lost.'" *N.Y. Times Co.*, 2021 WL 1614817, at *8 (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12); *see, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 142 (D.D.C. 2020) (finding irreparable harm because voter-fraud-related FOIA request "is time sensitive due to the impending election"); *Brennan Ctr. for Just. at NYU Sch. of L.*, 498 F. Supp. 3d at 101 (finding irreparable harm because "the records . . . will become stale when the 2020 census and reapportionment process ends"); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13 (finding irreparable harm for FOIA requests where "impeachment proceedings . . . are intended to conclude by the end of the year"). And Democracy Forward has failed to identify a sufficiently imminent event after which the desired information (*i.e.*, RIF plans for all federal agencies) would become stale. *See supra*, at 15–20.

Democracy Forward cites no case that alters the Court's conclusion. First, it points to *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017). Mem. Supp. Prelim. Inj. at 15. The court there awarded a preliminary injunction requiring the production of documents under the Federal Advisory Committee Act because "plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing debate." *Dunlap*, 286 F. Supp. 3d at 110 (citation omitted). But the court did so in part because it was worried about the imminent end of an ongoing event. *See id.* (avoiding the harm of being "[p]revented from receiving key documents during the life of the White House Commission"). Second, Democracy Forward points to *Washington Post v. Department of Homeland Security*, 459

F. Supp. 2d 61 (D.D.C. 2006). Mem. Supp. Prelim. Inj. at 15. But that court found irreparable injury because of an "impending election." *Wash. Post.*, 459 F. Supp. at 75. And third, Democracy Forward cites *Elec. Privacy Information Center v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006). Mem. Supp. Prelim. Inj. at 15. But that case relied on a concession by the defendant that the FOIA request warranted expedition. *See Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 41 ("Given this concession, the court finds it hard to accept DOJ's current argument that disclosure is not urgent and that further delay will not harm EPIC.").

And Democracy Forward has proven it does not need to jump to the front of the FOIA line to galvanize the public conversation about mass federal firings. *Compare* Democracy Forward, *Investigation*, https://perma.cc/MAQ2-AUJ5 (disseminating information), *with Landmark Legal Found.*, 910 F. Supp. 2d at 278 ("Landmark may also still submit public comments to the proposed rule."). It is true that Democracy Forward's commentary "will not include information it might receive from the FOIA request[s]," but the Court is unconvinced that this harm would be irreparable, especially since much of the information "could fall under exemptions to the FOIA and thus be withheld or redacted." *Landmark Legal Found.*, 910 F. Supp. 2d at 278. Democracy Forward has therefore failed to satisfy the "high standard" for irreparable injury. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

### c. The Harm to Interested Parties and the Public Interest

The final two factors are "whether an injunction would substantially injure other interested parties" and "whether the grant of an injunction would further the public interest." *Al-Fayed*, 254 F.3d at 303. These two factors merge when the government is the opposing party. *See CREW*, 2025 WL 752367, at *10. The Court concludes that they favor the Defendants.

There is no question that "timely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA." *Daily Caller*, 152 F. Supp. 3d at 13. And the Court agrees with Democracy Forward that there is a "public benefit in the release of information that adds to citizens' knowledge of the activities of their government." Mem. Supp. Prelim. Inj. at 19 (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15 (cleaned up)). But widespread coverage of the mass firings is already in the public sphere. *See supra*, at 15 n.5, 20 n.6. Indeed, Democracy Forward cites some of its own work in this space, demonstrating that it "has not been stymied by any delay in production[.]" *N.Y. Times Co.*, 2021 WL 1614817, at *9; *see, e.g.*, Mem. Supp. Prelim. Inj. at 6 n.6 (citing Democracy Forward, *Investigation*, https://perma.cc/2WSW-JSJG; Democracy Forward, *Policy & Education*, https://perma.cc/W8NY-F2HX).

Meanwhile, allowing Democracy Forward to jump to the front of the FOIA processing line risks harming other requestors with more urgent needs. As the D.C. Circuit has warned, "an unduly generous approach would . . . disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Al-Fayed*, 254 F.3d at 310. This is particularly worrisome here, where there are approximately 1,900 pending OMB requests, Defs.' Opp'n at 4, and approximately 814 pending OPM requests, *id.* at 6. The Court does not see fit to order the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 24.

### 2.    Production by Certain Date

Democracy Forward also requests that the Court order the Defendants to "produce, [by] no later than April 9, 2025, a limited subset of the requested records: those RIF plans that [the] Defendants have approved with rolling productions thereafter." Mot. Prelim. Inj. at 1–2.

The Defendants urge the Court to deny this relief because Democracy Forward's FOIA requests sought *submitted* RIF plans and not *approved* RIF plans. *See* Defs.' Opp'n at 14–16.

After all, a court "lacks jurisdiction over a motion when it raises issues different from those presented in the complaint." *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 9 (D.D.C. 2014) (cleaned up); *see also id.* (confirming that the plaintiff's complaint referenced the FOIA requests at issue in preliminary injunction proceedings). But Democracy Forward is not seeking different documents. The approved RIF plans that it seeks are a subset—perhaps a null set—of the plans sought in the FOIA requests. Perhaps there are plans that have been approved that were never included in the plans submitted to OMB or OPM pursuant to the Joint Memorandum. But Democracy Forward does not ask for those; it asks only for a "limited *subset* of the requested records." Mot. Prelim. Inj. at 1–2 (emphasis added).

In any event, it appears that Democracy Forward will have to clear an even higher burden than that which was required for expedited processing. *See CREW*, 2025 WL 752367, at *7 ("When, as here, a requester seeks not just expedited processing but production of its requests by a date certain, it 'must do more than just show a likelihood of success that it is entitled to the expedited processing of its requests.'" (quoting *Brennan Ctr. for Just. at NYU Sch. of L.*, 498 F. Supp. 3d at 99)). And Democracy Forward conceded at oral argument that it is not entitled to this relief if the Court declines to grant expedited processing. *See* Motions H'rg (Apr. 8, 2025), Draft Tr. at 18–19. The Court therefore denies the motion for preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court denies the Defendants' Motion to Dismiss, ECF. No. 9, and denies Democracy Forward's Motion for Preliminary Injunction, ECF No. 3.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   April 9, 2025