**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>*Plaintiff*,<br><br>vs.<br><br>OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-0858 (SLS) |

**PLAINTIFF'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Introduction ........ 1
Background ........ 2
I. Defendants' RIF Memo ........ 3
II. Democracy Forward's FOIA Requests and Preliminary Relief ........ 4
III. OPM & OMB Withholding of ARRPs and Emails ........ 4
Legal Standards ........ 6
Argument ........ 7
I. Defendants' Blanket Withholding of *All* ARRPs Cannot Be Sustained. ........ 7
A. The ARRPs Contain Significant Categories of Factual Information That Is Subject to Disclosure. ........ 8
B. There Is No Foreseeable Harm in Releasing Proposals That Were Ultimately Carried Out. ........ 14
C. At Least Some ARRPs Were Not Predecisional and Deliberative at All. ........ 17
II. Defendant OPM Improperly Withheld Two Communication Records Under Exemption 5. ........ 20
A. OPM-Approved Answers to Agencies (May 27, 2026 Email pp. 73–74) ........ 20
B. ARRP Phase 1 Plan Summary Data Spreadsheet (Mar. 17, 2026 Production, p. 17) .. 21
Conclusion ........ 22

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Am. Fed'n of Gov't Emps. v. Trump ("AFGE")*,
2025 No. 3:25-cv-3698-SI (N.D. Cal. 2025) .................... 8, 19

**Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) .................... 11, 17, 19

**Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) .................... 7, 14, 15, 20–21

*Comm. for Freedom of the Press v. FBI*,
598 F.3d 876 (D.C. Cir. 2021) .................... 14

*Defs. of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) .................... 10

*DOJ v. Reps. Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .................... 6

*EPA v. Mink*,
410 U.S. 73 (1973) .................... 8

*Gallant v. NLRB*,
26 F.3d 168 (D.C. Cir. 1994) .................... 6

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002) .................... 21

*Jud. Watch, Inc. v. DOJ*,
No. 17-0832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) .................... 16

*Jud. Watch, Inc. v. DOJ*,
No. 19-cv-800 (TSC), 2020 WL 5798442 (D.D.C. Sept. 29, 2020) .................... 16

*Jud. Watch, Inc. v. U.S. Dep't of Def.*,
245 F. Supp. 3d 19 (D.D.C. 2017) .................... 13

*Levinthal v. FEC*,
219 F. Supp. 3d 1 (D.D.C. 2016) .................... 13



* Authorities principally relied upon are marked with an asterisk

*Machado Amadis v. U.S. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ..................... 7, 15

*Mapother v. Department of Justice*,
3 F.3d 1533 (D.C. Cir. 1993) ..................... 13, 14

*Mays v. DEA*,
234 F.3d 1324 (D.C. Cir. 2000) ..................... 21–22

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ..................... 7, 8

*Nat'l Sec. Arch. Fund v. CIA*,
402 F. Supp. 2d 211 (D.D.C. 2005) ..................... 13

*New York v. McMahon*,
826 F. Supp. 3d 184 (D. Mass. 2026) ..................... 8, 18

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (U.S. 1975) ..................... 17, 19

*Oglesby v. U.S. Dept. of Army*,
79 F.3d 1172 (D.C. Cir. 1996) ..................... 12, 13

*Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*,
57 F.4th 1061 (D.C. Cir. 2023) ..................... 12–13

*Petroleum Info. Corp. v. Dep't of Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ..................... 6, 7, 14

**Pub. Citizen v. OMB*,
598 F.3d 865 (D.C. Cir. 2010) ..................... 6, 7, 14, 21–22

*Quarles v. Dep't of Navy*,
893 F.2d 390 (D.C. Cir. 1990) ..................... 8

*Rosenberg v. U.S. Dep't of Def.*,
342 F. Supp. 3d 62 (D.D.C. 2018) ..................... 15

*Ryan v. DOJ*,
617 F.2d 781 (D.C. Cir. 1980) ..................... 6–7

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) ..................... 12



* Authorities principally relied upon are marked with an asterisk

*Tax'n with Representation Fund v. IRS*,
646 F.2d 666 (D.C. Cir. 1981) ........ 6

*Trump v. Am. Fed. of Gov't Emps, AFL-CIO*,
No. 24A1174 (U.S. June 2, 2025) ........ 19

*Vaughn v. Rosen*,
484 F.2d 820 (D.C. Cir. 1973) ........ 12

**STATUTES**

5 U.S.C.
§ 552(a)(8)(A) ........ 7
§ 552(a)(8)(A)(i)(I) ........ 16
§ 552(a)(8)(A)(ii) ........ 7
§ 552(a)(8)(A)(ii)(I) ........ 16
§ 552(b) ........ 10

**EXECUTIVE ORDERS**

Exec. Order 14120, *Implementing the President's "Department Workforce Optimization Initiative*," 90 Fed. Reg. 9669 ........ 2, 3

**FEDERAL RULES**

Fed. R. Civ. P. Rule 56(a) ........ 6

**LEGISLATIVE MATERIALS**

S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965) ........ 7

**OTHER AUTHORITIES**

Chris Megerian, *Nearly 90% of Consumer Financial Protection Bureau Cut as Trump's Government Downsizing Continues*, Assoc. Press (Apr. 17, 2025, 7:56 PM), https://perma.cc/R6GJ-2AZ7 ........ 15

Eric Katz, *Interior Department Offers Buyouts, Early Outs to Staff as It Looks to Build Housing on Federal Lands*, Gov't Exec. (Mar. 17, 2025), https://perma.cc/XLA4-RZTN ........ 15

