**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>*Plaintiff*,<br><br>vs.<br><br>OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-0858 (SLS) |

**PLAINTIFF'S COUNTER-STATEMENT OF DISPUTED MATERIAL FACTS**

| **I. Development and Interagency Review of ARRPs.** | |
|---|---|
| 1. On February 11, 2025, the President issued Executive Order 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative. *See* Declaration of Lance Harris ("Harris Decl.") ¶ 6. | Admitted. |
| 2. The Executive Order called for a "critical transformation" of the Government to reduce "waste" and "insularity" and directed agencies to submit to OMB a report "discuss[ing] whether the agency or any of its subcomponents should be eliminated or consolidated." *See* Harris Decl. ¶ 6. | Admitted that the Executive Order so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 3. Recognizing that changes at one agency could affect the missions of other agencies and the Administration's broader policy objectives, the Director of OMB and the Acting Director of OPM jointly issued a Memorandum on February 26, 2025, providing for interagency coordination of agencies' reorganization efforts in furtherance of the "critical transformation" called for by Executive Order 14210. *See* Harris Decl. ¶ 7. | Objection. This statement does not comply with the Court's Standing Order in Civil Cases as it contains more than one factual assertion per numbered row. Subject to and without waiving this objection, admitted that OMB and OPM issued the Memorandum. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 4. The Memorandum established a two-phase planning process. *See* Harris Decl. ¶ 8. | Admitted that the Memorandum established a two-phase process, but denied to the extent that "planning" implies a lack of finality for each phase of the process. |
| 5. In Phase 1, each agency was instructed to prepare an Agency Reduction-in-Force and Reorganization Plan ("ARRP") setting out the agency's views on whether "the agency or any of its subcomponents should be eliminated or consolidated," and "which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities." *See* Harris Decl. ¶ 8. | Admitted. |
| 6. To support those views, each agency was asked to lay out relevant considerations, such as the extent of the agency's understanding of its legal obligations and the level of resources required, from the agency's perspective, to fulfill those obligations. *See* Harris Decl. ¶ 8. | Admitted. |
| 7. The Memorandum also asked agencies about their intent to use various "specific tools," such as hiring freezes, regular attrition, or reductions in force ("RIFs"). *See* Harris Decl. ¶ 8. | Admitted. |
| 8. Agencies were directed to structure these Phase 1 submissions around the Administration's broader workforce-reduction and reorganization objectives so that OPM and OMB could evaluate whether each agency's proposed approach aligned with those objectives. *See* Harris Decl. ¶ 8. | Admitted that the Memorandum so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 9. Phase 1 ARRPs were due to OPM and OMB by March 13, 2025. *See* Harris Decl. ¶ 8. | Admitted. |
| 10. Phase 2 required agencies to provide a more developed account of their future operations, including their "vision for more productive, efficient agency operations going forward." *See* Harris Decl. ¶ 9. | Admitted that the Memorandum so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 11. That submission was to reflect the agency's position on how its functions and resources could be restructured to reduce costs, enhance accountability, improve mission delivery, and align with the President's policy priorities. *See* Harris Decl. ¶ 9. | Admitted that the Memorandum so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 12. Agencies were asked to describe how they might achieve such a restructuring, and along what timeline. *See* Harris Decl. ¶ 9. | Admitted. |
| 13. Phase 2 ARRPs were due to OPM and OMB by April 14, 2025. *See* Harris Decl. ¶ 9. | Admitted. |
| 14. Submission of the Phase 1 and 2 ARRPs to OPM and OMB enabled essential interagency deliberations over the composition, structure and focus of Executive Branch agencies, with the goal of achieving the "critical transformation" called for by the President. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |
| 15. These deliberations included cross-agency deconfliction and coordination to ensure a unified and cohesive government-wide approach. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |
| 16. For its part, OMB reviewed agencies' submissions to gauge to what extent agencies' positions aligned with statutory requirements, existing funding availability, tentative plans for future budgets, and the President's policy positions and agenda. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |
| 17. Where OMB had questions about an agency's ideas, OMB officials or staff conferred with counterparts at the agency to ensure that any policy disagreements were identified and elevated as appropriate. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |

| | |
|---|---|
| 18. Meanwhile, OPM reviewed agencies' submissions with particular attention to their proposed use of workforce tools—such as hiring freezes, attrition, early retirement and separation incentives, and RIFs—to assess whether those proposals complied with the President's policy positions and agenda, applicable civil service laws and regulations, and applicable OPM guidance, and to identify where agencies would require guidance or technical assistance from OPM to carry out their proposals. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |
