**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>*Plaintiff*,<br><br>vs.<br><br>OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-0858 (SLS) |

**DECLARATION OF DANIEL H. MARTINEZ**

1. I, Daniel H. Martinez, am employed by Democracy Forward Foundation ("DFF") as an Oversight Counsel.

2. In this matter, I have personally reviewed the Freedom of Information Act ("FOIA") requests and the organization's correspondence files. I have also reviewed other related materials cited in those requests. I consequently have personal knowledge of the information contained within this declaration.

3. DFF is a not-for-profit organization that works to promote transparency and accountability in government, in part, by educating the public on government actions and policies. DFF is primarily engaged in disseminating information to the public, as public records it has obtained have been used in numerous media reports, and it disseminates information concerning government activities through blogs and investigations it makes publicly available. DFF dedicates substantial resources to this work to promote transparency and disseminate information about government activities.

4. DFF intends to continue to post public records it receives and to disseminate information about those records through its own analysis and products, and through media outlets,

including the records requested in this case.

5. Attached as Exhibit 1 to this declaration is a true and correct copy of the March 12, 2025 FOIA request seeking "All Agency RIF and Reorganization Plans ("ARRPs") submitted to OMB (at workforce@omb.eop.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director V ought and OPM Acting Director Ezell's February 26, 2025 memorandum titled 'Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President' s 'Department of Government Efficiency' Workforce Optimization Initiative'[footnote omitted]" that DFF submitted to Defendant OMB ("OMB ARRP Request").[1]

6. Attached as Exhibit 2 to this declaration is a true and correct copy of the March 12, 2025 FOIA request seeking the same records as the OMB ARRP Request that DFF submitted to Defendant OPM.

7. Attached as Exhibit 3 to this declaration is a true and correct copy of the March 12, 2025 FOIA request seeking, in part 1, "All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) of Acting Director Ezzell, Chief of Staff Amanda Scales, Senior Advisor Brian Bjelde, Senior Advisor Roccardo Biasini, and/or Senior Advisor Noah Peters, regarding the development, approval, and implementation of ARRPs, including directives and guidance sent to other agencies", and in part 2, "All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) between (1) any OPM

---

[1] *See* Decl. Lance Harris Ex. 1, ECF No. 43–2 (Russell T. Vought and Charles Ezell, "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative," OMB & OPM (Feb. 26, 2025) ("RIF Memo")).

officials listed below (or otherwise affiliated with) the Department of Government Efficiency ('DOGE') (also known as the U.S. 'DOGE' (previously 'Digital') Service), and (2) Elon Musk, or any representatives of Elon Musk or DOGE , or any representatives of the Executive Office of the President (including, but not limited to, emails ending in eop.gov)" that DFF submitted to Defendant OPM.

8. Attached as Exhibit 4 to this declaration is a true and correct copy of the March 13, 2025 ARRP of the National Endowment for the Humanities, which was originally filed in litigation in another matter. *See Am. Fed. of Gov't Emps. v. Trump*, No. 3:25-cv-3698-SI (N.D. Cal. July 9, 2025), ECF No. 96–1 at 17.

9. Attached as Exhibit 5 to this declaration is a true and correct copy of the response DFF received from the Department of Energy, which included partial release of its ARRP, dated March 2025.

10. Attached as Exhibit 6 to this declaration is a true and correct copy of the challenged email withholding, which are redacted emails sent between an OPM employee and OPM Senior Advisor Noah Peters.

11. Attached as Exhibit 7 to this declaration is a true and correct copy of the email attaching the challenged spreadsheet withholding, titled "ARRP Phase 1 Plan Summary Data 3.18.xlsx."

12. By the February 26, 2025 Memorandum by OMB and OPM titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," ("RIF Memo"), federal agencies were directed to submit Phase 1 Agency Reorganization Plans ("ARRPs") to the Office of Management and Budget ("OMB") and the Office of Personnel Management ("OPM") no later

than March 13, 2025.

13. According to the RIF Memo, the purpose of the submission of the Phase 1 ARRPs by federal agencies to OMB and OPM was for review and approval.

14. In the RIF Memo, OMB and OPM directed federal agencies to identify a list of agency subcomponents or offices that provide direct services to citizens (item 1).

15. In the RIF Memo, OMB and OPM directed federal agencies to identify any statutes that establish the agency or subcomponents of the agency, as statutorily required entities (item 2).

16. In the RIF Memo, OMB and OPM directed federal agencies to identify all agency components and employees performing functions not mandated by statute (item 3).

17. In the RIF Memo, OMB and OPM directed federal agencies to identify competitive areas and organizational components that the agency “has targeted” and attrition “achieved" (item 5.e.i).

18. In the RIF Memo, OMB and OPM directed federal agencies to identify a list of job positions of all positions categorized as essential (item 6).

19. In the RIF Memo, OMB and OPM directed federal agencies to identify the agency’s timetable and plan for implementing each part of its Phase 1 ARRP (item 8).

20. The Department of Education initiated a reduction in force (“RIF”) on March 11, 2025.

21. The Department of Education initiated the RIF before or shortly after the submission of its ARRP.

22. The Department of Health and Human Services (“HHS”) initiated a reorganization of its Office of General Counsel (“OGC”) on or before March 11, 2025.

