**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>*Plaintiff*,<br><br>vs.<br><br>OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-0858 (SLS) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Introduction ........ 1

Argument ........ 2

I. Defendants Cannot Justify the Categorical Withholding of the 147 ARRPs. ........ 2

A. The ARRPs Contain Factual Information That Is Segregable. ........ 2

B. Defendants' Deficient Foreseeable Harm Analysis Does Not Carry Their Burden. ........ 4

C. Given the Evidence that at Least Some ARRPs Were Not Predecisional, Defendants Did Not Carry Their Burden. ........ 6

II. OPM's Blanket Withholding of Select Communications Cannot Be Justified. ........ 9

A. OPM Failed to Meaningfully Segregate Non-Deliberative Information From the March 3 Email. ........ 9

B. OPM's Full Withholding of the Spreadsheet Cannot Be Sustained. ........ 10

Conclusion ........ 11

# TABLE OF AUTHORITIES

**Cases**

*Access Reports v. DOJ*,
926 F.2d 1192 (D.C. Cir. 1991) .................... 6

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
155 F.4th 1082 (9th Cir. 2025) .................... 4

*Am. Fed'n of Gov't Emps. v. Trump*,
No. 3:25-cv-3698-SI (N.D. Cal. filed Apr. 28, 2025) .................... 6, 7

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
436 F. Supp. 3d 90 (D.D.C. 2019) .................... 4

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002) .................... 9

*Jud. Watch, Inc. v. FDA*,
449 F.3d 141 (D.C. Cir. 2006) .................... 3

*King v. U.S. Dep't of Just.*,
830 F.2d 210 (D.C. Cir. 1987) .................... 1

*Machado Amadis v. U.S. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) .................... 5

*Mapother v. DOJ*,
3 F.3d 1533 (D.C. Cir. 1993) .................... 3, 4

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) .................... 10

*Montrose Chem. Corp. of Cal. v. Train*,
491 F.2d 63 (D.C. Cir. 1974) .................... 3

*Nat'l Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004) .................... 5

*New York v. McMahon*,
826 F. Supp. 3d 184 (D. Mass. 2026) .................... 8

*Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) .................... 4, 6

*Sackett v. EPA*,
566 U.S. 120 (2012) .................... 4

*U.S. DOGE Serv. v. U.S. Dist. Ct. for D.C.*,
No. 25-1103 (U.S. cert. granted Oct. 13, 2026) .................... 7

**Other Authorities**

Application for Stay, *Trump v. Am. Fed'n of Gov't Emps., AFL-CIO*, No. 24A1174 (U.S. June 2, 2025) ........ 5

Russell T. Vought & Charles Ezell, *Guidance on Agency RIF and Reorganization Plans Requested by Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*, Off. of Mgmt. & Budget & Off. of Pers. Mgmt. (Feb. 26, 2025) ........ 3, 4, 5

## INTRODUCTION

After Defendants sought multiple extensions in part to evaluate "whether additional factual development, including a supplemental declaration," ECF No. 46 at 2, was necessary to respond to Plaintiff's Cross-Motion,[1] and whether to "maintain their current litigation position with respect to certain withholdings at issue," ECF No. 49 at 2, they elected to stand by their blanket withholding of every word within all 147 Agency RIF and Reorganization Plans ("ARRPs") supported only by their original generalized declaration that fails to discuss any particular withheld document. But Defendants' declaration is insufficient to meet their burden. That conclusion is reinforced by Plaintiff's evidence drawn from publicly available ARRPs and other federal courts' analysis of them. Instead, Defendants attempt to flip the burden to Plaintiff to establish that the records are not privileged, while in the same breath accuse Plaintiff of speculating about the content of the ARRPs. But Defendants ignore both the "asymmetrical distribution of knowledge that characterizes FOIA litigation," *King v. U.S. Dep't of Just.*, 830 F.2d 210, 218 (D.C. Cir. 1987), and their own failure to provide any further concrete information justifying the withholding. Because Defendants fall far short of proving that FOIA's Exemption 5 applies to these records, the Court should deny Defendants' motion for summary judgment and grant Plaintiff's Cross-Motion.

[1] Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment, ECF No. 45 (Sept. 14, 2026) ("Cross-Motion").