Eric Katz, *IRS Sends RIF Notices as it Begins Widespread Layoffs*, Gov't Exec. (Apr. 2, 2025), https://perma.cc/K3EF-GLRR ........ 15



* Authorities principally relied upon are marked with an asterisk

Jory Heckman, *State Dept Lays Off 1,350 Employees as Reorganization Nears Final Phase*, Fed. News Network (July 11, 2025, 8:19 AM), https://perma.cc/T3S9-EVHE ........ 15

Paul Blumenthal & Jonathan Cohn, *Trump Administration Shutting Down HHS Legal Offices That Help Fight Fraud*, HuffPost (Mar. 11, 2025, 9:18 PM), https://perma.cc/S58Q-SZE4 ........ 18

Press Release, *HHS Office of General Counsel Announces Reorganization Effort,* Dep't of Health & Hum. Servs. (Mar. 11, 2025), https://perma.cc/D372-GX5F ........ 18

Press Release, *U.S. Department of Education Initiates Reduction in Force*, U.S. Dep't of Educ. (Mar. 11, 2025), https://perma.cc/GY9Y-KZWJ ........ 18

Russell T. Vought and Charles Ezell, *"Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf ........ 3



* Authorities principally relied upon are marked with an asterisk

## INTRODUCTION

Arguing that "tax dollars are being siphoned off to fund unproductive and unnecessary programs that benefit radical interest groups," Defendants Office of Management and Budget ("OMB") and the Office of Personnel Management ("OPM") directed all federal agencies to develop and submit Agency RIF and Reorganization Plans ("ARRPs") by March 13, 2025, as they implemented President Trump's order "to initiate large-scale reductions in force ["RIFs"]." Seeking answers regarding how federal agencies implemented these directives, Plaintiff Democracy Forward Foundation requested all federal agency ARRPs submitted to OMB and OPM via the Freedom of Information Act ("FOIA").

But even as Defendants directed agencies to include broad categories of factual information in their plans, and even after many agencies have implemented workforce reduction steps likely contained in those records, Defendants assert that every shred of information within all 147 ARRPs is predecisional, deliberative, privileged, and would cause foreseeable harm if disclosed. Defendants offer only a generalized declaration—which does not specifically describe a single actual ARRP—in support of this blanket position. Defendants' full withholding cannot be sustained for three primary reasons:

*First*, the handful of ARRPs that have been publicly released and Defendants' own memorandum make clear that the ARRPs contain entire sections with purely factual information about agency organization and functions, as well as workforce reduction steps *already* implemented before the plans' submissions. These large swaths of factual information are segregable from any tentative plans that are arguably deliberative and are subject to disclosure.

*Second*, even where portions of agencies' ARRPs contained future plans for workforce reductions, there can be no foreseeable harm to releasing that information in the instances where the agencies actually carried out those plans—and many agencies acted quickly to reduce their

workforces within days or weeks of their ARRPs' submission. Defendants do not explain how future agency deliberations would be chilled by disclosing plans in a formal agency submission that were ultimately carried out, nor could they.

*Third*, compelling evidence indicates that at least some ARRPs were wholly post-decisional and are not subject to the deliberative process privilege at all. The Department of Education, for example, announced a mass RIF two days before its ARRP was due to be submitted, indicating the ARRP reflected decisions already made rather than tentative proposals for deliberative consideration. The released ARRP of the National Endowment of the Humanities similarly indicated on its face that the plan reflected agency policy rather than a tentative proposal as it stated the agency "will" implement the ARRP "immediately." Courts that have considered ARRPs in the course of litigation, including through *in camera* review, have assessed that they were post-decisional, unprivileged documents reflecting decisions made rather than deliberations.

Defendant OPM also seeks to withhold information in communications records that reflects agency policy or factual information, rather than deliberation—including approved, final guidance for agencies regarding ARRPs and summary data regarding agencies' submissions of ARRPs. These records contain substantial non-exempt information subject to disclosure.

Plaintiff asks this Court to grant summary judgment in its favor and require Defendants to re-process for release the ARRPs and related records that it seeks.

## BACKGROUND

In February 2025, President Trump signed an executive order directing agencies to undertake "large-scale reductions in force (RIFs)," so expansive that the RIFs could reach any component or employee "not typically designated as essential" during a government shutdown. *See* Exec. Order 14120, *Implementing the President's "Department Workforce Optimization Initiative,"* 90 Fed. Reg. 9669 (Feb. 11, 2025) ("EO 14210"); Am. Compl. ¶ 13, ECF No. 22. To

accomplish these RIFs, EO 14210 directed agency heads to prepare for large-scale RIFs and to prioritize "offices that perform functions not mandated by statute." 90 Fed. Reg. at 9670.

## I. Defendants' RIF Memo

On February 26, 2025, OMB and OPM jointly issued a memorandum to the heads of all executive branch departments and agencies "instruct[ing]" each agency to submit plans for "large-scale reductions in force" to OMB and OPM for "approval" by March 13, 2025.[1] Claiming that "tax dollars are being siphoned off to fund unproductive and unnecessary programs that benefit radical interest groups," the RIF Memo asserted that the "federal bureaucracy" was both "bloated" and "corrupt." *Id.* at 1. The RIF Memo laid out a timeline on steps that agencies were to complete, including submitting for approval the agency's RIF and Reorganization Plans, or ARRPs, by March 13, 2025 (the "Phase 1 ARRPs") with other implementing tasks, including RIF notices and assessments, to be submitted no later than 30 days after the ARRP. *Id.* at 7 (App'x 1).