| 19. Where OPM identified questions or concerns regarding an agency's proposed approach, OPM officials or staff likewise conferred with counterparts at the submitting agency. *See* Harris Decl. ¶ 10. | Denied because Plaintiff has no specific knowledge about the matter stated. |
| 20. The ARRP development and submission process was intended neither to yield a set of marching orders nor to produce a final agency plan—that is, an OPM- and OMB-approved ARRP that the agency head would be committed to carry out. *See* Harris Decl. ¶ 11. | Denied. |
| 21. Instead, the process was designed to give OPM and OMB a preliminary view of how each agency proposed to approach reorganization and an opportunity to assess whether that approach might align—or not—with the Administration's broader workforce-reduction and reorganization objectives. *See* Harris Decl. ¶ 11. | Denied. |
| 22. That foundational work would allow for easier adjustments in the inevitable event that agencies' initial plans changed over time. *See* Harris Decl. ¶ 11. | Denied. |

| | |
|---|---|
| 23. In sum, Phase 1 ARRPs served as early diagnostic and planning documents, giving OPM and OMB an initial view of each agency's proposed direction, priorities, and methods and allowing them to identify areas of agreement, concern, or potential conflict before Phase 2 required agencies to articulate more developed plans addressing future-state organization, additional RIFs, real estate changes, and implementation details. *See* Harris Decl. ¶ 12. | Denied. |
| **II. Plaintiff's FOIA Requests.** | |
| 24. On March 12, 2025, Plaintiff submitted three FOIA requests relevant here: one to OMB, which OMB acknowledged on March 25, 2025, and assigned tracking number 2025-1131, and two to OPM, which OPM acknowledged on April 1, 2025, and assigned tracking numbers 25-OPM-1201-F and 25-OPM-1202-F, respectively. *See* Harris Decl. ¶ 13. | Objection. This statement does not comply with the Court's Standing Order in Civil Cases as it contains more than one factual assertion per numbered row. Subject to and without waiving this objection, admitted. |
| 25. The request to OMB bearing tracking number 2025-1131 sought, for the period beginning February 1, 2025, "[a]ll Agency RIF and Reorganization Plans ('ARRPs') submitted to OMB . . . by heads and acting heads of departments and agencies as required by" the February 26, 2025 Memorandum. *See* Harris Decl. ¶ 14. | Admitted. |
| 26. On July 30, 2025, OMB communicated its final determination to Plaintiff that, except for one ARRP that had been released as part of the administrative record in another matter, all other ARRPs were predecisional and deliberative and were therefore being withheld in full pursuant to Exemption 5. *See* Harris Decl. ¶ 14; *see also* Joint Status Report dated July 30, 2026, at ¶ 6, ECF No. 28. | Admitted that OMB communicated its final determination on July 30, 2025, but denied as to the statement that the application of Exemption 5 was proper. |

| | |
|---|---|
| 27. The request to OPM bearing tracking number 25-OPM-1201-F likewise sought, for the period beginning February 1, 2025, "[a]ll Agency RIF and Reorganization Plans ('ARRPs') submitted to OPM . . . by heads and acting heads of departments and agencies as required by" the February 26, 2025 Memorandum. *See* Harris Decl. ¶ 15. | Admitted. |
| 28. On September 2, 2025, OPM communicated its final determination to Plaintiff that all ARRPs were being withheld in full pursuant to Exemption 5. *See* Harris Decl. ¶ 15; see also Joint Status Report dated September 2, 2025, at ¶ 5, ECF No. 29. | Admitted that the determination was communicated by OPM but denied as to the date and that the withholding was proper. |
| 29. The request to OPM bearing tracking number 25-OPM-1202-F sought records for the period beginning January 20, 2025, and contained two subparts. *See* Harris Decl. ¶ 16. | Admitted. |
| 30. Subpart 1 sought: "All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) of Acting Director Ezell, Chief of Staff Amanda Scales, Senior Advisor Brian Bjelde, Senior Advisor Riccardo Biasini, and/or Senior Advisor Noah Peters, regarding the development, approval, and implementation of ARRPs, including directives and guidance sent to other agencies." *See* Harris Decl. ¶ 17. | Admitted, except that Subpart 1 contained a spelling error in Senior Advisor Riccardo Biasini's name. |

| | |
|---|---|
| 31. In response to Subpart 1, OPM made six productions: August 29, 2025 (11 pages withheld in part pursuant to Exemptions 5 and 6); January 8, 2026 (38 pages withheld in part pursuant to Exemptions 5 and 6); a separate production on January 8, 2026 (1 page withheld in part pursuant to Exemption 5); February 10, 2026 (5 pages withheld in part pursuant to Exemptions 5 and 6); March 16, 2026 (3 pages withheld in part pursuant to Exemptions 5 and 6); and May 27, 2026 (79 pages withheld in part pursuant to Exemptions 5 and 6). *See* Harris Decl. ¶ 18. | Admitted. |
| 32. Subpart 2 sought: "All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) between (1) any OPM officials listed below (or otherwise affiliated with) the Department of Government Efficiency ('DOGE') (also known as the U.S. 'DOGE' (previously 'Digital') Service), and (2) Elon Musk, or any representatives of Elon Musk or DOGE, or any representatives of the Executive Office of the President (including, but not limited to, emails ending in eop.gov). [list of twenty-six specified officials omitted]." *See* Harris Decl. ¶ 19. | Admitted. |