23. The OGC reorganization effort that HHS initiated resulted in layoffs.

24. The OGC reorganization effort was contemplated or referenced in the HHS ARRP.

25. Other agencies implemented actions or attempted to implement actions described in their ARRPs, including RIFs.

26. Agencies, including the Department of Energy and the National Endowment for the Humanities, included factual information about their components and organization within their ARRPs.

27. Agencies, including the Department of Energy, included steps already taken to reduce workforce size within their ARRPs.

28. Agencies, including the Department of Energy and the National Endowment for the Humanities, submitted ARRPs in formats with separated sections responding to the numbered categories of information required by Defendants OMB and OPM's memorandum.

29. As supported by public reporting, in April 2025, the Consumer Protection Financial Bureau sought to cut around 1,500 positions, constituting around 90% of its workforce. Chris Megerian, *Nearly 90% of Consumer Financial Protection Bureau Cut as Trump's Government Downsizing Continues*, Assoc. Press (Apr. 17, 2025, 7:56 PM), https://perma.cc/R6GJ-2AZ7.

30. As supported by public reporting, on or around March 17, 2025, the Department of the Interior sent buyout offers to nearly all of its 70,000 employees. Eric Katz, *Interior Department Offers Buyouts, Early Outs to Staff as It Looks to Build Housing on Federal Lands*, Gov't Exec. (Mar. 17, 2025), https://perma.cc/XLA4-RZTN.

31. As supported by public reporting, on or around April 4, 2025, the Internal Revenue Service began issuing layoff notices as part of a RIF. Eric Katz, *IRS Sends RIF Notices as it Begins Widespread Layoffs*, Gov't Exec. (Apr. 2, 2025), https://perma.cc/K3EF-GLRR.

32. As supported by public reporting, on or around July 11, 2025, the Department of

State laid off around 1,350 employees as part of a RIF. Jory Heckman, *State Dept Lays Off 1,350 Employees as Reorganization Nears Final Phase*, Fed. News Network (July 11, 2025, 8:19 AM), https://perma.cc/T3S9-EVHE.

I declare under penalty of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

/s/ *Daniel H. Martinez*
Daniel H. Martinez

# Exhibit 1

DEMOCRACY
FORWARD

March 12, 2025

**VIA Electronic Delivery**

Office of Management and Budget
725 17th Street NW, Suite 9272
Washington, DC 20503
OMBFOIA@omb.eop.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

***Records Requested***

Democracy Forward Foundation ("DFF") requests that the Office of Management and Budget ("OMB") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OMB (at workforce@omb.eop.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans *Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records
regarding a high-profile matter will be assigned to the Simple processing track and processed expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

***Request for Expedited Processing***

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4] Further there is a clear "urgency to inform the public" of the actions the Administration has

[2] 5 U.S.C. § 552 (6)(E).

[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[4] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5]Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

***Request for Fee Waiver***

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates

records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

***Conclusion***

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,
*/s/ Skye Perryman*

President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Exhibit 2

DEMOCRACY FORWARD

March 12, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

***Records Requested***

Democracy Forward Foundation ("DFF") requests that the Office of Personnel Management ("OPM") produce the following within twenty (20) business days and on an expedited basis:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted to OPM (at tracking@opm.gov or otherwise) by heads and acting heads of departments and agencies as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans *Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative*".[1]

Please provide all records from February 1, 2025, through the date the search is conducted.

Democracy Forward expects this request for a set of readily identifiable records regarding a high-profile matter will be assigned to the Simple processing track and processed expeditiously, in addition to receiving expedited processing.

---

[1] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

***Request for Expedited Processing***

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[2] DFF is an organization primarily engaged in "disseminating information to the public,"[3] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[4]

---

[2] 5 U.S.C. § 552 (6)(E).
[3] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").
[4] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

Further there is a clear "urgency to inform the public" of the actions the Administration has decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[5] As the OMB and OPM memorandum seeks ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[6] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[7] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

---

[5]Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.
Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.
[6] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.
[7] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

***Request for Fee Waiver***

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*,

799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id*., or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

***Conclusion***

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Exhibit 3

DEMOCRACY FORWARD

March 12, 2025

**VIA Electronic Delivery**

Office of Personnel Management
1900 E Street, N.W.
OPIM/FOIA Room 5H35
Washington, D.C. 20415-7900
foia@opm.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 Democracy Forward Foundation submits this request for records.

***Records Requested***

Democracy Forward Foundation ("DFF") requests that the Office of Personnel Management ("OPM") produce the following within twenty (20) business days and on an expedited basis:

1. All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) of Acting Director Ezzell, Chief of Staff Amanda Scales, Senior Advisor Brian Bjelde, Senior Advisor Roccardo Biasini, and/or Senior Advisor Noah Peters, regarding the development, approval, and implementation of ARRPs, including directives and guidance sent to other agencies.

2. All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms) between (1) any OPM officials listed below (or otherwise affiliated with) the Department of Government Efficiency ("DOGE") (also known as the U.S. "DOGE" (previously "Digital") Service), and (2) Elon Musk, or any representatives of Elon Musk or DOGE , or any representatives of the Executive Office of the President (including, but not limited to, emails ending in eop.gov).