## ARGUMENT

### I. Defendants Cannot Justify the Categorical Withholding of the 147 ARRPs.

Plaintiff advances three arguments regarding the ARRPs that Defendants fail to rebut in their Opposition.[2] First, the ARRPs contain factual and segregable material; Defendants notably ignore two publicly released ARRPs and rely on inapposite caselaw. Second, there is no foreseeable harm in disclosing information within the ARRPs about implemented agency actions; Defendants fail to explain how disclosure would cause harm, and they misapprehend the caselaw. Third, there is strong evidence that some ARRPs were not predecisional at all; Defendants have no answer to the evidence Plaintiff brings to bear, including the conclusions of other federal courts that have reviewed these plans.

#### A. The ARRPs Contain Factual Information That Is Segregable.

Defendants have not met their burden to demonstrate that there is no factual, segregable material in any of the 147 ARRPs. Their Opposition recycles the same tired arguments, refuted in Plaintiff's Cross-Motion, that *all* ARRP material is either deliberative because of how it was presented or inextricably intertwined with privileged material.

In its Cross-Motion, Plaintiff included examples from two released ARRPs, from the National Endowment for the Humanities ("NEH") and the Department of Energy ("DOE"), showing that agencies' responses contained factual, non-deliberative information. *See* Cross-Motion at 9–11. Defendants claim that these incidentally available examples do not establish whether "information within those sections is legally segregable," and repeat that they conducted a "line-by-line review" of all the ARRPs, including those of NEH and DOE. Opp. at 14; *see* Decl. of Lance Harris ("Harris Decl.") Ex. 2 at 1, 3, ECF No. 43-2. But they fail to explain how plainly

---

[2] Reply in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Opp.").

factual material in the NEH and DOE ARRPs is deliberative. *See, e.g.,* ECF No. 45-3 at 1 (NEH ARRP stating, in response to a question about which agency subcomponents provide direct services to citizens, that it "does not have subcomponents and does not provide direct services to citizens . . ."). It is appropriate to infer from these examples that at least some ARRPs are likely to contain segregable material, especially because Defendants acknowledge that the format and content of the 147 ARRPs "varied according to the mission and structure of the submitting agency," Harris Decl. ¶ 29. Yet Defendants, who "possess[] both the burden of proof and all the evidence," have offered no compelling reason why this reasonable inference would not hold. *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).

Further, in contrast to cases in which the selection of factual material would itself reveal deliberations, the categories of factual information Defendants required of the reporting agencies are already public. Here, unlike in *Mapother v. DOJ*, 3 F.3d 1533 (D.C. Cir. 1993), there was no "exercise of judgment in extracting pertinent material from a vast number of documents." *Id.* at 1539 (involving a 200-page investigative file of a former head of state accused of being a Nazi war criminal drawing from various sources); *see also Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 64–65 (D.C. Cir. 1974) (involving summaries distilling a more than 9,000-page record of EPA hearings on DDT). The discretion and judgment that went into such analyses bear no resemblance to the factual material Plaintiff seeks here: unlike a situation where the choice of what material to include could reveal deliberations, the specific categories of information required in the ARRPs regarding agencies' activities and statutory responsibilities is already publicly available. *See* RIF Memo at 3–4.[3] This information is akin to the factual summary that the

[3] Russell T. Vought & Charles Ezell, *"Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce*

*Mapother* court required the agency to segregate and disclose—a chronology of the suspected war criminal's military service—because the "selection of the categories of fact . . . in no way betray[ed] the occasion that gave rise to its compilation." 3 F.3d at 1540.

### B. Defendants' Deficient Foreseeable Harm Analysis Does Not Carry Their Burden.

Defendants fail to establish that releasing the ARRPs would cause foreseeable harm sufficient to justify withholding them categorically, and thus fail to carry their "independent and meaningful burden." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)).

The ARRPs were final plans by top agency decisionmakers.[4] Defendants argue that Plaintiff has not shown the "factual premise" that the ARRPs were carried out, and further, that the deliberative process privilege still protects the recommendations even if they were implemented. Opp. at 2–5. While Defendants repeat these general concerns about the chilling effect that the privilege is concerned with, they fail to provide evidence of a likely scenario. For the ARRPs that the agencies actually implemented—or would have implemented but for an injunction—there can be no chill as to internal agency deliberations. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1091 (9th Cir. 2025) (noting that the "breadth of the ongoing [RIFs] . . . undermines the government's contention that the ARRPs are predecisional"). These plans were effectively final. *See Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action

---

*Optimization Initiative,"* Office of Management and Budget and Office of Personnel Management (Feb. 26, 2025), https://perma.cc/MSL6-P7EP("RIF Memo").