The RIF Memo stated that the Phase 1 ARRPs should "focus on initial agency cuts and reductions," and directed agencies to focus on "the maximum elimination of functions" not statutorily mandated. *Id.* at 3. The RIF Memo directed each agency to provide factual information about its structure and current function, including the statutes establishing agency components, and those agency components performing functions "not mandated by statute" as well as, separately, those that "provide direct services to citizens." *Id.* The RIF Memo also directed agencies to include in their Phase 1 ARRPs information reflecting steps *already* taken to reduce

---

[1] Russell T. Vought and Charles Ezell, *"Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf [https://perma.cc/HDG5-43LW] (the "RIF Memo").

workforce size, including "Attrition Achiev*ed* by RIFs," and the areas and components "that the agency *has* targeted." *Id*. at 3–4 (emphasis added).

## II. Democracy Forward's FOIA Requests and Preliminary Relief

On March 12, 2025, the Democracy Forward Foundation ("Democracy Forward") submitted FOIA requests to Defendants seeking these ARRPs, as well as related OPM communication records. Am. Compl. ¶¶ 26, 31, 35, ECF No. 22; Martinez Decl. Exs. 1–3.[2] Democracy Forward sought expedited processing in each of those requests, *see* Martinez Decl. Exs. 1–3, and later moved for a limited preliminary injunction seeking to require expedited processing and production of a limited set of records related to the Phase 1 ARRPs. *See* Mot. Limited Prelim. Inj., ECF No. 3 (Mar. 24, 2025). Defendants moved to dismiss the case. Defs.' Mot. Dismiss & Opp'n Pl's. Mot. Limited Prelim. Inj., ECF No. 9 (Apr. 2, 2025). After briefing and a hearing, the Court denied both Defendants' motion to dismiss and Plaintiffs' motion for a limited preliminary injunction. *See* Mem. Op., ECF No. 20 (Apr. 9, 2025). The Court noted that its decision "says nothing about Democracy Forward's entitlement to the records it seeks," and that "Congress [had] enacted FOIA to promote broad disclosure of government records, and that tool is particularly important in this moment." *Id.*

## III. OPM & OMB Withholding of ARRPs and Emails

Following the preliminary relief motion practice, the parties began providing monthly updates on Defendants' processing of Democracy Forward's requests via joint status reports ("JSRs") to the Court.

[2] Democracy Forward submitted the request at this time given the typical agency practice of cutting off search date ranges shortly after the request is received, to ensure that substantially all plans submitted to Defendants were responsive to the request.

*OPM and OMB ARRP FOIAs*

Democracy Forward's requests to OPM (25-OPM-1201-F) and OMB (2025-1131) both sought the ARRPs sent to the agencies as required by the RIF Memo. In July 2025, OMB issued its final determination: it had identified approximately 120 ARRPs but withheld them in full, explicitly referencing "OMB's position, as stated in the Walsh Declaration" (submitted more than three months earlier during the preliminary injunction briefing) that the records were "inherently predecisional and deliberative, and therefore protected from disclosure under FOIA Exemption 5." JSR ¶ 6, ECF No. 28 (July 30, 2025). In September, OPM similarly stated that it had "determined to withhold the [ARRP] records in full pursuant to FOIA Exemption 5." JSR ¶ 5, ECF No. 29 (Sept. 2, 2025). Democracy Forward now challenges Defendants' total withholding of the ARRPs. Defendants' declaration supporting their motion for summary judgment asserts that all 147 ARRPs are protected in their entirety by the deliberative process privilege through FOIA Exemption 5. Decl. Lance Harris ¶ 5, ECF No. 43–2 (Aug. 17, 2026) ("Harris Decl."). The declaration does not describe any particular ARRP and instead discussed all 147 documents categorically. *Id*.

*OPM Communications FOIA*

Democracy Forward's request (OPM FOIA request 25-OPM-1202-F) sought OPM communications regarding the ARRPs sought (part 1), and selected OPM communications with the Department of Government Efficiency ("DOGE"), Elon Musk, or the White House Office (part 2). In March 2026, OPM reported that it had finished production regarding the FOIA request. JSR, ECF No. 37 (Mar. 16, 2026). In April 2026, Democracy Forward advised OPM that it would challenge a number of the Exemption 5 redactions that OPM had claimed and may challenge the agency's search. OPM subsequently agreed to make a supplemental production of additional

records. JSR, ECF No. 38 (Apr. 15, 2026). Democracy Forward later added to that list after reviewing OPM's final production.

***

Defendants filed their motion for summary judgment, ECF No. 43, arguing that their full withholding of 147 ARRPs and withholdings within select communications records should be sustained. Plaintiff now files its opposition and cross-motion.

**LEGAL STANDARDS**

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Specifically, "summary judgment in favor of [a] FOIA plaintiff is appropriate" "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992). An agency affidavit is insufficient to support summary judgment in the agency's favor in a FOIA case when it lacks "reasonable specificity of detail," relies on "conclusory statements," or is "called into question by contradictory evidence in the record." *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (internal citation omitted).

FOIA places the burden on an agency to establish that a FOIA exemption applies, and that application is subject to *de novo* review. *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989). Under FOIA Exemption 5, the deliberative process privilege "covers only those portions of the documents that are both predecisional and deliberative." *Pub. Citizen v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010) (internal citation omitted). When an agency cannot show that documents are both "predecisional" and "deliberative," Exemption 5 provides no protection. *See Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 677–78 (D.C. Cir. 1981). Congress has sought to "keep Exemption 5 as narrow as was 'consistent with efficient Government operation.'"

*Ryan v. DOJ*, 617 F.2d 781, 790 (D.C. Cir. 1980) (citing S. REP. NO. 813, 89th Cong., 1st Sess. 9 (1965)). As such, agencies must disclose "non-exempt portions [of records] unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). The FOIA Improvement Act of 2016 specifically requires agencies to "'consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible'" and to "'take reasonable steps necessary to segregate and release nonexempt information.'" 5 U.S.C. § 552(a)(8)(A)(ii).