| 33. On July 30, 2025, Plaintiff agreed to reduce the number of custodians in Subpart 2 from twenty-six to nine and to defer processing of email attachments. *See* Harris Decl. ¶ 19. | Admitted. |
| 34. In response to Subpart 2, OPM made its first and final production on March 16, 2026, producing 64 pages withheld in part pursuant to Exemptions 5 and 6. *See* Harris Decl. ¶ 20. | Admitted. |
| **III. Scope of Challenged Withholdings.** | |

| | |
|---|---|
| 35. On June 1, 2026, Plaintiff provided OPM and OMB with a list identifying the withholdings it intended to challenge, limited to those asserted under Exemption 5. *See* Harris Decl. ¶ 21. | Admitted. |
| 36. For the request to OMB and the request to OPM bearing tracking number 25-OPM-1201-F, Plaintiff indicated that it would challenge the withholding in full of all ARRPs. *See* Harris Decl. ¶ 22; *see also* Joint Status Report dated June 1, 2026 at 2, ECF No. 39. | Admitted. |
| 37. For the request to OPM bearing tracking number 25-OPM-1202-F, Plaintiff identified eleven communication withholdings that it intended to challenge—ten pertaining to Subpart 1 and one pertaining to Subpart 2. *See* Harris Decl. ¶ 23; see also Joint Status Report dated June 1, 2026 at 2, ECF No. 39. | Admitted. |
| **IV. ARRPs Withheld Pursuant to the Deliberative Process Privilege.** | |
| 38. In response to Executive Order 14210 and the joint Memorandum, OPM and OMB received approximately 147 Phase 1 ARRPs from both small and large federal agencies, commissions, and boards, with some agencies submitting more than one iteration of their Phase 1 ARRP. *See* Harris Decl. ¶ 24. | Plaintiff lacks the knowledge to admit or deny this statement. |
| 39. Throughout March and April 2025, the Phase 1 ARRPs underwent initial review at OPM and OMB. *See* Harris Decl. ¶ 24. | Plaintiff lacks the knowledge to admit or deny this statement. |
| ***A. Predecisional.*** | |
| 40. The Phase 1 ARRPs reflected the submitting agencies' initial assessments and preliminary views concerning potential workforce reductions, organizational changes, and resource allocation, and were prepared and submitted before the agencies reached final decisions concerning those matters. *See* Harris Decl. ¶ 25. | Denied. |

| | |
|---|---|
| 41. Several agencies expressly noted that their proposals were subject to change or not yet fully formulated. *See* Harris Decl. ¶ 25. | Plaintiff lacks the knowledge to admit or deny this statement. |
| 42. OPM and OMB likewise did not treat proposals contained in Phase 1 ARRPs as commitments or firm decisions by the submitting agency to carry out any particular workforce change. *See* Harris Decl. ¶ 26. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 43. The ARRPs contained proposed courses of action, including recommendations concerning staffing levels, consolidation of functions, organizational structure, and reductions in force, based in part on assumptions and projections concerning resource availability, appropriations, and policy priorities. *See* Harris Decl. ¶ 26. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 44. Because those assumptions and projections could change, the proposals based upon them could change as well. *See* Harris Decl. ¶ 26. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 45. Several actions proposed in the Phase 1 ARRPs, including large-scale reductions in force, required additional preparation, legal review, possible congressional notification, and other implementing steps before they could be carried out, leaving the proposals subject to revision as the planning process continued. *See* Harris Decl. ¶ 27. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 46. None of the withheld Phase 1 ARRPs constituted a final decision or policy of OPM or OMB, and neither agency adopted any withheld ARRP, in whole or in part, as its own final position or incorporated it by reference into a final decision. *See* Harris Decl. ¶ 28. | Denied. |
| ***B. Deliberative.*** | |
| 47. Although the specific contents of individual ARRPs varied according to the mission and structure of the submitting agency, they shared several common characteristics. *See* Harris Decl. ¶ 29. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 48. For example, they contained recommendations, evaluations, proposed options, subjective analysis, and policy and organizational alternatives concerning such matters as staffing levels, organizational structure, resource allocation, consolidation of functions, and potential workforce reductions. *See* Harris Decl. ¶ 29. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 49. They also reflected evaluative judgments about which functions or positions might be non-essential or duplicative and proposed approaches for carrying out reorganizations and reductions in force. *See* Harris Decl. ¶ 29. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 50. The Phase 1 ARRPs were prepared specifically to facilitate discussion and decisionmaking among agency leadership, OPM, OMB, budget personnel, and policy officials by helping those participants formulate their positions concerning an agency's composition, structure, priorities, staffing, and funding. *See* Harris Decl. ¶ 30. | Denied. |