   Specified Officials:

i. Acting Director Charles Ezell
ii. Chief of Staff Amanda Scales
iii. Anyone serving in the role of Deputy Director or Acting Deputy Director
iv. Retirement Services Associate Director Margaret Pearson
v. Workforce Policy and Innovation Associate Director Veronica Hinton
vi. Human Resources Solutions Associate Director Dianna Saxman
vii. Merit System Accountability and Compliance Acting Director Ana Mazzi
viii. General Counsel Andrew Kloster
ix. Senior Advisor Anthony Armstrong
x. Senior Advisor Riccardo Biasini
xi. Senior Advisor Brian Bjelde
xii. Senior Advisor Noah Peters
xiii. Chief Information Officer Greg Hogan
xiv. Director of Communications McLaurine Pinover
xv. Human Resources Staffer Stephanie Holmes
xvi. Human Resource Staffer Chirstina Hanna
xvii. Human Resources Staffer Stephen Duarte
xviii. Human Resources Staffer Bryanne-Michelle Mlodzianowski
xix. Policy Analyst Joanna Wischer
xx. Expert Justin Monroe
xxi. Jacob Altik
xxii. Austin Raynor
xxiii. Edward Coristine
xxiv. Akash Bobba
xxv. Gavin Kliger
xxvi. Nikhil Rajpal

Please provide all records from January 20, 2025, through the date the search is conducted.

***Request for Expedited Processing***

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[1] DFF is an organization primarily engaged in "disseminating information to the public,"[2] as

[1] 5 U.S.C. § 552 (6)(E).
[2] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

evidenced by the previous use of public records obtained by DFF in numerous news reports.[3] Further there is a clear "urgency to inform the public" of the actions the Administration has decided to take across agencies that affect the functioning of hundreds of agencies and components across the federal government. This matter of extraordinary public concern has resulted in extraordinary levels of press coverage.[4] As the OMB and OPM memorandum seeks

---

[3] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

[4] Justin Doubleday, *"Trump EO directs agencies to submit reorganization plans, prepare for RIFS,"* Federal News Network (Feb. 11, 2025).
Eric Katz, *"Inside federal agencies' rush to reshape their workforces–and spare employees from layoffs,"* Government Executive (Mar. 10, 2025), https://www.govexec.com/workforce/2025/03/inside-federal-agencies-rush-reshape-their-workforcesand-spare-employees-layoffs/403631/.

ARRPs on Phase 1 of the request by March 13, agency staff have had very limited time to craft plans for "large-scale reductions in force" that may not provide a structured and legal framework for agencies to reduce their workforce; ensure fair treatment of employees, and facilitate smooth transitions. By the Administration's *own* description these actions carry enormous public importance as they stand to "commence[] a critical transformation of the Federal bureaucracy."[5] There is an urgent need to know the character of the "critical" transformation the Administration has decided to undertake. Press coverage on efforts to draft the Phase 1 report have noted concerns that, in addition to the time and resource consuming nature of conducting RIFs, those who are drafting such cuts are unsure of how the cuts should be made. A lack of guidance leaves uncertainty about what priorities should not be cut, which could impact the ability of agencies to fulfill their mission and protect the mechanism that works to ensure our government is without corruption and with competence.[6] And the Administration's dramatic "large scale" reductions in force have the potential to impact the services millions of Americans rely on. This is a matter of current exigency, as once RIFs are issued there will be only 60 days, and potentially as little as 30 days, before federal workers are laid off. The public needs access to the ARRPs as soon as possible and well in advance of the final effect of these plans. The American people and those non-political civil servants who do this crucial work must have insight into how agencies plan to reduce their workforce and how such reductions will make extensive changes to government functions and essential services.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld

---

Chris Megerian, *"The Trump administration sets the stage for large-scale federal worker layoffs in a new memo,"* Associated Press (Feb. 27, 2025), https://apnews.com/article/trump-elon-musk-federal-workers-layoffs-d295d4bb2cdd5023c27d9cb03754e81b.
Emily Peck, *"White House orders agencies to prepare for large-scale firings,"* Axios (Feb. 26, 2025), https://www.axios.com/2025/02/26/trump-doge-rif-government-worker-layoffs.
Eileen Sullivan, *"The Next Phase of Trump's Large-Scale Work Force Cuts Is Underway,"* The New York Times (Feb. 26, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-musk-doge-cuts-federal-workers.html.

[5] Russell T. Vought and Charles Ezell, "*Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

[6] Katz, 5.
Drew Friedman, *"RIFS are a complicated, time-consuming process for agencies, experts say,"* Federal News Network (Feb. 6, 2025), https://federalnewsnetwork.com/workforce/2025/02/rifs-are-a-complicated-time-consuming-process-for-agencies-experts-say/.

and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office, installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

***Request for Fee Waiver***

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the

public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of agencies plans to fulfill the requests made within the joint OMB and OPM memorandum on workforce optimization.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

***Conclusion***

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,
*/s/ Skye Perryman*
President and CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Exhibit 4

NATIONAL ENDOWMENT FOR THE HUMANITIES

OFFICE OF THE CHAIR

To: Office of Personnel Management at tracking@opm.gov;
Office of Management and Budget at workforce@omb.eop.gov

From: Michael McDonald, Acting Chairman

Date: March 13, 2025

This memorandum responds to President Trump's February 19, 2025 Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*) (EO), and OMB/OPM's associated February 26, 2025 guidance, Guidance on Agency RIF and Reorganization Plans Requested by the EO (Guidance). Specifically, it contains the National Endowment for the Humanities (NEH) Phase 1 Agency RIF and Reorganization Plan (ARRP), focusing on initial agency cuts and reductions.