[4] *See* RIF Memo, *supra* note 3, at 1 (stating that "President Trump . . . directed that, **no later than March 13, 2025**, agencies develop Agency Reorganization Plans," and "instruct[ing] that such plans be submitted to OMB and OPM") (emphasis in original).

nonfinal."). Despite having the necessary information to assess which ARRPs are in that category, and release them, Defendants instead treat them as an undifferentiated mass.

The plans bear no resemblance to draft recommendations sent to an agency superior and thus do not implicate the concern of a chilling effect on "comparable deliberations going forward." Opp. at 7. Indeed, the ARRPs—submitted by agency heads to Defendants for approval and to be acted upon[5]—are far from the records in *Machado Amadis v. Department of State*, which were drafted by "line attorneys during the course of adjudicating [FOIA] appeals," and reviewed by senior attorneys who "finally adjudicat[ed]" the appeals. 971 F.3d 364, 370–71 (D.C. Cir. 2020). Disclosing steps an agency actually implemented poses little logical risk of a chilling effect, especially where the ARRPs were submitted by agency heads—not line attorneys—for signoff from Defendants.

This is especially true because public reporting, unrebutted by Defendants, corroborated that agencies undertook actions included in the ARRPs in close proximity to their submission.[6] Indeed, the government represented to the Supreme Court that, but for an injunction, many of the workforce actions reflected in these plans (40 RIFs across 17 agencies) would have been implemented. Application for Stay at 32–33, *Trump v. Am. Fed'n of Gov't Emps., AFL-CIO*, No. 24A1174 (U.S. June 2, 2025). Contrary to Defendants' telling, releasing information about steps the government chose to implement so that the "public know[s] what its government is up to" is at the heart of FOIA's purpose. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 162 (2004)

[5] *See* RIF Memo, *supra* note 3, at 3–4 (stating that each agency "will submit a Phase 1 ARRP[] . . . for review and approval," which "should identify" "the agency's timetable and plan for implementing each part of its Phase 1 ARRP").

[6] Those agencies are the Consumer Financial Protection Bureau, the Internal Revenue Service, the Department of the Interior, and the Department of State. *See* Cross-Motion at 14–15 & n.4 (collecting news reports).

(internal citation omitted). Defendants' reliance on inapposite caselaw indicates that they have failed to adequately apply the foreseeable harm standard. *See* Opp. at 8 (relying on *Access Reports v. DOJ*, 926 F.2d 1192 (D.C. Cir. 1991)), which predates the foreseeable harm standard by twenty years).

Ruling for Plaintiff would not create a rule that any internal agency proposal subsequently acted upon would lose its deliberative process privilege protection. Rather, it would apply existing standards to the context of this particular case. Namely, where an agency seeks to withhold plans finalized and approved by top decisionmakers, acted upon close in time by the agency, and without any individualized showing of foreseeable harm. Defendants have failed to explain how release, in this "specific context," would "impede . . . agency deliberations going forward." *Reps. Comm.,* 3 F.4th at 370.

### C. Given the Evidence that at Least Some ARRPs Were Not Predecisional, Defendants Did Not Carry Their Burden.

Even though it is now clear that at least some ARRPs were post-decisional documents, *see* Cross-Motion at 17–19, Defendants continue to rely on a declaration that provides no specific information about any individual ARRP. If an ARRP were created well in advance of the deadline for submission and never acted upon by the agency, perhaps it would be appropriate to withhold the deliberative portions. But even though Defendants alone possess that information, they have not provided it to Plaintiff or the Court, and instead ask the Court to rule for them based on speculation that such facts might be true for all the ARRPs.

Confronted with the fact that the *AFGE* court[7] reviewed a sample of four ARRPs—two of which were chosen by the government—and concluded that they were likely not predecisional and

[7] *Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-3698-SI (N.D. Cal. filed Apr. 28, 2025) (*"AFGE"*).

deliberative, Cross-Motion at 18, Defendants claim Plaintiff "presumes" that those plans were among the ARRPs withheld here. Opp. at 3. But that presumption is all but certain: every agency defendant in that litigation (minus OMB and U.S. DOGE Service) submitted an ARRP to Defendants.[8] Moreover, Defendants *have* access to the plans and, in a recent request for an extension, acknowledged that there was a "substantial portion of the same records at issue in this action." ECF No. 46 at 2. Nor do Defendants have a compelling response to the substance of the *AFGE* court's decision.