In addition to showing that the records are privileged, under the FOIA Improvement Act agencies must meet an "independent and meaningful burden" to show "foreseeable harm" from disclosure. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–70 (D.C. Cir. 2021) (discussing the foreseeable harm standard codified at 5 U.S.C. § 552(a)(8)(A)). To meet this burden an agency must link "specified harm" to the "specific information contained in the material withheld." *Id*. "Speculative or abstract fears" and "generalized assertions" will not suffice. *Id*. (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).

## ARGUMENT

### I. Defendants' Blanket Withholding of *All* ARRPs Cannot Be Sustained.

Defendants stake out the extreme position that every sentence of 147 ARRPs is privileged and exempt from disclosure. But their declaration's undifferentiated and sweeping generalizations about the plans' contents falls far short of meeting their "burden . . . to show that the requested material falls within a FOIA exemption," *Petroleum Info. Corp.*, 976 F.2d at 1433 (internal citation omitted). Nor could they meet that burden here for several reasons:

*First*, Defendants required that ARRPs include specific factual, not just deliberative, information about components, staffing, and actions *already* undertaken. RIF Memo at 3–4; *see Pub. Citizen*, 598 F.3d at 876. This information was largely requested separately from proposed

plans for future action through numbered items seeking background information distinct from plans for workforce reductions. RIF Memo at 3–4. Released ARRPs confirm that substantial swaths of factual information were in fact provided in a manner segregable from arguably deliberative content.

*Second*, there is no foreseeable harm in disclosing elements of these plans that were ultimately carried out, nor do Defendants address such harm in their vague declaration. Agencies promptly acted to reduce their workforces after submission of these plans, and Defendants' vague declaration does not offer any explanation for how disclosing implemented portions of ARRPs would chill future deliberations. *Third*, other courts that have analyzed ARRPs as a part of substantive legal challenges have concluded that at least some ARRPs were *wholly* post-decisional, unprivileged documents reflecting decisions already made rather than tentative recommendations. *See New York v. McMahon*, 826 F. Supp. 3d 184, 197–98 (D. Mass. 2026); *Am. Fed'n of Gov't Emps. v. Trump ("AFGE")*, No. 3:25-cv-3698-SI (N.D. Cal. July 9, 2025), ECF No. 177. Defendants fail entirely to discuss this category of ARRPs or whether the factors that made those ARRPs non-privileged apply to other withheld ARRPs. The contemporaneous workforce reduction actions of many agencies confirm that at least some ARRPs reflected decisions already made and are not privileged at all.

### A. The ARRPs Contain Significant Categories of Factual Information That Is Subject to Disclosure.

Courts have long held that "purely factual material" is subject to disclosure even when located within deliberative documents. *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *EPA v. Mink*, 410 U.S. 73, 88 (1973)). Factual information can only be withheld when it is "inextricably intertwined" with deliberative material or would itself disclose the agency's deliberations. *Mead Data Cent., Inc.*, 566 F.2d at 260. Defendants' own memorandum

and publicly available ARRPs directly refute their maximalist claim that disclosing "*any*" "factual material," within the 147 ARRPs—including "staffing data," "organizational characteristics," or "historical facts"—would reveal privileged deliberations and is "inextricably intertwined with recommendations" and "other deliberative material." Mot. at 19–20; Harris Decl. ¶ 37.[3]

Defendants directed agencies to include factual information in the ARRPs about their organization, functions, and actions *already* taken separately from their planned future actions. RIF Memo at 3–4. The few publicly released ARRPs show that this factual information is likely easily segregable from any tentative proposals or recommendations. Defendants' barebones statements to the contrary in their declaration do not stand up to logical scrutiny and fall far short of meeting their burden for full withholding.

*First*, Defendants required Phase 1 ARRPs to include background, factual information concerning the agencies' organization in addition to their forward-looking proposals, including:

- "1. A list of agency subcomponents or offices that provide direct services to citizens;"
- "2. Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities;"
- "3. All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations;"

RIF Memo at 3–4. Agencies' plans for future action (the only arguably deliberative material) were identified as separate topics to be included in the ARRP, such as "5.ii." for "The agency's target for reductions in FTE positions via RIFs," and "8." for "The agency's timetable and plan for implementing each part of its Phase 1 ARRP." *Id.*

The handful of publicly available ARRPs show that agencies did indeed report such purely

---

[3] Though the declaration uses "OPM" throughout, it states that it was made jointly for and on behalf of both Defendants. Harris Decl. ¶ 2.

factual information separately from plans for future action in a manner that can be "reasonably segrega[ted]," 5 U.S.C. § 552(b), and which is not "inextricably intertwined" with even arguably deliberative material. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90 (D.D.C. 2009). The National Endowment of Humanities ("NEH") ARRP, for example, copied the text of each of the eight numbered categories required by Defendants' RIF Memo and provided their responses to the wholly factual categories separately:

> **Phase 1 ARRP**
>
> Per the Guidance, the Phase 1 ARRP should identify:
>
> 1. **A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.**
>
> NEH does not have subcomponents and does not provide direct services to citizens (such as Social Security, Medicare, and veterans' health care). Congress created NEH with a mission to provide grants to non-profit organizations and individuals working in the humanities.