| 51. The submissions also served as a basis for further review, discussion, and feedback among the relevant officials, and agencies could revise their proposals as that process unfolded. *See* Harris Decl. ¶ 30. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 52. The fact that some agencies submitted more than one version of a Phase 1 ARRP further reflected the iterative nature of the development and review process and the potential for agencies' proposals to evolve through further analysis and discussion. *See* Harris Decl. ¶ 30. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| ***C. Foreseeable Harm.*** | |
| 53. Disclosure of the Phase 1 ARRPs would reveal an agency's proposals, projections, estimates, and recommendations regarding matters that remained undetermined at the time the plans were prepared. *See* Harris Decl. ¶ 31. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 54. Disclosure of the Phase 1 ARRPs would also reveal how agencies internally evaluated future workforce needs and expose assumptions underlying proposed recommendations, including legal assessments, policy considerations, and resource allocations. *See* Harris Decl. ¶ 31. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 55. Public disclosure of these preliminary assessments would predictably alter the manner in which agency officials participate in similar deliberations. *See* Harris Decl. ¶ 32. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 56. Because the recommendations concern matters that directly affect agency components, employees, unions, contractors, congressional stakeholders, and program beneficiaries, officials would reasonably expect disclosed proposals to generate immediate scrutiny, opposition, or pressure directed at particular options and at the officials who proposed or evaluated them. *See* Harris Decl. ¶ 32. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 57. In response, agencies would be likely to temper their assessments, avoid identifying particularly sensitive deficiencies or unpopular alternatives, omit options that might provoke controversy, or frame their recommendations for an outside audience rather than provide OPM and OMB with their most candid assessment of the agency's needs and available choices. *See* Harris Decl. ¶ 32. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 58. That chilling effect would impair the decisionmaking process in concrete ways. *See* Harris Decl. ¶ 33. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 59. OPM and OMB depend on agencies to provide complete and forthright information regarding operational needs, resource constraints, legal considerations, workforce consequences, and the advantages and disadvantages of competing approaches, especially when considering how changes at one agency may impact the mission of another, and advance or impede the President's policy agenda. *See* Harris Decl. ¶ 33. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 60. If agencies provide only guarded or incomplete assessments, OPM and OMB will be less able to test the agencies' assumptions, identify weaknesses in their proposals, compare alternatives, reconcile competing priorities, and formulate coherent recommendations. *See* Harris Decl. ¶ 33. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 61. OPM and OMB would likewise be less candid in their assessment, questions, and proposed revisions if their preliminary reactions could be publicly disclosed and attributed to them. *See* Harris Decl. ¶ 33. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 62. Disclosure would also risk portraying tentative proposals, assumptions or alternatives as final agency or Administration decisions. *See* Harris Decl. ¶ 34. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 63. That misunderstanding could generate departures of agency personnel (including personnel whose positions would not eventually be eliminated), operational disruption, lobbying, litigation, and other external pressures while the proposals remain under consideration. *See* Harris Decl. ¶ 34. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 64. Those reactions could constrain the available options and distort the process before decisionmakers have completed their review. *See* Harris Decl. ¶ 34. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 65. Disclosure therefore would not merely reveal a past deliberation; it would foreseeably reduce the completeness and candor of comparable agency submissions and interagency exchanges going forward, depriving decisionmakers of the frank analysis necessary to make informed and effective organizational, workforce, and budgetary decisions. *See* Harris Decl. ¶ 34. | Objection. This statement does not comply with the Court's Standing Order in Civil Cases as it contains more than one factual assertion per numbered row. Subject to and without waiving this objection, admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 66. The foreseeable harms associated with disclosure are particularly significant here because the ARRPs concern issues that are among the most sensitive and consequential matters of an agency. *See* Harris Decl. ¶ 35. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 67. The records contain recommendations regarding organizational restructuring, workforce management, allocation of resources, statutory responsibilities, and budget planning. *See* Harris Decl. ¶ 35. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 68. Effective decision-making in these areas depends on the ability of agency personnel to communicate candidly, evaluate alternatives thoroughly, identify weaknesses, and propose innovative or controversial solutions without concern that preliminary discussions will later be disclosed. *See* Harris Decl. ¶ 35. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 69. In sum, disclosure of the ARRPs would have a chilling effect on the frank and candid exchange between OMB, OPM, and the submitting agencies, causing foreseeable harm to the integrity, effectiveness, and quality of the Executive's decisionmaking process. *See* Harris Decl. ¶ 36. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| ***D. Segregability.*** | |