**Phase 1 ARRP**

Per the Guidance, the Phase 1 ARRP should identify:

1. **A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.**

NEH does not have subcomponents and does not provide direct services to citizens (such as Social Security, Medicare, and veterans' health care). Congress created NEH with a mission to provide grants to non-profit organizations and individuals working in the humanities.

2. **Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities. Agency leadership must confirm statutes have not been interpreted in a way that expands requirements beyond what the statute actually requires. Instead, statutes should be interpreted to cover only what functions they explicitly require.**

20 USC 956(a) establishes the National Endowment for the Humanities (NEH), and 20 USC 957(a) creates the National Council on the Humanities, NEH's twenty-six-member advisory board. NEH's authorizing legislation gives broad discretion to the Chairman to carry out the

agency's statutory functions to support scholarly works, programs, and research in the humanities; *see* 20 USC 956(c)(1)-(10), 20 USC 956(f), 20 USC 956(h).

20 USC 951 enumerates the 'findings and purposes' that underlie NEH, and its sister agencies. In it, Congress declares, *inter alia*, that:

> (2) The encouragement and support of national progress and scholarship in the humanities and the arts, while primarily a matter for private and local initiative, are also appropriate matters of concern to the Federal Government;…
>
> (5) It is necessary and appropriate for the Federal Government to complement, assist, and add to programs for the advancement of the humanities and the arts by local, State, regional, and private agencies and their organizations…Such funding should contribute to public support and confidence in the use of taxpayer funds. Public funds provided by the Federal Government must ultimately serve public purposes the Congress defines;…
>
> (8) The world leadership which has come to the United States cannot rest solely upon superior power, wealth, and technology, but must be solidly founded upon worldwide respect and admiration for the Nation's high qualities as a leader in the realm of ideas and of the spirit.;…and…
>
> (11) To fulfill its educational mission, achieve an orderly continuation of free society, and provide models of excellence to the American people, the Federal Government must transmit the achievement and values of civilization from the past via the present to the future, and make widely available the greatest achievements of art.

NEH confirms that it has not interpreted its statutes beyond what they require.

3. **All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations (because the functions performed by such employees do not fall under an exception to the ADA) using the Agency Contingency Plans submitted to OMB in 2019 referenced above.**

NEH does not have agency components or sub-agencies. NEH's Chairman and its advisory board, the National Council on the Humanities, are statutorily required. 20 USC 956(b); 20 USC 957(a). The NEH Chairman has administrative authority to hire staff to carry out the agency's statutory functions, including to establish program offices to run grant programs in different humanities fields. The following positions are typically designated as essential during a lapse in appropriations: Chairman; Senior Deputy Chairman; Chief of Staff; Assistant Chairman for Planning and Operations; Director, Office of Administrative Services; Director, Office of Human Resources; Systems Operations Supervisor, Office of Information Technology; General Counsel. NEH may designate the following positions on an ad hoc basis: Assistant Chairman for Programs; the Director of Accounting; the Director of Grant Management; and the Director of Planning and Budget.

4. **Whether the agency or any of its subcomponents should be eliminated or consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities.**

There are a number of NEH offices that current leadership believe should be eliminated. Almost all of them were created during the Biden Administration. They are: the Office of Partnerships and Strategic Initiatives; the Office of Native and Indigenous Affairs; the Office of Outreach; the Office of Challenge Programs; and the Office of Data and Evaluation. (NEH is required by statute to collect humanities data and anticipates consolidating such efforts within its existing Office of Planning and Budget, where it has historically been located.)

There are a number of NEH program offices that current leadership believe should be consolidated. NEH is considering reducing the number of program offices by approximately fifty percent – going from eight to four. NEH is also considering consolidating some of its administrative offices, to achieve greater efficiencies.

5. **The specific tools the agency intends to use to achieve efficiencies, including, as to each, the number of FTEs reduced and any potential savings or costs associated with such actions in Fiscal Years 2025, 2026 and 2027:**

    a. **Continuation of the current hiring freeze;**
    b. **Regular attrition (e.g., retirement, movement between agencies and the private sector);**
    c. **Attrition through enhanced policies governing employee performance and conduct;**
    d. **Attrition through the termination or non-renewal of term or limited positions or reemployed annuitants;**
    e. **Attrition achieved by RIFs. Please refer to Appendix 1 for specific steps and timing. For purposes of the Phase 1 ARRP, the agency should include the following information:**

        i. **The competitive areas and organizational components that the agency has targeted or will target for initial RIFs, and**

        As noted above, NEH is considering eliminating the following offices: the Office of Partnerships and Strategic Initiatives; the Office of Native and Indigenous Affairs; the Office of Outreach; the Office of Challenge Programs; and the Office of Data and Evaluation.

        ii. **The agency's target for reductions in FTE positions via RIFs.**

        NEH's target for reductions in FTE positions via the various staff reduction tools is twenty to twenty-five percent of the staff.