Defendants' effort to treat the incidentally released NEH and DOE plans as effectively *sui generis* is similarly unpersuasive. Opp. at 3–4, 6 n.1; *see* Decl. of Daniel H. Martinez ("Martinez Decl.") Ex. 4, ECF No. 44-4. They provide no reason other than speculation that these plans were unique and have no answer to Plaintiff's argument that the other unreleased ARRPs likely have comparable material.

Defendants inappropriately attempt to flip the burden, by arguing Plaintiff's evidence regarding agency actions does not establish the "categorical conclusion" that the plans are not deliberative. Opp. at 4. But Plaintiff need not make such a showing. Instead, the evidence available to Plaintiff—two released plans and four plans a federal judge reviewed *in camera*—shows that Defendants' categorical assertion that all 147 ARRPs are entirely predecisional does not meet their burden. *Id.* at 14. Defendants muse that even if Plaintiff could "establish that a particular ARRP referred to one action the submitting agency had already decided to undertake, that would not

---

[8] The *AFGE* court "reviewed *in camera* the ARRPs of four of the federal agency defendants." Order at 2, *AFGE* (N.D. Cal. July 9, 2025), ECF No. 177. Of the federal agency defendants that were parties at the time of the operative complaint, *see* Am. Compl., *AFGE*, (N.D. Cal. May 14, 2025) ECF. No. 100, only OMB itself and U.S. DOGE Service (which the government has maintained from its inception is not an "agency" subject to FOIA, *see U.S. DOGE Serv. v. U.S. Dist. Ct. for D.C.*, No. 25-1103 (U.S. *cert. granted* Oct. 13, 2026)) did not submit ARRPs, *see* Harris Decl. Ex. 2 at 1–4.

establish that the ARRP as a whole memorialized settled policy." *Id.* at 4. But Defendants have not segregated such material, which Plaintiff has shown exists, and instead withheld every record in full.

Plaintiff's evidence of workforce actions at the Department of Health & Human Services ("HHS") and the Department of Education ("ED") reinforce this conclusion. HHS provides strong circumstantial evidence that at least some ARRPs reflected decisions already made—and, in some cases, already implemented. Defendants declined to provide any detail refuting the logical connection between the HHS RIF and its ARRP, or any other ARRP for that matter, even though those records are within their sole control.

Worse, regarding ED, Defendants present incoherent factual information. They point to ED's submission in another case to claim that a "fundamental" problem with Plaintiff's argument here is that ED "subsequently denied . . . that it ever submitted an ARRP to Defendants," so *New York v. McMahon* provides no support. Opp. at 2; *see* 826 F. Supp. 3d 184 (D. Mass. 2026). But according to Defendants' own declaration here, ED *did* submit one:

Case 1:25-cv-00858-SLS Document 43-2 Filed 08/17/26 Page 31 of 34

**Agency RIF and Reorganization Plans (ARRP) – Phase 1 Submissions**

| Agency ARRP Phase 1 Submissions (March 13, 2025) | Versions |
|---|---|
| **CFO Act Agencies** | |
| Department of Agriculture | 1 |
| USDA OIG | 1 |
| Department of Commerce | 1 |
| DOC OIG | 1 |
| Department of Defense | 1 |
| Department of Education | 1 |
| ED OIG | 1 |

*See* Harris Decl. Ex. 2 at 1, ECF No. 43-2. Defendants should be well aware of this example: Plaintiff raised the actions surrounding ED's RIF in the preliminary injunction briefing. *See* Pl.'s

Mem. P. & A. Supp. Mot. Limited Prelim. Inj. at 1, 6–8, ECF No. 3-1 (Mar. 24, 2025). Yet after more than 18 months and multiple extensions for factual development, Defendants point to another case to argue that no ED ARRP was submitted to Defendants and decline to look at their own submission. Defendants' failure to grasp these basic facts reinforces doubts about the sufficiency of their declaration to justify the categorical withholding of all 147 ARRPs.[9]

## II. OPM's Blanket Withholding of Select Communications Cannot Be Justified.

In addition to the ARRPs, Plaintiff challenges near-total withholdings of two communications. In both instances, OPM rests on its blanket declaration and an insufficient segregability analysis. Because OPM has not carried its burden to justify withholding the records in full, the Court should grant summary judgment to Plaintiff.