*See* Martinez Decl. ¶ 8 Ex. 4 at 1 (Mar. 13, 2025) (released in full via FOIA to requestor who produced in litigation). The Department of Energy ("DOE") similarly listed the information Defendants required point-by-point and provided factual information that is easily segregable from proposed future courses of action:

> 1. **A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.**
>
> Department of Energy (DOE) offices provide specific services to key partners and beneficiaries with both direct and indirect impacts on citizens and stakeholders, including national, economic, energy, and environmental security. For example:
>
> S2: The Office of the Deputy Secretary (S2) encompasses the Departmental organizations engaged in energy programs, environmental cleanup and remediation of contaminated sites, and other critical functions including personnel and physical safety/security, informing national security through intelligence and counterintelligence, oversight and policy development necessary for the overall operation of the Department.
>
> - S2 consists of 21 subcomponents. Of these subcomponents, 184 subsidiary organizations provide direct services to citizens. Direct services to citizens include providing public energy data, environmental cleanup of contaminated sites, a forum for dispute resolution, public information dissemination, and resources for American businesses.
>
> S3: The Office of the Under Secretary for Infrastructure (S3) advances energy technologies, enhances energy security, and modernizes the U.S. energy infrastructure. Most operate by providing funding, technical assistance, and policy support.
>
> - S3 consists of 8 subcomponents and the Power Marketing Administrations (Bonneville Power Administration, Southeastern Power Administration, Southwestern Power Administration, and Western Area Power Administration). Of these subcomponents, 21 subsidiary organizations provide direct services to citizens. Direct services to citizens include administering grants to states for home weatherization, offering information and assistance during energy emergencies, enhancing grid resilience and reliability, and providing technical assistance and administering grants to Indian tribes for energy development. Additionally, the Power Marketing Administrations (PMAs) operate electric systems and sell the electrical output of federally owned and operated hydroelectric dams in 34 states.
>
> S4: The Office of the Under Secretary for Science and Innovation (S4) oversees a broad portfolio of research and development activities, fostering partnerships with universities, national laboratories, and industry to advance cutting-edge technologies. The following offices within S4 provide direct services to citizens:

*See* Martinez Decl. ¶ 9 Ex. 5 at 6 (DOE ARRP) (Mar. 2025) (released in part via FOIA to Plaintiff).

*Second*, Defendants also directed agencies to include workforce reduction steps *already* undertaken. RIF Memo at 4 ("Attrition Achiev*ed*" and components agency "*has* targeted" for RIFs) (emphasis added). Defendants cannot claim that factual information related to actions already carried out at the time of the ARRPs' submission is predecisional and deliberative material: to be deliberative, a record must be "generated before the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Where actions were taken before the ARRPs were submitted, the portions of the records describing those actions already taken are not deliberative. DOE's ARRP shows that agency consequently reported factual information about "key actions" DOE had "already undertaken" in a manner separate from any planned future action:

> In an effort to achieve operational efficiency, the Agency has already undertaken several key actions with the following results:
>
> - 1,217 employees separated as a result of the Deferred Resignation Program (*DRP*),
> - 71 DEI employees who have been placed on administrative leave and will be prioritized in RIF implementation, and
> - 555 probationary employees terminated (may be reinstated due to court order issued March 13, 2025)

*See* Martinez Decl. ¶ 9 Ex. 5 at 8 (DOE ARRP).

The publicly available information—two incidentally available ARRPs and the RIF Memo—make Defendants' generalized contention that *all* of the factual material for each of the 147 ARRPs is deliberative in nature and "[cannot] be separated from the deliberative process" implausible. Mot. at 19. Defendants do not address the discrete categories of factual information requested, differentiate between ARRPs prepared by various agencies, or offer a *Vaughn* index with individualized reasoning to justify withholding each of these ARRPs. Because Defendants have fallen far short of "compl[ying] with the obligation to disclose reasonably segregable material," they have failed to adhere to their obligations under FOIA. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Defendants' claim that they conducted a "line-by-line review" of all 147 ARRPs and "carefully evaluated" each record before concluding that not a shred of factual information "could be meaningfully separated from deliberative content" cannot be sustained. Harris Decl. ¶ 37. This Court need not accept in blind faith the "conclusory and generalized" statements in Defendants' declaration given the clear indications that Defendants' description of the nature of at least some of the ARRPs is inaccurate. *Oglesby v. U.S. Dept. of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). Defendants have not met their burden for their blanket withholding because they cannot do so.

Defendants' caselaw does not rescue them: the cases they rely on either did not relate to

Exemption 5 and provided no contrary evidence to challenge the agency declaration, *see Perioperative Servs. & Logistic*s, *LLC v. Dep't of Veterans Affs*., 57 F.4th 1061, 1068–69 (D.C. Cir. 2023); concerned just a few documents and relied principally on the presidential communications privilege, *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 245 F. Supp. 3d 19, 31 & 36–37 (D.D.C. 2017); involved a requestor who provided no contrary evidence, *Levinthal v. FEC*, 219 F. Supp. 3d 1, 9 (D.D.C. 2016); or related to intelligence activities, sources and methods, or foreign relations activities, *Nat'l Sec. Arch. Fund v. CIA*, 402 F. Supp. 2d 211, 220 (D.D.C. 2005). By contrast, Plaintiff *has* offered compelling evidence—in the form of Defendants' own memo and the few ARRPs that are available—that challenges the agency's conclusory declaration. Because Defendants have "sole access" to the records and have failed to "justify[] [their] disclosure decisions," *Oglesby*, 79 F.3d 1172, 1178 (D.C. Cir. 1978), Defendants have not sustained their burden to withhold to the supposedly intertwined factual material.