| 70. OPM conducted a line-by-line review of all the Phase 1 ARRPs to assess whether any reasonably segregable, non-exempt information could be released, including whether factual material could be meaningfully separated from deliberative content. *See* Harris Decl. ¶ 37. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 71. OPM determined that factual material contained in the Phase 1 ARRPs could not be separated from the deliberative process because the agencies' selection, organization, emphasis, and presentation of those facts themselves reflected evaluative judgments about the matters under consideration. *See* Harris Decl. ¶ 38. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 72. For example, the decision to include particular staffing data, resource information, organizational characteristics, or historical facts—and the manner in which those facts were presented—would reveal what the submitting agency considered significant in developing its proposed approach to reorganization. *See* Harris Decl. ¶ 38. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 73. In those circumstances, disclosure of the factual material would reveal aspects of the agency's deliberative analysis rather than disclose purely factual information standing apart from that analysis. *See* Harris Decl. ¶ 38. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 74. Even to the extent any factual or other information in the ARRPs could be considered non-exempt, that information was inextricably intertwined with recommendations, evaluations, and other deliberative material. *See* Harris Decl. ¶ 39. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 75. Segregating that information would require extensive line-by-line redactions throughout the documents and would impose significant costs on the agencies, while leaving documents consisting largely of isolated words, phrases, data points, or fragments whose meaning and significance derive largely from the surrounding deliberative context and which, standing alone, would have little informational value. *See* Harris Decl. ¶ 39. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 76. OPM also conducted a line-by-line review of all the Phase 1 ARRPs to assess whether any reasonably segregable exempt portions of those documents could be segregated and released without causing foreseeable harm. *See* Harris Decl. ¶ 40. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| 77. OPM determined that no reasonably segregable portion of the exempt information could be released without causing the foreseeable harms described above, because even partial disclosure would reveal tentative recommendations, evaluative judgments, proposed courses of action, or other aspects of the agencies' internal deliberations. *See* Harris Decl. ¶ 41. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |
| **V. OPM Communications Withheld Pursuant to the Deliberative Process Privilege.** | |
| 78. Although Plaintiff identified eleven communication withholdings that it intended to challenge, OPM clarified the scope of those challenges without changing the total number at issue and then determined that five did not meet the standard for withholding under Exemption 5 and should be released. *See* Harris Decl. ¶¶ 43–45. | Admitted. |
| 79. Accordingly, six communication withholdings remain at issue—five under Subpart 1, concerning records produced on February 10, 2026 (pages 1 and 2) and May 27, 2026 (pages 17, 19, and 73–74), and one under Subpart 2, concerning a record produced on March 16, 2026 (page 17). *See* Harris Decl. ¶¶ 46–48. | Admitted as to May 27, 2026 email Pages 73–34 and March 17, 2026 Production, Page 17. Denied as to the others, as Plaintiff no longer challenges Defendants' withholdings. |
| ***A. February 10, 2026 Production, Page 1.*** | |
| 80. This document is a redacted interagency email sent on March 12, 2025, at 7:15 p.m. from OPM's Senior Advisor to the Director to a senior Department of War ("DOW") personnel official regarding a proposed workforce restructuring tool and its potential inclusion in DOW's ARRP. *See* Harris Decl. ¶ 49. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 81. OPM's Senior Advisor to the Director was principally responsible for advising on the interagency review of ARRPs and was consulting with DOW regarding its forthcoming submission. *See* Harris Decl. ¶ 49. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 82. The withheld statement conveys the author's candid, preliminary assessment of the proposed tool and his views on how it might be presented. *See* Harris Decl. ¶ 49. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 83. The material was exchanged before any decision had been reached regarding either OPM's approval of the proposed tool or DOW's use of that tool in its ARRP. *See* Harris Decl. ¶ 50. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 84. OPM had not yet approved the tool, and DOW had not yet finalized or submitted the ARRP in which the tool might be included. *See* Harris Decl. ¶ 50. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 85. The withheld material reflects an internal discussion concerning a proposed workforce restructuring tool and was exchanged to help OPM and DOW formulate their positions on whether and how the tool should be incorporated into DOW's ARRP. *See* Harris Decl. ¶ 51. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 86. It also reflects the give-and-take of the consultative process between the agencies by conveying an official's candid, preliminary views on the status of the proposal and how it might be advanced toward a decision. *See* Harris Decl. ¶ 51. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 87. The material is advisory and does not state, embody, or explain a final decision of OPM or DOW. *See* Harris Decl. ¶ 51. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 88. Disclosure of the withheld statement would foreseeably harm the consultative process through which OPM advises agencies on their workforce restructuring proposals. *See* Harris Decl. ¶ 52. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 89. The statement conveys the candid, preliminary assessment of a single, identifiable OPM official—the Senior Advisor principally responsible for the interagency review of ARRPs—regarding a tool that OPM had not approved and that DOW had not yet decided to include in its submission, and it was sent the evening before Phase 1 ARRPs were due. *See* Harris Decl. ¶ 52. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 90. If informal, frank advice of this kind were subject to public release, officials in the Senior Advisor's position would foreseeably hedge, soften, or withhold their preliminary assessments of agency proposals, and agencies would be less willing to seek OPM's candid input on sensitive workforce tools before finalizing their plans, knowing that the exchange could later be disclosed and attributed to particular officials. *See* Harris Decl. ¶ 52. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 91. The predictable result would be less rigorous vetting of proposed workforce actions and lower-quality agency submissions and decisions. *See* Harris Decl. ¶ 52. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 92. Disclosure would also reveal the substance, status, and direction of OPM's evaluation of a proposed personnel tool, inviting the public to mistake an option merely under discussion for an action the agencies had decided to adopt. *See* Harris Decl. ¶ 52. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| ***B. February 10, 2026 Production, Page 2.*** | |
| 93. This document is a redacted interagency email sent on March 28, 2025, at 9:27 p.m. from the Acting Chair of the Equal Employment Opportunity Commission ("EEOC") to OPM's Senior Advisor to the Director regarding feedback OMB had provided on the EEOC's obligations concerning its ARRP. *See* Harris Decl. ¶ 53. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 94. The email was exchanged among officials of three federal agencies participating in an ongoing interagency review process in which OPM and OMB evaluated the EEOC's submission. *See* Harris Decl. ¶ 53. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 95. The withheld material was exchanged while OPM and OMB were reviewing the EEOC's proposed ARRP and before any final determination had been made regarding the issues discussed. *See* Harris Decl. ¶ 54. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 96. The OMB feedback reflected an interim step in that ongoing review, and the central issue addressed in the email remained open and actively contested. *See* Harris Decl. ¶ 54. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 97. The email sought reconsideration of a preliminary position and requested information bearing on that unresolved question. *See* Harris Decl. ¶ 54. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 98. The EEOC Acting Chair's analysis, assessments, questions, and opinions regarding OMB's feedback were intended to help the agencies formulate their positions on the EEOC's restructuring proposal. *See* Harris Decl. ¶ 55. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 99. They reflected the give-and-take of the consultative process, including advocacy of a position, candid disagreement with a preliminary assessment, a request for reconsideration, supporting arguments, and questions posed to inform further deliberation. *See* Harris Decl. ¶ 55. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 100. None of these statements constituted or explained a final decision of, or adoption by, the EEOC, OPM, or OMB. *See* Harris Decl. ¶ 55. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 101. Disclosure would foreseeably harm the government's deliberative process by exposing candid assessments, disagreements, and internal discussions undertaken while the agencies were still formulating their positions on the EEOC's restructuring proposal. *See* Harris Decl. ¶ 56. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 102. In particular, release would reveal an agency head's efforts to challenge and seek reconsideration of a preliminary interagency position while the issue remained unresolved. *See* Harris Decl. ¶ 56. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 103. Disclosure of such exchanges would risk chilling similarly candid objections, requests for reconsideration, and frank assessments in future interagency deliberations. *See* Harris Decl. ¶ 56. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 104. It could also confuse the public by exposing preliminary views and proposals that did not necessarily reflect the agencies' ultimate positions. *See* Harris Decl. ¶ 56. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| ***C. May 27, 2026 Production, Pages 17, 19, and 73–74.*** | |