NEH intends to use all the tools listed above to achieve efficiencies and effectuate the principles in President Trump's Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*), and

OMB/OPM's associated February 26, 2025 guidance, Guidance on Agency RIF and Reorganization Plans.

6. **A list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs, including the number per each job position and total by agency and subcomponent.**

NEH is a grant making agency. In order for NEH to continue its statutory function of making grants it will need program and administrative staff to do so. However, NEH plans to reduce the number of program offices (and thereby the number of individual program officers), and several other offices added during the Biden Administration, in addition to using the other tools in #5, above, to carry out its statutory functions in a more streamlined and efficient manner.

7. **The agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts, as applicable, including compliance with any congressional notification requirements.**

NEH does not have Congressional notification requirements to restructure the agency. As appropriate, and as necessary when funds are being moved between accounts, NEH intends to consult with its Congressional appropriations and authorizing committees about restructuring plans.

8. **The agency's timetable and plan for implementing each part of its Phase 1 ARRP.**

NEH will begin to implement Phase 1 of its ARRP immediately. NEH has requested approval for the VERA/VSIP authority, and will offer that to staff as soon as possible.

# Exhibit 5

**Department of Energy**
Washington, DC 20585

Skye Perryman
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

Via email: foia@democracyforward.org

Re: HQ-2025-02570-F

Dear Ms. Perryman,

This is a final response to the request for information that you sent to U.S. Department of the Energy (DOE) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. You requested the following:

> All Agency RIF and Reorganization Plans ("ARRPs") submitted by the heads and acting heads of your department/agency to OMB (at workforce@omb.eop.gov and OPM (at tracking@opm.gov or otherwise) as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative". Please provide all records from February 1, 2025, through the date the search is conducted.

Your request was assigned to DOE's Office of the Chief Human Capital Officer (HC). The search started on May 15, 2025, which is the cutoff date for responsive records. HC has completed its search and identified four (4) documents responsive to your request. The documents are being released to you as described in the accompanying index.

Please note: DOE is withholding two (2) Phase 2 documents in full as these documents are under judicial consideration in the Ninth Circuit. Should the government receive an adverse ruling, you may submit another FOIA request for the documents at that time.

Upon review, DOE has determined that certain information should be withheld from the documents pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552 (b)(5).

Exemption 5 protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552 (b)(5). Exemption 5 incorporates the deliberative process privilege which protects recommendations, advice, and opinions that are part of the process by which

agency decisions and polices are formulated. The information withheld under Exemption 5 consists of inter/intra-agency pre-decisional, deliberative information.

Some of the information withheld under Exemption 5 has been deemed pre-decisional and deliberative in nature. The information is both pre-decisional because it was developed before the agency adopted a final position, and deliberative, in that it reflects the opinions of individuals who were consulted as part of a decision-making process that will lead to the agency's final policy decision about these matters. The DOE may consider these preliminary views as part of the process that will lead to the agency's final decision about these matters. The information does not represent a final agency position, and its release would compromise the deliberative process by which the government makes its decisions. Therefore, portions of the documents are being withheld under Exemption 5 of the FOIA as pre-decisional material that is part of the agency's deliberative process.

In addition, these documents contain communications involving DOE attorneys and are being withheld under the attorney-client communications privilege. The information in these documents includes confidential communication between DOE attorneys and the staff of the program office to which they provide legal advice. Thus, documents are being withheld in part under Exemption 5 of the FOIA.

With respect to the discretionary disclosure of deliberative information, as well as attorney-client communications, the quality of agency decisions would be adversely affected if frank, written discussion of policy matters were inhibited by the knowledge that the content of such discussion might be made public. For this reason, DOE has determined that discretionary disclosure of the deliberative material and attorney-client communications are not in the public interest because foreseeable harm would result from such disclosure.

This satisfies the standard set forth at 5 U.S.C. § 552(a)(8)(A) that agencies shall withhold information under FOIA "only if (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption…; or (II) disclosure is prohibited by law…". 5 U.S.C. § 552(a)(8)(A) also provides that whenever full disclosure of a record is not possible, agencies shall "consider whether partial disclosure of information is possible…and (II) take reasonable steps necessary to segregate and release nonexempt information." Therefore, we have determined that, in certain instances, a partial disclosure is proper.

Pursuant to 10 C.F.R. § 1004.7(c)(2), I am the individual responsible for the determination to withhold the information described above. The FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). As a result, a redacted version of the documents is being released to you in accordance with 10 C.F.R. §1004.7(c)(3).

This determination, as well as the adequacy of the search, may be appealed within 90 calendar days from your receipt of this letter pursuant to 10 C.F.R. § 1004.8. Appeals should be addressed to Director, Office of Hearings and Appeals, HG-1, L'Enfant Plaza, U.S. Department of Energy, 1000 Independence Avenue, S.W., Washington, D.C. 20585-1615. The written appeal, including the envelope, must clearly indicate that a FOIA appeal is being made. You may also submit your

appeal to OHA.filings@hq.doe.gov, including the phrase "Freedom of Information Appeal" in the subject line. (This is the method preferred by the Office of hearings and Appeals.) The appeal must contain all of the elements required by 10 C.F.R. § 1004.8, including a copy of the determination letter. Thereafter, judicial review will be available to you in the Federal District Court either: (1) in the district where you reside; (2) where you have your principal place of business; (3) where DOE's records are situated; or (4) in the District of Columbia.