### A. OPM Failed to Meaningfully Segregate Non-Deliberative Information From the March 3 Email.

OPM withholds in full the content of an email sent by the executive director of the Chief Human Capital Officers Council at OPM to a senior advisor at the agency. *See* Martinez Decl. Ex. 6 at 1–2. But OPM does not meet the standard required by the D.C. Circuit in *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771 (D.C. Cir. 2002): there, the agency provided the requester with a "comprehensive *Vaughn* index" as well as a "supplemental affidavit in order to further address the issue of segregability." *Id.* at 776. As with the ARRPs, the Harris Declaration provides no detail in its segregability analysis about this specific communication.

---

[9] Defendants' requests for extensions for factual development that produced no change in position; their assertion that there is "no evidence" that the communications surrounding the July 2025 joint status report show that Defendants failed to conduct a line-by-line review of the ARRPs, despite a clear back-and-forth in which Defendants provided a final determination only after business hours to avoid a threatened request for a production order; and their unsupported statement that no ED ARRP exists all counsel in favor of the specific relief of requiring Defendants to reprocess all the ARRPs.

Separately, OPM contends that Plaintiff "identifie[d] no particular information" that could be segregated, Opp. at 19, is true only because OPM's complete withholding of the full-page email leaves Plaintiff with no sense of the message's nature. Again, as with the ARRPs, Defendants exploit the information asymmetry: Plaintiff must take the word of Defendants that their "line-by-line review" was adequate, even in the face of evidence that it was not. Because OPM fails to provide "specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA," *Mead Data Cent. Inc., v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977), its thin justification cannot carry the agency's burden at summary judgment.

**B. OPM's Full Withholding of the Spreadsheet Cannot Be Sustained.**

Standing on its generalized declaration, OPM also withholds in full factual material that Plaintiff seeks from a spreadsheet that provided a "snapshot of the ARRPs submitted to date." Harris Decl. ¶ 61. OPM also argues that Plaintiff improperly asks OPM to segregate and release the names of the agencies that submitted Phase 1 ARRPs, information that is of the same character as what Defendants have already provided as an exhibit to the Harris Declaration. *See id.* Ex. 2. But the spreadsheet would provide different information: the list from the Harris Declaration is the total of all Phase 1 ARRPs submitted, Harris Decl. ¶ 24 & Ex. 2, not the March 18 snapshot that the spreadsheet may provide, *id.* ¶¶ 61–62. The timing is critical: when an agency submitted its ARRP relative to its workforce action bears directly on whether the document is predecisional.[10] *See supra* Sec. I.C.

[10] A spreadsheet that, by OPM's own account, provides a "snapshot of the ARRPs submitted to date," Harris Decl. ¶ 61, and tracks agencies' compliance with a fixed deadline makes it reasonable to infer that that it records when each agency submits its ARRP. *See* Cross-Motion at 21–22. OPM does not say otherwise, *see* Opp. at 20, and declined to provide a supplemental declaration.

OPM's response on segregability is no more persuasive. OPM brushes aside the "mere fact" that a spreadsheet is organized in discrete cells and rests on the fact that Plaintiff has "never seen" the spreadsheet. Opp. at 22. But OPM once again relies on the information asymmetry, offers only boilerplate language on segregability, Harris Decl. ¶¶ 65–68, and sidesteps the fact that it must segregate factual material that is not inextricably intertwined with deliberative material, even if both appear in the same cell. Because Plaintiff has shown that the spreadsheet contains factual material that can be segregated and released, and the Harris Declaration offers no explanation for withholding it in full, OPM has not carried its burden at summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Defendants to reprocess the ARRPs and two other challenged records to segregate and release all non-exempt information from these records, including factual information, planned actions subsequently undertaken, and ARRPs that reflect agencies' decisions rather than tentative deliberations. Plaintiff has attached a proposed order.

Dated: November 16, 2026

Respectfully submitted,

/s/ *Daniel H. Martinez*

Daniel H. Martinez
(Bar No. 90025922)
Daniel A. McGrath
(Bar No. 1531723)
Robin F. Thurston
(Bar No. 7268942)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmartinez@democracyforward.org
dmcgrath@democracyforward.org
rthurston@democracyforward.org