Finally, Defendants' reliance on *Mapother v. Department of Justice* to support their position that the ARRPs' factual material is itself deliberative because it was "assembled through an exercise [in] judgment" is also misplaced. 3 F.3d 1533, 1539 (D.C. Cir. 1993); Mot. at 20. In *Mapother,* a requestor sought a report which provided "the Attorney General with information on … whether [the President of Austria] should be excluded from the United States, and to provide the means for defending a decision to exclude him against legal challenge." 3 F.3d at 1536. Although the D.C. Circuit upheld withholding of sensitive information in the report, it ruled that a military chronology of the Austrian president that "reflect[ed] no point of view" *was* segregable because the "selection of the categories of the facts to be recorded in no way betray[ed] the occasion that gave rise to its compilation." *Id.* at 1540. Here, Defendants directed agencies to provide specific categories of factual information as part of their ARRPs. *See* RIF Memo at 1–4.

Thus, in compiling this factual information, agencies were not making "exercises of discretion and judgment calls," *Mapother,* 3 F.3d at 1539 (citing *Petroleum Info. Corp.*, 976 F.2d at 1438), but rather following the express instruction of Defendants OMB and OPM.

The ARRPs instead resemble records courts have found are factual and subject to disclosure. *See, e.g.*, *Pub. Citizen*, 598 F.3d at 871, 875–76 (rejecting redaction of a "list" of agencies with "statutory bypass authority" in OMB's "Legislative Clearance Process" because agency could not shield "existing policy" from disclosure simply by describing "existing policy" as "predecisional"); *Reps. Comm. for Freedom of the Press v. FBI*, 3. F.4th 350, 365 (D.C. Cir. 2021) ("comments from the FBI to the Inspector General on the accuracy of purely factual statements" within a draft report could not be withheld under Exemption 5). So too here, as the released ARRPs demonstrate, at least some of the ARRP information likely has "no commentary whatsoever," *Pub. Citizen*, 598 F.3d at 876, and is "purely factual," *Reps. Comm. for Freedom of the Press*, 3. F.4th at 365. Exemption 5 does not allow withholding of this segregable information.

### B. There Is No Foreseeable Harm in Releasing Proposals That Were Ultimately Carried Out.

Even material within ARRPs that may have been deliberative must be released if no foreseeable harm "impair[ing] internal deliberations" could flow from its disclosure. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369–70. Here, federal agencies publicly carried out a torrent of RIFs and workforce reduction actions in the weeks and months immediately following their submission of the ARRPs. For example, the Consumer Protection Financial Bureau ("CFPB") sought to eliminate 90 percent of its workforce through a RIF in April 2025, the Internal Revenue Service ("IRS") issued RIF notices within a few weeks of the ARRPs' submission deadline, the Department of the Interior ("Interior") offered buyouts to nearly all employees days after the ARRP submission deadline in March 2025, and the Department of State laid off 1,350 employees

in the months immediately following submission.[4] The ARRPs were formal documents submitted by agencies to Defendants, and in this "specific context" disclosing the elements of the plans that agencies in fact carried out would not "actually impede those same agency deliberations going forward*." Id*. at 370. That agencies quickly undertook workforce reduction actions shortly following the submission of their ARRPs indicates there are almost certainly numerous elements of the 147 ARRPs that were indeed carried out and for which there could be no harm in disclosure—and, as discussed below, this also indicates the ARRPs of some agencies reflected decisions already made rather than tentative deliberations.[5]

Rather than "concretely explain how disclosure 'would'—not 'could'" harm Defendants' deliberative processes in this "specific context," as the D.C. Circuit requires, Defendants offer only "perfunctory" statements that "all [of] the withheld information" would harm officials' candor in the future*. Id*. at 369–70 (quoting *Machado Amadis*, 971 F.3d at 371 and *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018)). Defendants simply assert, without discussion of any particular ARRP, that disclosure of any information within any of the documents would reveal "tentative proposals" and "alternatives" that would reduce candor "going forward." Harris Decl. ¶ 34. But Defendants' brief and generalized statements do not meet their burden to justify withholding elements of the ARRPs that were actually implemented. Disclosure of this

[4] Chris Megerian, *Nearly 90% of Consumer Financial Protection Bureau Cut as Trump's Government Downsizing Continues*, Assoc. Press (Apr. 17, 2025, 7:56 PM), https://perma.cc/R6GJ-2AZ7 Eric Katz, *IRS Sends RIF Notices as it Begins Widespread Layoffs*, Gov't Exec. (Apr. 2, 2025), https://perma.cc/K3EF-GLRR ; Eric Katz, *Interior Department Offers Buyouts, Early Outs to Staff as It Looks to Build Housing on Federal Lands*, Gov't Exec. (Mar. 17, 2025), https://perma.cc/XLA4-RZTN ; Jory Heckman, *State Dept Lays Off 1,350 Employees as Reorganization Nears Final Phase*, Fed. News Network (July 11, 2025, 8:19 AM), https://perma.cc/T3S9-EVHE.

[5] As discussed below, this is also an indication that these documents may not have been pre-decisional at all and instead represented decisions already made by the agency or were subsequently adopted and lost their predecisional character.

information would merely show that agencies did what they said they would do in formal plan documents—and, as discussed above, many agencies took these steps before or immediately after submitting these documents. Absent a more precise explanation, Defendants have not connected the general "harms" they reference in a "'meaningful way to the information withheld.'" *Jud. Watch, Inc. v. DOJ*, No. 19-cv-800 (TSC), 2020 WL 5798442, at *3 (D.D.C. Sept. 29, 2020) (internal citation omitted). Given the indications that agencies were taking steps to implement these plans contemporaneously or shortly after submitting the documents, Defendants must do more to explain how disclosure could "in particular" cause harm to "the specific decision-making processes or deliberations at issue." *Jud. Watch, Inc. v. DOJ*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). Defendants' generalized declaration, with its blanket application to all ARRPs regardless of particular context, fails even to attempt to explain how disclosure of implemented aspects of ARRPs could cause harm to deliberations.