| 105. These documents are redacted intra-agency emails sent on January 25, 2025, at 3:30 p.m., March 3, 2025, at 4:00 p.m., and March 12, 2025, at 7:07 p.m., from OPM employees to OPM's Senior Advisor to the Director concerning the review and development of advice to other federal agencies regarding their workforce restructuring plans. *See* Harris Decl. ¶ 57. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 106. The emails discussed issues arising during OPM's consideration of those plans and the guidance to be provided to the affected agencies. *See* Harris Decl. ¶ 57. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 107. The emails were exchanged before OPM had finalized its advice and guidance and were sent ahead of decisions that had not yet been made, including whether and how to clarify OPM's RIF guidance, whether to approve a proposed restructuring tool, and what final responses OPM would provide to the agencies' outstanding questions. *See* Harris Decl. ¶ 58. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 108. Additionally, the draft responses referenced in the March 3 email were submitted to a superior for further review, potential revision, or restructuring. *See* Harris Decl. ¶ 58. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 109. The communications contained internal discussions, questions, and analyses regarding issues arising during OPM's review of agencies' workforce restructuring plans and assisted agency leadership in formulating and developing those plans. *See* Harris Decl. ¶ 59. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 110. Each email emanated from a subordinate or advising official to the Senior Advisor for the purpose of obtaining direction, approval, or a decision, and each reflects the author's candid questions, tentative interpretations, recommendations, or draft language. *See* Harris Decl. ¶ 59. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 111. Disclosure of these emails would reveal the agency's internal discussions, questions, analyses, and development of advice regarding agencies' workforce restructuring plans before final guidance was issued. *See* Harris Decl. ¶ 60. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 112. Release of these communications would inhibit the candid exchange of views among OPM personnel and impair its ability to engage in open and frank internal deliberations. *See* Harris Decl. ¶ 60. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 113. Indeed, employees who know that their exploratory questions, tentative interpretations, recommendations, and draft responses will be publicly released will hesitate to identify problems candidly or to commit preliminary views to writing and will instead raise such matters orally or not at all, degrading both the quality and the record of agency decisionmaking. *See* Harris Decl. ¶ 60. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 114. Release of draft responses and tentative interpretations may also differ from the guidance OPM ultimately provided, resulting in public confusion about the agency's actual positions. *See* Harris Decl. ¶ 60. | As to emails sent on March 3, 2025, at 4:00 p.m., admitted that the Declaration so stated and denied to the extent this paragraph asserts the truth of the matter stated. As to emails sent on January 25, 2025, at 3:30 p.m. and March 12, 2025, at 7:07 p.m., no longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| ***D. March 16, 2026 Production, Page 17.*** | |
| 115. This document is three parts: (1) a redacted interagency email sent on March 18, 2025, at 12:58 p.m. from an OMB employee to OPM's Senior Advisor to the Director and several other OPM and OMB employees; (2) a redacted interagency email forwarded eight minutes later, at 1:06 p.m., by an OMB employee to an OPM employee; and (3) a spreadsheet attachment entitled, "ARRP Phase 1 Plan Summary Data 3.18.xlsx." *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 116. The spreadsheet contains interim information which includes notes for follow-up and future actions, such as the need to submit further information. *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 117. The spreadsheet was prepared by OMB staff and was a snapshot of the ARRPs submitted to date. *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 118. The spreadsheet contains factual and numerical entries alongside reviewers' summaries, annotations, and follow-up notes concerning the submitted ARRPs. *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 119. The selection, organization, and characterization of that information reflect judgments about which aspects of the agencies' proposed plans warranted attention, while the annotations identify open questions, evaluative concerns, and recommended next steps. *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 120. The withheld portions of the emails transmitted the spreadsheet among OPM and OMB staff engaged in the review and briefly addressed its contents and handling. *See* Harris Decl. ¶ 61. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 121. The spreadsheet was a tool generated to assist the reviewing officials in reaching decisions that had not yet been made, as it summarized the plans submitted to date and flagged entries as incomplete, unclear, or requiring further information from the submitting agencies. *See* Harris Decl. ¶ 62. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 122. The accompanying emails likewise predated any final determinations: they circulated the March 18 snapshot among the reviewing officials while the Phase 1 review remained ongoing and while the open questions and follow-up items flagged in the spreadsheet remained unresolved. *See* Harris Decl. ¶ 62. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 123. The spreadsheet was prepared to assist OMB and OPM officials in evaluating the submitted restructuring proposals and formulating their positions on issues requiring further review. *See* Harris Decl. ¶ 63. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 124. Its summaries, annotations, open questions, and recommended follow-up actions reflect the reviewers' preliminary assessments and the ongoing give-and-take of the interagency review process. *See* Harris Decl. ¶ 63. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 125. The spreadsheet did not embody, and was not incorporated into, any final position or decision of OMB or OPM. *See* Harris Decl. ¶ 63. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 126. The emails were similarly deliberative in that they were exchanged among OPM and OMB staff participating in the review for the purpose of sharing the interim snapshot and coordinating the next steps in the evaluation of the submitted plans, and their withheld portions reflect the same preliminary assessments, open questions, and follow-up items as the spreadsheet they transmitted. *See* Harris Decl. ¶ 63. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 127. Like the spreadsheet, the emails do not state, embody, or explain any final decision of OPM or OMB. *See* Harris Decl. ¶ 63. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 128. Disclosure of the spreadsheet and accompanying emails would foreseeably harm the interagency review process in concrete ways. *See* Harris Decl. ¶ 64. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 129. First, the spreadsheet records the reviewers' working annotations—where they believed submissions were incomplete or unclear, which entries required follow-up with the submitting agencies, and how they tentatively characterized agencies' proposed plans. *See* Harris Decl. ¶ 64. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 130. Staff who know that working notes of this kind will be publicly released and attributed to them would foreseeably decline to record candid annotations flagging gaps, doubts, and concerns, or would sanitize those notes, degrading both the quality and the record of future reviews. *See* Harris Decl. ¶ 64. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |

| | |
|---|---|
| 131. Second, disclosure would publicly associate individual agencies with unverified figures, tentative characterizations, and unresolved questions that reflected only interim staff impressions rather than any determination of OPM or OMB, exposing those agencies and their employees to scrutiny and external pressure based on information the reviewers themselves had flagged as incomplete, unclear, or potentially inaccurate. *See* Harris Decl. ¶ 64. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| 132. Third, because the snapshot's entries were subject to change as agencies supplemented and revised their submissions, release would foreseeably mislead the public by presenting an interim and potentially erroneous picture of agencies' plans as though it reflected final restructuring decisions, generating the same confusion, personnel departures, and external pressures described above in connection with the ARRPs themselves. *See* Harris Decl. ¶ 64. | No longer a material fact as Plaintiff no longer challenges Defendants' withholding for this record. |
| ***E. Segregability.*** | |
| 133. OPM conducted a line-by-line review of all the challenged communication withholdings to assess whether any reasonably segregable, non-exempt information could be released, including whether factual material could be meaningfully separated from deliberative content. *See* Harris Decl. ¶ 65. | Denied. |
| 134. OPM determined that the withheld material in each of the six challenged communications either consists of deliberative content—candid assessments, recommendations, opinions, questions, and preliminary evaluations exchanged in the course of the deliberations described above—or contains factual material so inextricably intertwined with that deliberative content that it could not be released without revealing the substance of the agencies' deliberations. *See* Harris Decl. ¶ 66. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |

| | |
|---|---|
| 135. No reasonably segregable, non-exempt information has been withheld from the challenged communications. *See* Harris Decl. ¶ 66. | Denied. |
| 136. OPM also conducted a line-by-line review of all the challenged communication withholdings to assess whether any reasonably segregable exempt portions of those documents could be segregated and released without causing foreseeable harm. *See* Harris Decl. ¶ 67. | Denied. |
| 137. OPM determined that no reasonably segregable portion of the exempt information could be released without causing the foreseeable harms described above, because even partial disclosure would reveal tentative recommendations, evaluative judgments, proposed courses of action, or other aspects of the agencies' internal deliberations. *See* Harris Decl. ¶ 68. | Admitted that the Declaration so stated. Denied to the extent this paragraph asserts the truth of the matter stated. |