You may contact DOE's FOIA Public Liaison, Todd Burns at foia-central@hq.doe.gov. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

The FOIA provides for the assessment of fees for the processing of requests. *See* 5 U.S.C. § 552(a)(4)(A)(i); *see also* 10 C.F.R. § 1004.9(a). Your request was placed in the "other" category for fee purposes. Requesters in this category are entitled to two (2) free hours of search time and are provided 100 pages at no cost. DOE's processing costs did not exceed $15.00, the minimum amount at which DOE assesses fees. Thus, no fees will be charged for processing your request.

This is the final response you will receive from DOE. I appreciate the opportunity to assist you with this matter.

Sincerely,

Todd Burns
FOIA Officer
Office of the General Counsel

**INDEX**

**Request: HQ-2025-02933-F**

**Final response to Skye Perryman:**

> **All Agency RIF and Reorganization Plans ("ARRPs") submitted by the heads and acting heads of your department/agency to OMB (at workforce@omb.eop.gov and OPM (at tracking@opm.gov or otherwise) as required by OMB Director Vought and OPM Acting Director Ezell's February 26, 2025 memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative". Please provide all records from February 1, 2025, through the date the search is conducted.**

DOE's Office of the Chief Human Capital Officer has completed its search and located four (4) documents responsive to your request.

- Three (3) documents *are being withheld in full pursuant to Exemption (b)(5).*
- One (1) document *is being released in its entirety.*

U.S. DEPARTMENT *of* ENERGY




**PRE-DECISIONAL**

# Agency RIF and Reorganization Planning (ARRP) Phase 1

## U.S. Department of Energy (DOE)

**March 2025**

# Department of Energy ARRP Phase 1

**OPM Requirement**
Each agency will submit a Phase 1 ARRPs to OMB and OPM for review and approval **no later than March 13, 2025**. Phase 1 ARRPs shall focus on initial agency cuts and reductions. Each Phase 1 ARRP should identify:

1. **A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.**

   Department of Energy (DOE) offices provide specific services to key partners and beneficiaries with both direct and indirect impacts on citizens and stakeholders, including national, economic, energy, and environmental security. For example:

   S2: The Office of the Deputy Secretary (S2) encompasses the Departmental organizations engaged in energy programs, environmental cleanup and remediation of contaminated sites, and other critical functions including personnel and physical safety/security, informing national security through intelligence and counterintelligence, oversight and policy development necessary for the overall operation of the Department.
   - S2 consists of 21 subcomponents. Of these subcomponents, 184 subsidiary organizations provide direct services to citizens. Direct services to citizens include providing public energy data, environmental cleanup of contaminated sites, a forum for dispute resolution, public information dissemination, and resources for American businesses.

   S3: The Office of the Under Secretary for Infrastructure (S3) advances energy technologies, enhances energy security, and modernizes the U.S. energy infrastructure. Most operate by providing funding, technical assistance, and policy support.
   - S3 consists of 8 subcomponents and the Power Marketing Administrations (Bonneville Power Administration, Southeastern Power Administration, Southwestern Power Administration, and Western Area Power Administration). Of these subcomponents, 21 subsidiary organizations provide direct services to citizens. Direct services to citizens include administering grants to states for home weatherization, offering information and assistance during energy emergencies, enhancing grid resilience and reliability, and providing technical assistance and administering grants to Indian tribes for energy development. Additionally, the Power Marketing Administrations (PMAs) operate electric systems and sell the electrical output of federally owned and operated hydroelectric dams in 34 states.

   S4: The Office of the Under Secretary for Science and Innovation (S4) oversees a broad portfolio of research and development activities, fostering partnerships with universities, national laboratories, and industry to advance cutting-edge technologies. The following offices within S4 provide direct services to citizens:
   - S4 consists of 7 subcomponents. Of these subcomponents, 78 subsidiary organizations provide direct services to citizens. Direct services to citizens include targeted energy

programs in the Arctic, funding to state and local governments for energy initiatives, and long-term advancements to nuclear energy technologies. This also includes the oversight of 17 National Laboratories which provide various services to the public including public access to research facilities. These program offices benefit the public through advancing technologies to assure American energy dominance and national, economic, and energy security. S4 also provides access to artificial intelligence (AI) and high-performance super-computing capabilities to solve complex scientific problems, accelerate scientific discovery, and enhance national security.

S5: National Nuclear Security Administration (NNSA) is responsible for enhancing national security through the military application of nuclear science. NNSA maintains and enhances the safety, security, and effectiveness of the U.S. nuclear weapons stockpile; works to reduce the global danger from weapons of mass destruction; provides the U.S. Navy with safe and militarily effective nuclear propulsion; and responds to nuclear and radiological emergencies in the United States and abroad.

2. **Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities. Agency leadership must confirm statutes have not been interpreted in a way that expands requirements beyond what the statute actually requires. Instead, statutes should be interpreted to cover only what functions they explicitly require.**

Appendix 1[1] lists the statutory requirements with a direct line to the statutory functions. Statute interpretation has been limited to the specific statutory authority and has not been expanded. The listed statutes contain explicit requirements.