There are other indications that Defendants have not met their burden or conducted a genuine "line-by-line" review, Harris Decl. ¶ 40, to assess whether information within the ARRPs could be disclosed without foreseeable harm. In preliminary injunction briefing in April 2025, Defendant OMB attested—*before* reviewing and processing the requested ARRPs—that processing the request was "not likely to result in the release of any records because the agency plans . . . are inherently predecisional and deliberative." Decl. Heather V. Walsh ¶ 22, ECF No. 9-1 (Apr. 2, 2025). This assessment failed to meet the agency's obligation under the FOIA Improvement Act to only withhold information that it "reasonably foresees . . . would harm an interest by an exemption," 5 U.S.C.§ 552(a)(8)(A)(i)(I), and to separately determine if "partial disclosure of information is possible," *id.* § 552(a)(8)(A)(ii)(I). Moreover, the Walsh Declaration, filed three weeks after the ARRP submission deadline, did not hold water even then given that at

least portions of *approved* ARRPs were no longer deliberative at that time.[6] Months later, after many agencies had undertaken large-scale workforce reduction actions likely contained within the ARRPs, OMB issued its determination that *all* ARRPs were still exempt in their entirety with explicit reference to "OMB's position" months earlier that "as stated in the Walsh Declaration . . . the agency plans sought by Plaintiff are inherently predecisional and deliberative." JSR, ECF No. 28 (July 30, 2025). This direct reference back to the agency's position before reviewing the records raises serious questions about whether any review was undertaken at all, much less a "line-by-line" review. The agency's determination to hold firm to its early assessment that the records were deliberative also indicates that it did not take account at any point of subsequent agency actions implementing the plans in assessing that there was a foreseeable harm in disclosure.

### C. At Least Some ARRPs Were Not Predecisional and Deliberative at All.

There is evidence, including from courts that have considered particular ARRPs, that at least some of the plans withheld here were wholly post-decisional documents and are not protected by the deliberative process privilege at all. Two conclusions follow: Defendants err in withholding those particular ARRPs in this matter, and, reinforcing the discussion above, Defendants have not analyzed or justified their withholding of the other ARRPs with sufficient specificity.

Post-decisional documents that explain "a decision already reached or a policy already adopted" cannot be protected by the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 n.19 (U.S. 1975). Even where a "document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue." *Coastal States*, 617 F.2d at 866.

[6] Plaintiff raised this argument in its briefing on the preliminary injunction in the context of irreparable harm, a week before the Walsh Declaration was filed. *See* Mem. P. & A. Pl's. Mot. Lim. Prelim. Inj. at 15–16 n.17, ECF No. 3–1 (Mar. 24, 2025).

Documented layoffs and RIFs around the time that the ARRPs were due corroborate that the ARRPs reflected, at least in part, final decisions by at least some submitting agencies. For example, the Department of Education ("ED") announced a mass RIF two days *before* its ARRP was due to be submitted to Defendants. Press Release, *U.S. Department of Education Initiates Reduction in Force*, U.S. Dep't of Educ. (Mar. 11, 2025), https://perma.cc/GY9Y-KZWJ ("ED Press Release"). Defendants' generalized declaration attests that all ARRPs—thus even ED's—were "predecisional and deliberative." Harris Decl. ¶ 42. Given the timing of the RIF, this cannot be correct. ED Press Release, *supra*. A court that considered whether ED's plan was subject to disclosure in a substantive challenge concluded that the ED ARRP was "not created to decide whether the RIF should take place, but rather," was "created after the decision to implement the RIF had already been made" (which the court observed ED "appear[ed] to have been formulating since February 2025") thus the plan was "not predecisional, but rather post-decisional." *New York*, 826 F. Supp. 3d at 197–98. The facts of the Department of Health and Human Services ("HHS") RIFs are similar—HHS also initiated large-scale RIFs two days *before* its ARRP was due to be submitted—indicating the ARRP HHS submitted reflected decisions the agency already made.[7] This argument applies with similar force for other agencies—e.g. CFPB, IRS, and Interior— that undertook workforce reduction actions shortly after the ARRP submission deadline. *See supra* at 14–15 & note 4. And Defendants' declaration that only four of the 143 agencies submitted more than one version of the Phase 1 ARRP also indicates that many agencies' submissions were final, not tentative, and likely reflected decisions already made. *See* Harris Decl. ¶¶ 41–42.

---

[7] Press Release, *HHS Office of General Counsel Announces Reorganization Effort,* Dep't of Health & Hum. Servs. (Mar. 11, 2025), https://perma.cc/D372-GX5F; Paul Blumenthal & Jonathan Cohn, *Trump Administration Shutting Down HHS Legal Offices That Help Fight Fraud*, HuffPost (Mar. 11, 2025, 9:18 PM), https://perma.cc/S58Q-SZE4.