Whereas the listed statutes authorize general Departmental and Secretarial authorities, subsequent considerations such as line management, organizational design, and any related regulatory determinations are left to Secretarial discretion. Accordingly, DOE will consider such optimization in developing and implementing Phase 2 of the ARRP.

See **Appendix 1: DOE Statutorily Required Functions**

3. **All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations (because the functions performed by such employees do not fall under an exception to the ADA) using the Agency Contingency Plans submitted to OMB in 2019 referenced above.**

The determination of essential personnel during lapse of appropriations is based on the minimum number of staff required to prevent loss of life and property when the Department is shutting down agency operations. However, during such a lapse, DOE prioritizes a phased approach to ensure the continuation of critical operations in compliance with funding restrictions. Beyond any initial funding flexibilities, all but the essential personnel in the Department are prohibited from fulfilling their statutorily mandated functions. While the core group of essential personnel required to remain during a lapse are extremely minimal, such limited capabilities are neither intended nor capable of sustaining ongoing government operations.

The following mission support functions within Departmental Elements ensure successful mission execution but are not in and of themselves statutorily mandated: resource management

[1] Appendix 1- DOE Statutorily Required Functions

and workforce development; budget; communications and external affairs; and technical and administrative support. See **Section 6** for additional detail.

4. **Whether the agency or any of its subcomponents should be eliminated or consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities.**

   In alignment with the President's energy priorities, and consistent with the DOE Secretary's order to unleash American energy dominance by prioritizing energy abundance, innovation, infrastructure development, affordability, security, and modernization, the Agency is in the process of making critical restructuring and reorganization determinations as to the elimination, consolidation, and/or expansion of various portfolios. This may include, but would not be limited to, consolidating certain organizations, sub-units, or functions within the existing S2, S3, and S4 organizational designs, as well as ongoing personnel-related actions. Any future reorganization will be in alignment with the President's Executive Orders, development of the Secretary's priorities and strategic objectives, line management reporting structures, and anticipated administration priorities, as reflected in the FY 2026 President's Budget Request.

5. **The specific tools the agency intends to use to achieve efficiencies, including, as to each, the number of FTEs reduced and any potential savings or costs associated with such actions in Fiscal Years 2025, 2026 and 2027:**
   a. **Continuation of the current hiring freeze;**
   b. **Regular attrition (e.g., retirement, movement between agencies and the private sector);**
   c. **Attrition through enhanced policies governing employee performance and conduct;**
   d. **Attrition through the termination or non-renewal of term or limited positions or reemployed annuitants;**
   e. **Attrition achieved by RIFs. For purposes of the Phase 1 ARRP, the agency should include the following information:**
      i. **The competitive areas and organizational components that the agency has targeted or will target for initial RIFs, and**
      ii. **ii. The agency's target for reductions in FTE positions via RIFs.**

   In an effort to achieve operational efficiency, the Agency has already undertaken several key actions with the following results:

   - 1,217 employees separated as a result of the Deferred Resignation Program (*DRP*),
   - 71 DEI employees who have been placed on administrative leave and will be prioritized in RIF implementation, and
   - 555 probationary employees terminated (may be reinstated due to court order issued March 13, 2025)

   Additionally, the following tools may be utilized to achieve further efficiencies:

   - **VERA/VSIP Request:** The agency may request approval for VERA and VSIP Department-wide, with approximately 1,640 eligible employees.

- **Management of Temporary/Term Positions and Reemployed Annuitants:** A strategic review of temporary and term positions as well as reemployed annuitant appointments will be conducted to identify opportunities for termination or non-renewal.
- **Retention Incentive Reviews:** A comprehensive review of retention incentives is underway, with agreements terminated or not extended where appropriate. This includes a review of group incentive programs for cybersecurity personnel.
- **Enhancement of Performance and Conduct Policies:** The agency plans to drive further attrition through actively enhanced performance and conduct policies. Performance data has been submitted to OPM to aid in developing government-wide performance metrics for evaluating the federal workforce. Additionally, the agency enhanced policies for SES employees to ensure greater accountability, restructuring the Executive Review Board (ERB) to comply with the relevant Executive Order.
- **Continuation of Hiring Freeze:** The agency will maintain its current hiring freeze with limited approval to fill critical positions in alignment with Administration priorities.
- **Management of Regular Attrition:** Normal attrition, including retirements, resignations, and transfers, will be leveraged to decrease the workforce size. The most recent attrition rate for DOE prior to 1/20/2025 was 7.5% per year.
- **RIF Implementation:** The agency may conduct targeted RIFs to accomplish its new organizational structure to better meet the Administration's strategic priorities.