A separate court considering a challenge to more than a dozen agencies' RIFs reviewed a sample of four ARRPs (and presumably these agencies submitted these same plans to Defendants and those documents are being withheld here) *in camera*, in conjunction with declarations from Defendant OMB and other agencies, and similarly concluded that "the ARRPs" were "likely not pre-decisional and deliberative documents." Order at 2, *AFGE*, No. 3:25-cv-3698-SI (N.D. Cal. July 9, 2025), ECF No. 177. That court determined the ARRPs not to be deliberative and instead reflected final decisions in part because many agencies had represented to the Supreme Court that their RIFs were forestalled only because of an injunction. *Id*. ("If defendants considered these RIFs enjoined by the Court's preliminary injunction, then it follows that the RIFs resulted from the defendant agencies' ARRPs.").[8] That so many agencies were in the midst of implementing RIFs shortly after the submission of the ARRPs suggests the plans broadly reflected decisions already made and policies the agencies adopted, rather than including "proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. The publicly available NEH ARRP confirms this conclusion, as it stated that "NEH *will* begin to implement Phase 1 of its ARRP *immediately*," indicating that the ARRP reflected an agency policy already decided not a deliberative proposal. *See* Martinez Decl. ¶ 8 Ex. 4 at 4 (Mar. 13, 2025) (emphasis added). Exemption 5 cannot shield the ARRPs that reflect "a decision already reached or a policy already adopted," and the available evidence indicates that many ARRPs had this post-decisional character. *NLRB*, 421 U.S. at 152 n.19. Such plans are subject to full disclosure.

[8] The court noted that that government had represented to the Court that "about 40 RIFs in 17 agencies were in progress and [were] currently enjoined." Application for Stay at 32–33, *Trump v. Am. Fed. of Gov't Emps, AFL-CIO*, No. 24A1174 (U.S. June 2, 2025).

## II. Defendant OPM Improperly Withheld Two Communication Records Under Exemption 5.

In addition to the full withholding of the ARRPs, Plaintiff challenges Defendant OPM's withholding of two communications records.[9] OPM is mistaken that the records are predecisional and deliberative. Moreover, there would be no foreseeable harm in release of additional information within these records.

### A. OPM-Approved Answers to Agencies (May 27, 2026 Email pp. 73–74)

According to OPM, the March 3, 2025, correspondence between an OPM employee and OPM Senior Advisor to the Director Noah Peters concerned "the review and development of advice to other federal agencies regarding their workforce restructuring plans." Mot. at 25. In the email exchange, OPM completely redacted the body text of the email under Exemption 5; Senior Advisor Peters replies to the email stating that he "Agree [sic] with these responses." Martinez Decl. ¶ 10 Ex. 6. OPM argues that the email exchange was predecisional because it discussed "what final responses OPM would provide to the agencies' outstanding questions," and were submitted to a superior for future review, and deliberative because it was a subordinate asking for direction or approval from a superior. *Id.*

There is no foreseeable harm to the deliberative process in releasing an OPM employee's approved instructions to other agencies. OPM argues that release will cause employees to "hesitate to identify problems candidly" because their responses will be publicly released, and "draft responses . . . may also differ from the guidance OPM ultimately provided," Mot. at 26–27. But these fears do not justify withholding in this "specific context" because these were not draft

[9] In light of Defendants' explanation as to four of the communications withholdings, Plaintiff will not challenge the redactions in those records: Mot. at Secs. II.A. (February 10, 2026 Production, Page 1); II.B (February 10, 2026 Production, Page 2); and II.C (May 27, 2026 Production, Pages 17 and 19).

responses that differed from the ultimate guidance. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 370. They were apparently the final guidance that was approved for dissemination within the federal government that reflected OPM's policy. The goal of the OPM employee's proposed answers was to distribute the information to federal agencies to provide clarity on OPM's policy, not to keep the answers secret. Senior Advisor Peters' agreement with the proposed answers of the OPM employee is a clear indicator that it represents the view of the agency, and there can be no foreseeable harm from releasing this final advice. OPM certainly has not met its burden to prove otherwise. Finally, OPM has not provided the "detailed justification[s]" regarding segregability that it must. *See Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal citation omitted).

**B. ARRP Phase 1 Plan Summary Data Spreadsheet (Mar. 17, 2026 Production, p. 17)**

OPM also withheld in full a spreadsheet attachment titled "ARRP Phase 1 Plan Summary Data 3.18," *see* Martinez Decl. ¶ 11 Ex. 7, claiming that the record is predecisional and deliberative because it summarized the ARRPs submitted by agencies and was a "snapshot among the reviewing officials while the Phase 1 review remained ongoing." Mot. at 27–28.

The spreadsheet shows a list of agencies that submitted ARRPs. *See* Harris Decl. ¶ 61 (stating that the spreadsheet contains a list of "ARRPs submitted to date" with "factual and numerical entries"). OPM does not—and cannot—explain how segregating and releasing just the factual data in the spreadsheet is protected by Exemption 5. Beyond stating that it cannot be "meaningfully separated," Harris Decl. ¶ 65, OPM fails to acknowledge that certain cells of the spreadsheet can be segregated and released.[10] Therefore, for factual information like the agency

---

[10] OPM has not claimed that excising the exempt material "would impose significant costs on the agency" or "produce an edited document with little information[] value," *Mays v. DEA*, 234 F.3d

name or the date when the ARRP was submitted that has "no commentary whatsoever," *Pub. Citizen*, 598 F.3d at 876, OPM should be required to release it. The fact that OPM collected such information on a given date would not tend to reveal any deliberations, because Defendants had publicly required agencies to submit the ARRPs.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court require Defendants to reprocess the ARRPs and two additional records to segregate and release all non-exempt information from these records, including factual information, planned actions subsequently undertaken, and ARRPs that reflect agency's decisions rather than tentative deliberations. Plaintiff has attached a proposed order.

Dated: September 14, 2026

Respectfully submitted,

/s/ *Daniel H. Martinez*

Daniel H. Martinez
(Bar No. 90025922)
Daniel A. McGrath
(Bar No. 1531723)
Robin F. Thurston
(Bar No. 7268942)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmartinez@democracyforward.org
dmcgrath@democracyforward.org
rthurston@democracyforward.org

1324, 1327 (D.C. Cir. 2000), likely because of the reasonable size of the spreadsheet and the fact that OPM can easily redact cells from the record.