**6. A list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs, including the number per each job position and total by agency and subcomponent.**

DOE has defined essential positions for the purposes of exclusion from large-scale RIFs as:

The topline numbers:

- Current DOE Positions: 17,536 (Based on encumbered positions as well as funded and non-funded vacancies)
- Current DOE Onboard Headcount: 15,994 (includes 1,288 DOE staff on administrative leave due to Deferred Resignation Program and DEI; excludes the 555 Probationary Terminations)
- Total Essential Positions: 9,004
  - Essential Organizations include: Office of Cybersecurity, Energy Security and Emergency Response, Office of Environmental, Health, Safety, and Security, Office of Environmental Management, Office of Intelligence and Counterintelligence, National Nuclear Security Administration, Bonneville Power Administration, Southeastern Power Administration, Southwestern Power Administration, and Western Area Power Administration.
- Breakdown of Essential Positions by Portfolio:
  - S2: 1,252 of 4,295 total positions
  - S3: 5,280 of 6,799 total positions
    - Power Marketing Administrations (PMAs): 4,650 of 5,176 total positions.
    - Remaining S3 Organizations: 630 of 1,623 total positions.
  - S4: 1,565 of 3,424 total positions
  - S5: 2,472 of 3,018 total positions

Note: The Office of the Inspector General (IG) and the Secretary of Energy Advisory Board (SEAB) are excluded from this data due to their independent nature.

7. **The agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts, as applicable, including compliance with any congressional notification requirements.**

DOE's Office of Congressional & Intergovernmental Affairs (CI), together with the Office of Chief Financial Officer (CFO), and Office of the Chief Human Capital Officer (HC), and other relevant departmental elements, will coordinate on communicating DOE's restructuring plans while considering the advice of the Office of General Counsel (GC) regarding the Secretary's statutory authorities. DOE will engage with the Department's Congressional Committees of jurisdiction and ensure compliance with any notification requirements. Key committees may include:

- Senate Energy & Water Development Subcommittee on Appropriations
- Senate Energy & Natural Resources Committee
- Senate Armed Services Committee
- House Energy & Water Development Subcommittee on Appropriations
- House Energy & Commerce Committee
- House Science, Space, and Technology Committee
- House Armed Services Committee

8. **The agency's timetable and plan for implementing each part of its Phase 1 ARRP.**

As DOE continues to refine the scope of the Phase 2 ARRP, it will further specify deliverables, actions, goals, and milestones and monitor progress in alignment with agency policy and administration priorities as well as collective bargaining agreements. Over the next month, such efforts will proceed in accordance with the ongoing Secretarial review of the Department to ensure alignment with administration priorities, while anticipating the confirmation of senior leaders to conduct comprehensive program reviews. Thus, DOE will continue executing toward the development of the detailed ARRP to be submitted in accordance with Phase 2.

Concurrently, DOE will continue to review the data gathered by the program offices, including the statutory authorities included in the submission of the Phase 1 report (see **Appendix 1**), gather and analyze additional data, and explore strategic options for each organizational unit and subunit in the context of overarching personnel considerations. Subsequently, ongoing efforts will proceed in synergy with related Executive Orders and OPM memos influencing strategic HR management decisions. For instance, while developing the detailed timetable and plan for the Phase 2 ARRP, DOE will continue to implement initiatives advancing employees' return to the office, instilling merit-based principles, categorizing policy positions, and optimizing collective bargaining agreements in tandem with insights gleaned from related government efficiency initiatives and the ongoing Secretarial review, including both Federal and contractor FTEs.

Appendix 1, consisting of twelve (12) pages, is being withheld in full under Exemption b5

Two documents for Phase 2 are being withheld in full under Exemption b5.

# Exhibit 6

**From:** Peters, Noah[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DBDA6F59464E458FA0D3719C47FE927D-B0435773-6C]
**Sent:** Mon 3/3/2025 4:00:58 PM (UTC-05:00)
**To:** Heller-Stein, Colleen E.(b) (6) [redacted]@opm.gov]
**Subject:** RE: Questions from agencies and proposed responses

Agree with these responses

**From:** Heller-Stein, Colleen E. (b) (6) [redacted]@opm.gov>
**Sent:** Monday, March 3, 2025 4:00 PM
**To:** Peters, Noah <(b) (6) [redacted]opm.gov>
**Subject:** Questions from agencies and proposed responses

Hi Noah,

(b) (5) [redacted]

(b) (5) [redacted]

**Colleen Heller-Stein**
Executive Director, Chief Human Capital Officers Council
U.S. Office of Personnel Management

# Exhibit 7

**From:** Billy, Stephen M. EOP/OMB
**Sent:** Tuesday, March 18, 2025 1:06 PM
**To:** Scales, Amanda
**Subject:** FW: ARRP Roll-Up by Agency
**Attachments:** ARRP Phase 1 Plan Summary Data 3.18.xlsx

[redacted].

Stephen Billy
Office of Management and Budget
[redacted]

---

**From:** O'Neill, Stephanie D. EOP/OMB <[redacted]>
**Sent:** Tuesday, March 18, 2025 12:58 PM
**To:** Peters, Noah <[redacted]opm.gov>; Scales, Amanda D. <[redacted]opm.gov>
**Cc:** Stocker, Lauren G. EOP/OMB [redacted]>; Billy, Stephen M. EOP/OMB <[redacted]>; Renick, Carolyn G. EOP/OMB <[redacted]>
**Subject:** ARRP Roll-Up by Agency

Noah & Amanda,
As a part of our review of the Phase 1 ARRP, our team developed [redacted]
v/r.,
Stephanie

Stephanie O'Neill
Acting Branch Chief
Federal Workforce Branch
Office of Performance and Personnel Management
Office of Management and Budget
[redacted]